1

MICHAEL NG (237915)
KELLY A. CORCORAN (260268)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105-1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

STEVEN A. SKALET (*pro hac vice*, TBD)
CRAIG L. BRISKIN  (*pro hac vice*, TBD)
**MEHRI & SKALET, PLLC**
1250 Connecticut Avenue NW, Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Fax: (202) 822-4997

JEAN CONSTANTINE-DAVIS (*pro hac vice*, TBD)
**AARP FOUNDATION LITIGATION**
601 E Street NW
Washington, D.C. 20049
Telephone:  (202) 434-2060
Fax:  (202) 434-6424

Attorneys for Plaintiff and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., a California corporation, <br><br> *and* <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE, <br><br> Defendants. | Case No. **CV 11 3831** <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200** *et seq.* <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Robert Chandler brings this action on behalf of himself and similarly situated Home Equity Conversion Mortgage borrowers, estates, heirs and personal representatives, and alleges as follows:

## INTRODUCTION

1.      This case concerns the failure of Defendant Wells Fargo Bank, NA ("Wells Fargo") and the Federal National Mortgage Association ("Fannie Mae") (collectively, "Defendants") to abide by a key term of the federally insured reverse mortgages that Wells Fargo has sold and serviced, and Fannie Mae has owned, for many years. These mortgages are called "Home Equity Conversion Mortgages" ("HECM").

2.      Under the HECM program, when a loan becomes due and payable, the borrower or the borrower's estate, heirs and/or personal representative have the right to receive a 30-day notice that they may sell the HECM-mortgaged property for 95 percent of its current appraised value ("the 95% Rule"), which amount may be less than the mortgage balance. The borrower or the borrower's estate, heirs and/or personal representative can then sell or transfer the property for 95% of the appraised value, including to a family member.

3.      The 95% Rule is a term of the HECM itself (either the mortgage or deed of trust), and it is also mandated by federal law. It prevents families and survivors of deceased HECM borrowers from losing their homes in the event of a downturn in the real estate market. HECM lenders are also protected. The federal government provides insurance that compensates lenders for any sale for an amount that is less than the balance on the HECM. HECM borrowers are required to fund this insurance program, through initial and monthly premium payments.

4.      Nevertheless, Defendants have failed and continue to fail to observe the 95% Rule: when a HECM is due and payable, they demand repayment of the *full* mortgage balance from borrowers and their survivors, and if that is not paid, Defendants initiate foreclosure and eviction proceedings.

5.      Defendants' blatant disregard of the 95% Rule is having widespread and dire consequences for Plaintiff and the proposed Class. Even though the nation is suffering through a prolonged housing slump, with millions of homes currently in some stage of foreclosure or

KERR
&
NAGSTAFFE

1    vacancy, Defendants refuse to allow the surviving spouses and other heirs of deceased HECM

2    borrowers to pay a fair market price for their homes and continue living in them.  Indeed, the net

3    proceeds to Defendants of a sale or transfer to family members is likely to be substantially

4    greater than the net proceeds they would recover from a sale following foreclosure, if Defendants

5    can even find another buyer.  Thus, this illegal behavior benefits no one.

6         6.    Plaintiff Robert Chandler is the heir and representative of the estate of his mother,

7    Rosemary Chandler, who obtained a HECM in 2005 on a home the family has owned and lived

8    in since the 1940s.  Soon after she passed away in 2010, Wells Fargo initiated foreclosure

9    proceedings.  It never informed Plaintiff of the 95% Rule, and Wells Fargo maintained that Mr.

10   Chandler would have to pay off the full mortgage balance, not the appraised value, if he wished

11   to keep the house.  Instead, Defendants foreclosed on and attempted to sell the property.  Finding

12   no buyer, Fannie Mae, who owned the mortgage prior to foreclosure, took possession of the

13   property after the foreclosure sale and continues to hold it.  Fannie Mae started the eviction

14   process by sending Plaintiff a letter dated May 5, 2011, a copy of which is attached as Exhibit A.

15        7.    Plaintiff brings this action on behalf of himself and others similarly situated, to

16   bring Defendants into compliance with the law, and to enforce the right of borrowers, their

17   estates, heirs and personal representatives to receive the required notice, and to sell or transfer

18   their homes, under the 95% Rule.

19                        **JURISDICTION AND VENUE**

20        8.    This Court has original jurisdiction over this Action under the Class Action

21   Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), because the proposed Class contains

22   more than 100 members, the aggregate amount in controversy exceeds $5 million, and members

23   of the Class reside across the United States, and therefore are diverse from Defendants.

24        9.    This Court has personal jurisdiction over Wells Fargo because its corporate

25   headquarters is located in this District, and it conducts substantial business activity throughout

26   California and this District.

27        10.   This Court has personal jurisdiction over Fannie Mae, because it maintains

28   offices, owns property (including the HECM-mortgaged property at issue in this case) and

KERR
&
WAGSTAFFE

2

1     conducts substantial business activity throughout this District.

2                        **INTRADISTRICT ASSIGNMENT**

3          11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because

4     Defendant Wells Fargo resides in this District, a substantial part of the events or omissions

5     giving rise to Plaintiff's claims occurred in this District, and both Defendants are subject to

6     personal jurisdiction in this District at the time of commencement of this action.

7                               **THE PARTIES**

8     **A.**      **PLAINTIFF**

9          12.      Plaintiff Robert Chandler resides at 10095 Sheldon Road, Elk Grove, California,

10     the residence that is subject to the HECM at issue in this case.  He is the son and heir of

11     Rosemary Chandler, and the representative of her estate.  Ms. Chandler was the sole borrower on

12     the HECM loan on the property.

13     **B.**      **DEFENDANTS**

14          13.      Defendant Wells Fargo Bank, NA is a publicly owned national banking

15     association with its principal place of business at 420 Montgomery Street, San Francisco,

16     California.  Wells Fargo originated the Chandler reverse mortgage.  It thereafter sold the

17     mortgage to Fannie Mae but continued to service it.

18          14.      Until recently, Wells Fargo was the top retail lender of reverse mortgages in the

19     United States, as it stated on its website: "As the nation's #1 retail reverse mortgage loan

20     originator, we're experienced at helping homeowners who are at least 62 years of age, access the

21     home equity they've built."  It also claims the number 1 spot in originating regular mortgages,

22     "providing funding for one out of every seven homes financed in the United States."

23          15.      On or about June 16, 2011, citing "unpredictable home values," Wells Fargo

24     announced that it was leaving the reverse mortgage business, but stated that it would continue to

25     service existing reverse mortgages in its portfolio.

26          16.      In marketing HECMs and other financial products, Wells Fargo stressed that it

27     offered not just sales, but personalized advice on which products are right for the prospective

28     borrower: "Our integrity is important; as a responsible lending leader, we work closely with

1   borrowers to help them understand their home financing options, so they can make informed

2   home financing decisions." It further stated, "We're one of the few lenders providing a network

3   of reverse mortgage lending specialists across the country."

4         17.    Defendant Federal National Mortgage Association, also known as Fannie Mae, is

5   a government-sponsored enterprise, and has been a publicly traded company since 1968. Its

6   headquarters are at 3900 Wisconsin Ave. Northwest, Washington, D.C. It purchases mortgages

7   from commercial lenders, with the goal of increasing the availability of private capital to finance

8   home loans.

9         18.    At least until 2006, Fannie Mae was the purchaser of most HECMs, including Ms.

10   Chandler's, and it continues to be a sizable presence in the HECM market. At the beginning of

11   2011, Fannie Mae owned $50.9 billion in reverse mortgages.

12   **FACTUAL ALLEGATIONS**

13         19.    A reverse mortgage is a loan that allows older homeowners to convert part of the

14   equity in their homes into cash. It is the "reverse" of a traditional mortgage, in which the

15   borrower repays the borrowed principal and interest on a monthly basis and increases his or her

16   equity in the property. In contrast, a reverse mortgage borrower receives money from the lender,

17   but makes no monthly payments, and the balance on the loan increases. The loan does not

18   become due and payable until one of a number of defined events occurs. 12 U.S.C. § 1715z-

19   20(j). Borrowers can choose to receive the loan proceeds in a lump sum, on a monthly basis, or

20   they can draw on a line of credit periodically as needed.

21         20.    Most reverse mortgages, including the reverse mortgages that Defendants have

22   issued and own, are HECMs, issued through a program that Congress created in 1989. The

23   United States Department of Housing and Urban Development ("HUD") administers the

24   program, and it also insures the loans with funds provided by HECM borrowers. In order to

25   issue qualifying loans, Wells Fargo and other lenders are required to abide by the rules and

26   regulations set out in the HECM statute, 12 U.S.C. § 1715z-20(a), and HECM regulations, 24

27   C.F.R. § 206.1 *et seq.*

28         21.    The general purpose of the HECM program is "to meet the special needs of

1    elderly homeowners by reducing the effect of the economic hardship caused by the increasing

2    costs of meeting health, housing and subsistence needs at a time of reduced income." 12 U.S.C.

3    § 1715z-20(a).  A HECM is intended to give older homeowners the ability to access the equity in

4    their homes in a way that allows them to remain in their homes without threat of displacement or

5    economic loss.

6         22.     The HECM program originally was a pilot program that was permitted to insure

7    up to 2,500 reverse mortgages.  Subsequently, Congress made the program permanent and

8    greatly expanded it.  From the program's inception through December 2010, HUD insured more

9    than 640,000 HECMs.  Of these, over 500,000 HECMs are still outstanding.[1]

10        23.     Several key provisions, both in federal law and in the standard loan documents,

11   protect HECM borrowers and their survivors from displacement and loss.  First, HECMs have

12   always been "non-recourse" loans, meaning that the lender cannot pursue a deficiency judgment

13   against a HECM borrower or his or her estate in the event of a foreclosure.  12 U.S.C. § 1715z-

14   20(d)(7).  The HECM Handbook, in effect since 1994, states:  "The HECM is a 'non-recourse'

15   loan.  This means that the HECM borrower (or his or her estate) will never owe more than the

16   loan balance or the value of the property, whichever is less." Handbook § 4235.1 REV-1.

17        24.     The purpose of the non-recourse provision is clear:  to protect older homeowners

18   and their heirs from personal liability for reverse mortgage balances that exceed the home's

19   value, where there is a downturn in real estate values.  Through its Federal Housing

20   Administration insurance program, HUD, not the lender or the homeowner, ultimately bears the

21   risk that the loan balance might exceed the value of the home.  For this insurance, the borrower

22   must pay a substantial fee of 2% of the value of the property at closing, and additional monthly

23   premiums amounting to 0.5% of the annual loan balance.  The required monthly premiums

24   increased in October 2010 to 1.25% of the annual loan balance.[2]

25   _____

26   [1]    *See* HUD Website, *Total HECM Cases Endorsed for Insurance by Fiscal Year of
     Endorsement and Borrower Characteristics* (July 5, 2011)*,* http://1.usa.gov/lpIRvF.

27   [2]    The initial insurance rate is much lower for a new type of HECM loan that HUD made
28   available beginning in October 2010, called a "HECM Saver" loan.  However, the monthly
     insurance payment remains the same, 1.25%.

K E R R
&
W A G S T A F F E
L.L.P

1    25.    HECM law and the standard loan documents provide that a HECM borrower or

2 the borrower's estate, heirs and/or personal representative has the right to pay off the HECM by

3 selling the property for 95% of its appraised value when the mortgage becomes due and payable:

> Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value . . . If the mortgage is due and payable at the time the contract for sale is executed, the mortgagor may sell the property for at least the lesser of the mortgage balance or five percent under the appraised value.

8 24 C.F.R. § 206.125(c).  HECM regulations also provide that any sale by a "mortgagor" is

9 intended to include "the mortgagor's estate or personal representative."  24 C.F.R. § 206.123(b).

10 A recent interpretation by HUD has clarified that a sale includes "any **post-death** conveyance of

11 the mortgage property (even by operation of law) to the borrower's estate or heirs (including a

12 surviving spouse who is not obligated on the HECM note)."[3]

13    26.    A HECM only becomes due and payable under specific conditions, set forth in the

14 standard form HECM loan documents, including those of Ms. Chandler.  Notice is required

15 when the HECM becomes due and payable, which is addressed in paragraph 9, "Grounds for

16 Acceleration of Debt."  Section 9(d) of the standard HECM (mortgage or deed of trust) states in

17 part:

> Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
>
> (i) Correct the matter which resulted in the Security Instrument coming due and payable; or
>
> (ii) Pay the balance in full; or
>
> (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or
>
> (iv) Provide the Lender with a deed in lieu of foreclosure.

---

[3]    HECM Servicing Frequently Asked Questions, available at http://1.usa.gov/nLUinw (viewed July 28, 2011) (emphasis in the original).

Case No.                            COMPLAINT

K E R R
&
W A G S T A F F E
L L P

1    If no such notice opportunity is provided, the Lender may not accelerate the debt or foreclose on

2    the property.

3        27.    If the HECM borrower or his or her estate, heirs or personal representative

4    exercises the 95% option, the lender is entitled to repayment from HUD's insurance fund to

5    make up the difference between the payoff amount and the mortgage balance.  24 C.F.R. §

6    206.123(a); § 206.125(a)(2) & (c).

7        28.    The non-recourse rule and the 95% Rule have become increasingly important

8    since the housing crash that began in 2006.  Based on recent data from HUD, it appears that

9    93,000 HECM loans, or 17.2% of all HECMs outstanding, are underwater – i.e., the mortgage

10   balance exceeds the value of the property – by a total amount of over $3.3 billion.[4]

11       29.    HUD has explained the procedure that the lender must follow in observance of the

12   right of the HECM borrower or his or her estate to pay off the HECM loan.  The HECM

13   Handbook, Section 4330.1 REV-5, § 13-29, states in part,

14            The mortgagor or the mortgagor's estate may sell the property at
             any time for . . . [t]he appraised value at the time of sale, as
15            determined by the HUD Office having jurisdiction over the
             property.  The mortgagor also may request an appraisal if he or she
16            believes that the value of the property is less than the debt.

17                            * * * * * * * * * *

18            If the mortgage is due and payable at the time the contract for sale
             is executed, the mortgagor may sell the property for the lesser of
19            95% of the current appraised value or the outstanding balance.

20       30.    HUD instructs the lender to notify the borrower, or his or her estate, heirs, or

21   personal representative, of their rights regarding the loan payoff.  Section 13-33 of the HUD

22   Manual provides guidance for the lender when the loan becomes due and payable:

23            A.    Issue A Repayment Notice.  The mortgagor or the mortgagor's
             estate must be issued a repayment notice stating that the mortgage is due and
24            payable.  The notice must also provide the amount of the outstanding balance and
             the following instructions:

25

26

27

[4]    Elizabeth Ecker, *$3.3 Billion of FHA Reverse Mortgages Underwater*, Reverse Mortgage
28   Daily (July 14, 2011), http://bit.ly/hWXwzD.

KERR
&
WAGSTAFFE

1. That the debt must be paid in full; or the property must be sold for the lesser of the debt, including shared appreciation, if any, or 95% of the appraised value; or good marketable title to the property must be deeded to the mortgagee.

2. That the mortgagor or the mortgagor's estate may request an appraisal, at his or her own expense, if any estimate of the property's current value is desired.

3. That if none of the actions in paragraph A. 1, above are taken in 30 days, foreclosure will be initiated by the mortgagee within 3 months, but not less than 1 month.

* * * * * *

5. That the mortgage will be released and no deficiency judgment will be taken if the property has no junior liens and is sold for at least 95% of the appraised value, with the net proceeds paid to the mortgagee, even if the debt is greater than the appraised value.

31.     Section 13-34 further provides, "The Field Office may authorize the mortgagee to delay the beginning of foreclosure proceedings longer than 3 months if a sale by the mortgagor or the estate is in process." HUD may grant the borrower or estate up to a year in which to sell the property.

32.     HUD makes clear that if, *at any time*, the mortgagor or estate offers a payoff, "the mortgagee shall discontinue the foreclosure proceedings and accept the payoff." HECM Manual § 13-34(C).

33.     Defendants have violated HECM law and breached the HECM contracts with borrowers, by denying the Class an opportunity to sell subject properties for 95% of their appraised values. Defendants deny this vital protection in several ways:

a.      Failing to give the required 30-day notice of opportunity to sell for 95% of appraised value;

b.      Affirmatively misrepresenting the law by telling the estates, heirs and personal representatives of HECM borrowers that repayment of the *full mortgage balance* is the only way they can retain the home, even where the mortgage balance far exceeds the current value of the property; and

c.   Denying borrowers in non-death situations, and personal representatives, estates and heirs after death, the right to transfer the property to heirs or relatives for 95% of appraised value.

34.   Defendants' failure to observe these contractual and legal provisions benefits no one. While denying Plaintiff and the Class the opportunity to sell their families' homes for their appraised values, Defendants seek to evict these families from homes that are uniquely meaningful to them, only so Defendants can try to sell the property to a stranger for around the same price that the family would pay if they could. Mr. Chandler is in this exact situation: he is ready and willing to purchase the home, which found no buyer at the foreclosure sale. In a May 5, 2011 communication to Plaintiff, Fannie Mae stated that it had hired a real estate agent to manage the property while it continued to try to find a buyer, and continues to seek to evict Mr. Chandler and his family.

***Robert Chandler***

35.   Robert Chandler resides at 10095 Sheldon Road, Elk Grove, California, which is the property subject to the HECM at issue in this case. His family has owned the house since the early 1940s, when his grandfather purchased the property. In the 1950s, the property was transferred to Mr. Chandler's parents, and Mr. Chandler was raised there. He has lived in the house with his wife and two children, aged 16 and 20, for the last year and 3 months.

36.   Mr. Chandler's mother, Rosemary Chandler, obtained a HECM in 2005.

37.   Ms. Chandler died in January 2010. At the time of her death, the HECM balance was approximately $338,000. The current value of the home, as estimated by the real estate website Zillow, is $194,900.

38.   Mr. Chandler recalls speaking with a Wells Fargo representative at least 3 separate times about purchasing the property. Soon after the death of his mother, Mr. Chandler spoke with Mike Martinez, a Home Mortgage Consultant for Wells Fargo in Elk Grove, California, stating that he wanted to purchase the property for its appraised value. Mr. Martinez said this was not possible, and told him he would have to pay off the full loan balance.

39.   Wells Fargo, through a substitute trustee, NDEx West, L.L.C., issued a Notice of Default to the estate of Rosemary Chandler on or about January 7, 2011. The Notice (attached as

Case No.                                                                                                          COMPLAINT

Exhibit B) stated that the estate could cure the default by paying $338,034.87, the full mortgage balance as of January 6, 2011. Nothing in the notice informs the estate that it can sell the property for 95% of its appraised value. To the contrary, it says that the mortgage is in default because of "THE FAILURE TO PAY THE ENTIRE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST THEREON WHICH BECAME IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED AND THE PROPERTY CEASED TO BE THE PRINCIPAL RESIDENCE OF ANY SURVIVING BORROWER."

40.     NDEx West, L.L.C. issued a Notice of Trustee's Sale on or about April 4, 2011 (attached as Exhibit C).

41.     Mr. Chandler received a notice from Defendant Fannie Mae, addressed to "Occupants," dated May 5, 2011 (attached as Exhibit A). It informed him that the property was owned by Fannie Mae, and presented him with two options: he could pay rent to continue living there, subject to approval by Fannie Mae, or he could "relocate," with moving assistance from Fannie Mae.

42.     Defendant Fannie Mae served Mr. Chandler with a three-day Notice to Quit on June 18, 2011 (attached as Exhibit D). The notice informed him that the property had been sold to Fannie Mae at a foreclosure sale.

43.     The Notice to Quit was signed by Deidra N. Buffington, attorney for Defendant Federal National Mortgage Association (Fannie Mae). In the notice, Fannie Mae threatened that if Mr. Chandler did not leave within three days, Fannie Mae would commence legal proceedings to have him forcibly removed, and to obtain a judgment against him for damages and court costs. Mr. Chandler has not heard from Fannie Mae about any further efforts it has undertaken to forcibly remove him from his home.

44.     Counsel for Plaintiff has contacted Ms. Buffington and communicated Plaintiff's desire to purchase the property for 95% of appraised value, but Fannie Mae has failed to respond in any way.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this class action pursuant to Rule 23(b)(2) and (b)(3) of the

1  Federal Rules of Civil Procedure, on behalf of himself as an heir and representative of his

2  mother's estate, and on behalf of all others similarly situated, as members of a proposed Class.

3  A Class and a Subclass are proposed.  The Class is defined as all HECM borrowers, and the

4  estates, heirs and personal representatives of such borrowers, whose loans are or were owned

5  and/or serviced by Defendants, and who were not given the required 95% Rule notice prior to a

6  Trustee's sale or foreclosure, or whose property was sold without allowing them the right to sell

7  or transfer their property for at least 95% of its appraised value.  The Subclass consists of all

8  such persons whose loans are secured by properties located in the State of California.  Additional

9  subclasses may be proposed as the litigation progresses.

10      46.     The members of the Class are so numerous that joinder is impracticable.  While

11  the precise number of Class Members can ultimately be ascertained through discovery of

12  Defendants' mortgage records, Plaintiff is informed and believes that there are thousands of

13  Class Members.  Prior to recently ceasing its reverse mortgage operations, Wells Fargo was the

14  number one reverse mortgage lender in the country, issuing over 16,000 HECMs in 2010 alone,

15  and had approximately 1,000 employees in its reverse mortgage department.

16      47.     Common questions of law and fact exist as to all members of the Class, which

17  predominate over any individual questions.  Among the questions of law and fact common to the

18  Class are:

19          a.    Whether Defendants are contractually required to provide notice to

20                borrowers and their estates, heirs and personal representatives that they

21                can sell or transfer HECM-mortgaged properties for 95% of appraised

22                value to satisfy the HECM, when such a loan becomes due and payable;

23          b.    Whether Defendants' failure to provide notice to borrowers and their

24                estates, heirs and personal representatives that they can sell or transfer

25                HECM-mortgaged properties for 95% of appraised value to satisfy the

26                HECM, when such mortgages became due and payable, violates HECM

27                law;

28



Case No.                                                              COMPLAINT

c.  Whether Defendants' failure to provide notice to borrowers and their estates, heirs and personal representatives that they can sell or transfer HECM-mortgaged properties for 95% of appraised value to satisfy the HECMs, when such loans became due and payable, is a breach of contract;

d.  Whether Defendants' failure to accept offers from borrowers' estates, heirs and personal representatives to sell HECM-mortgaged properties for 95% of appraised value to satisfy the HECMs is a breach of contract;

e.  Whether Defendants are entitled to initiate or continue trustee sales or foreclosure proceedings if Defendants have failed to provide notice to borrowers, their estates, heirs, and personal representatives that they can sell or transfer HECM-mortgaged properties for 95% of appraised value to satisfy the HECMs when such loans became due and payable;

f.  Whether Defendants should be enjoined from initiating or continuing trustee sales or foreclosures on the secured properties before providing living borrowers or, following death, the estates, heirs, and personal representatives of borrowers, notice of and opportunity to sell or transfer the property for 95% of its appraised value;

g.  Whether the Class is entitled to declaratory relief; and

h.  Whether the Class is entitled to damages for breach of contract if a property was sold prior to notice or despite efforts by the borrower or his or her estate, heirs, or personal representative to sell or transfer the property pursuant to the 95% Rule.

48.  Plaintiff's claims are based on federal statute and regulations, standardized HECM loan documents, and standardized practices and procedures on the part of Defendants, implemented on a nationwide basis.

49.  Plaintiff's claims are typical of the claims of the members of the Class, for the reason that Plaintiff and all other members of the Class sustained harm arising out of

12



KERR
&
VAGSTAFFE
LLP

1  Defendants' common course of wrongful conduct.  The members of the Class were denied their

2  right to notice, or an opportunity to sell the homes, pursuant to the terms of the standard HECM

3  contract and federal statute and regulations.  The Class has been substantially damaged by this

4  behavior, and stands to sustain additional damage if this behavior is not enjoined.

5      50.    Plaintiff is an adequate representative of the Class he seeks to represent.

6  Plaintiff's interests do not conflict with the interests of the individual members of the Class.

7  Plaintiff has retained counsel, who are competent and experienced in complex class action and

8  consumer protection litigation.  The interests of the members of the Class will be fairly and

9  adequately protected by Plaintiff and his counsel.

10     51.    Plaintiff has suffered the same damage, and stands to suffer the same damage in

11 the future, as Class Members generally, and he is intent on obtaining relief for such alleged

12 illegal practices.  He is fully committed to fairly, adequately, and vigorously representing and

13 protecting the interests of the members of the Class.

14     52.    The Class is entitled to certification under Federal Rule 23, because Defendants

15 failed to provide required notice to the Class, and have refused to allow the Class to sell or

16 transfer HECM-mortgaged properties for 95% of appraised value, making final injunctive relief

17 and corresponding declaratory relief appropriate respecting the Class as a whole.

18                         **FIRST CLAIM FOR RELIEF**

19                          **Declaratory Judgment Act**

20                    **(Individually and on Behalf of the Class)**

21     53.    Plaintiff re-alleges and incorporates by reference all preceding allegations of law

22 and fact.

23     54.    An actual controversy has arisen and now exists between Plaintiff and the

24 proposed Class on the one hand, and Defendants on the other, concerning whether the Class is

25 entitled to notice of their right to sell, and the opportunity to sell, HECM-mortgaged properties

26 for 95% of appraised value, and whether Defendants' failure to provide such notice and

27 opportunity violates 12 U.S.C. § 1715z-20, 24 C.F.R. 206.1 *et seq.*, and the standard HECM loan

28 contract.

KERR
&
/ AGSTAFFE
LLP

Case No.

13

COMPLAINT

55.     Pursuant to 28 U.S.C. § 2201, Plaintiff requests that the Court declare the rights of Plaintiff and other Class Members and the obligations of Defendants and enter a final judgment:

      a.   Declaring that Defendants are required to provide notice to the Class that they can sell or transfer the property for 95% of appraised value before Defendants may initiate or continue foreclosure and eviction proceedings;

      b.   Declaring that Defendants cannot initiate or continue foreclosure or eviction proceedings if a Class member endeavors to sell or transfer the property for 95% of the appraised value of the property, pursuant to HUD procedures;

      c.   Declaring that Defendants' failure to provide notice and opportunity to sell or transfer violates 12 U.S.C. § 1715z-20, 24 C.F.R. 206.1 *et seq.*; and

      d.   Declaring that any foreclosure, trustee sale or eviction that occurs prior to the required 95% Rule notice, or after a Class member is denied the opportunity to sell or transfer the HECM-mortgaged property for at least 95% of its appraised value, is a breach of contract.

56.     A judicial declaration is necessary and appropriate at this time so that Plaintiff and the Class may ascertain their rights.

57.     Pursuant to Fed. R. Civ. P. 56, Plaintiff requests a "speedy hearing" of this declaratory judgment action.

58.     Accordingly, Plaintiff prays for the relief set forth herein and below.

**SECOND CLAIM FOR RELIEF**

**Breach of Contract**

**(Individually and On Behalf of the Class)**

59.     Plaintiff re-alleges and incorporates by reference all preceding allegations of law and fact.

60.     The HECM is a contract formed between Defendant Wells Fargo and HECM borrowers. That agreement establishes the rights and obligations of the borrower and the lender, including when the loan is due and payable and the events that can trigger foreclosure.

14



KERR
&
/AGSTAFFE
L.L.P.

Case No.

COMPLAINT

61.     Defendant Fannie Mae is a successor-in-interest to Wells Fargo on the HECM loans it purchases from Wells Fargo.

62.     Homeowners pay valuable consideration for these contracts, in the form of a mortgage on their homes, as well as substantial fees and insurance charges required by the HECM program.

63.     The HECM, specifically Section 9(d), requires Defendants to issue notice to the borrowers and their estates that they can satisfy the HECM mortgage either by paying the full mortgage balance, or paying 95% of the appraised value prior to any foreclosure proceedings. Wells Fargo cannot commence foreclosure until at least 30 days after giving this notice. Likewise, as a successor-in-interest to Wells Fargo on the HECM loans it purchases from Wells Fargo, Fannie Mae cannot commence foreclosure or eviction proceedings until and unless this notice has been given.

64.     If the HECM borrower or estate, heir or personal representative undertakes to satisfy the HECM by selling the property for at least 95% of appraised value, HECM owners or servicers such as Defendants may not initiate or continue foreclosure or eviction proceedings. Defendants breached their contract with Plaintiff and Class Members by failing to issue the required notice, by initiating foreclosure and/or eviction proceedings, and by refusing to allow payment of 95% of the appraised value to satisfy the HECM Mortgages at issue.

65.     As a result of Defendants' breach of contract, Plaintiff and members of the Class have been deprived of the opportunity to sell their family homes for 95% of appraised value, and have been subjected to threatened and actual foreclosures and evictions.

66.     Plaintiff, on behalf of the proposed Class, demands specific performance of the contracts with Defendants. Defendants must immediately cease all efforts to foreclose on HECM mortgages or take possession of HECM-mortgaged properties, and they may not initiate or continue trustee sales or foreclosure or eviction proceedings until they have issued notice and given Plaintiff and the Class the opportunity to sell or transfer required by the HECM loan contract.

67.     Accordingly, Plaintiff prays for the relief set forth herein and below.

15

**THIRD CLAIM FOR RELIEF**

**Violation of Bus. & Prof. Code § 17200 *et seq*.**

**(Individually and On Behalf of the Sub-Class)**

68.     Plaintiff re-alleges and incorporates by reference all preceding allegations of law and fact.

69.     Under California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq*. ("UCL"), unfair competition includes any "unlawful," "unfair," or "fraudulent" business act or practice.  Cal. Bus. & Prof. Code § 17200.

70.     The pattern and practice of conduct of Defendants as described herein violates numerous laws and public policies of the State of California. This conduct includes the following:

      a.     Failure to provide notice to HECM borrowers or their estates, heirs or personal representatives that they have the right to sell or transfer the property for 95% of appraised value;

      b.     Initiating foreclosure proceedings and/or evictions before a HECM borrower or his or her estate, heirs or personal representative have been given notice of their right to sell or transfer the property for 95% of the appraised value, pursuant to HUD procedures;

      c.     Initiating foreclosure proceedings and/or evictions after a borrower or his or her estate, heirs or personal representative have expressed an interest in selling or transferring HECM-mortgaged property for at least 95% of its appraised value; and

      d.     Attempts to take possession of HECM-mortgaged properties after improper foreclosure sales.

71.     The conduct described above constitutes both an unfair and an unlawful business practice in violation of California Business & Professions Code sections 17200 *et seq*.

72.     Pursuant to California Business and Professions Code § 17203, Plaintiff and members of the Subclass seek declaratory and injunctive relief for Defendants' unlawful, unfair and fraudulent conduct.

Case No.                                                                                          COMPLAINT

KERR
&
WAGSTAFFE
LLP

73.     Accordingly, Plaintiff prays for the relief set forth herein and below.

**PRAYER FOR RELIEF**

Wherefore Plaintiff requests that this Court issue an order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff and his counsel to represent the Class, and awarding:

1.      Declaratory Judgment that Defendants are required to provide notice to the Class that they can sell or transfer HECM-mortgaged properties for 95% of appraised value before Defendants may initiate foreclosure and eviction proceedings;

2.      Declaratory Judgment that Defendants cannot initiate or continue foreclosure or eviction proceedings if a Class member endeavors to sell the property for 95% of the appraised value of the property, pursuant to HUD procedures;

3.      Declaratory Judgment that Defendants' failure provide Class Members notice and opportunity to sell or transfer violates 12 U.S.C. § 1715a-20, 24 C.F.R. 206.1 *et seq.*;

4.      Declaratory Judgment that any foreclosure, trustee sale or eviction that occurs prior to the required 95% Rule notice, or after a Class member is denied the opportunity to sell or transfer the HECM-mortgaged property for at least 95% of its appraised value, is a breach of contract;

5.      Damages for breach of contract in an amount to be determined at trial;

6.      Preliminary and permanent injunctive relief against Defendants prohibiting them from initiating or continuing foreclosure or eviction proceedings on HECM-mortgaged properties, until the required notice and opportunity to sell or transfer have been provided;

7.      Reasonable attorneys' fees, costs and expenses; and

8.      All such other and further relief as the Court deems just.

KERR
&
WAGSTAFFE
LLP

Case No.                                                                                      COMPLAINT

DATED: August 3, 2011                     **KERR & WAGSTAFFE LLP**

                                          **MEHRI & SKALET, PLLC**

                                          **AARP FOUNDATION LITIGATION**

                                  By  _____
                                          MICHAEL NG

                                          Attorneys for Plaintiff and the Putative Class


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on each and every cause of action so triable.


DATED: August 3, 2011                     **KERR & WAGSTAFFE LLP**

                                          **MEHRI & SKALET, PLLC**

                                          **AARP FOUNDATION LITIGATION**

                                  By  _____
                                          MICHAEL NG

                                          Attorneys for Plaintiff and the Putative Class

KERR
&
WAGSTAFFE

Case No.                                                              COMPLAINT

EXHIBIT A

# NOTICE

## 10095 Sheldon Rd Elk Grove CA 95624

PROPERTY ADDRESS

5/5/2011

DATE

The party named below has been requested to determine the occupancy
status and condition of the aforementioned property.

All occupants should immediately contact
the party named below to discuss the status
of your occupancy and your options.

PAUL BOUDIER
KELLER WILLIAMS REALTY
548 Gibson Dr Ste #200
ROSEVILLE, CA 95678
916-788-8880 or 916-960-4464
PAUL@PAULBOUDIER.COM or
BILLING@PAULBOUDIER.COM
FAX – 916-791-0713

*Cova Luckens*        *Paul*

## FannieMae

**KNOWING YOUR OPTIONS**

### Important Notice to Occupants

Property Address:    10095 Sheldon Rd Elk Grove CA 95624

Date of Notice:    5/5/2011

This property is now owned by Fannie Mae. If you are living in this property, you have several options. Fannie Mae has engaged a real estate agent to manage this property, and as an occupant of this property, to make you aware of some options that may be available. Please review the information within this notice thoroughly and contact the agent listed below immediately to advise of your intentions. If you have questions regarding your rights, you should seek the advice of an attorney – find attorneys in your area at *www.findlegalhelp.org*.

### Option 1: Rent This Property

If you are renting this property, you might have the right to continue living in the property under your existing lease or tenancy. Many tenancies are protected by the *Protecting Tenants at Foreclosure Act of 2009* or other applicable law.

Fannie Mae also offers the following lease options to eligible occupants in eligible properties:

- 12-month term lease with relocation assistance at the end of the lease (no security deposit or credit check required)
- Month-to-month (no security deposit or credit check required)

### Option 2: Relocate With Assistance



Renters and former borrowers might be eligible for financial relocation assistance to help cover expenses associated with moving. To qualify, you must:

- Sign an agreement with Fannie Mae to move out of the property
- Leave the property in broom-swept condition before you can receive payment

### Next Steps – Contact Information

Call the agent listed below within 10 days to let us know if you wish to pursue either of the options described above or if you wish to purchase the property. If we do not hear from you within ten (10) days from the date of this notice, we will assume that you are not seeking any of these options, although failure to notify Fannie Mae within ten (10) days will not result in a waiver of any of your rights.

- If you communicate your desire to continue renting, a Property Manager will contact you within a few days to evaluate your lease options.
- Rent payments due should *no* longer be sent to the previous owner and should instead be paid to the Property Manager or the agent listed below.

| Fannie Mae Assigned Real Estate Agent – Contact Information | |
|---|---|
| Agent Name: | Paul Boxdler |
| Company Name: | Keller Williams Realty |
| Company Address: | 548 Gibson Drive, Suite #200 Roseville, CA 95678 |
| Office Phone: | 916-788-8880 |
| Cell Phone: | 916-960-4464 |
| E-mail: | paul@paulboxdler.com |

**If no agent contact information is provided here, or if you have any concerns regarding the broker or property manager assigned to manage your property, please call Fannie Mae at 1-800-732-6643.**

**Cash For Keys Agreement & Release**

RMS Asset Management
Solutions
5005 FM 1960, Suite 325
Houston, TX 77069
Corporate
Fax

REO #:     524531
Loan #:    L110RTS

RELOCATION ASSISTANCE AGREEMENT

This Relocation Assistance Agreement (this "Agreement") is made this _____ _____ day of _____, 20___, between RMS Asset Management Solutions ("Owner") and __rosemary chandler__ ("Occupant") residing in Owner's property at __10095 SHELDON ROAD__ in the city of __ELK GROVE__ state of __CA__ (the "Property")

IN CONSIDERATION OF THE MUTUAL PROMISES STATED HEREIN, OWNER AND OCCUPANT AGREE AS FOLLOWS:

Occupant agrees to voluntarily vacate the Property no later than _____, 20___ (the "Vacancy Date"). Immediately upon move out, Occupant agrees to deliver the keys to the designated real estate broker Paul Boudier located at: 548 Gibson Drive # 200, Roseville, CA  95678 phone (916) 788-8886.

Owner will pay to the Occupant a total of $___, (not to exceed $1000.00) representing relocation assistance, upon the Occupant vacating the Property on or before the Vacancy Date, provided Occupant has returned the keys, executed the "Release of All Claims" (attached as an exhibit to this Agreement), and the Property (including all fixtures, facilities and appliances) is left in the same condition as it was on the date of this Agreement, ordinary wear and tear excepted.

Occupant understands that Occupant may have the right to continue to occupy the Property pursuant to the Protecting Tenants at Foreclosure Act of 2009 or other applicable law. Occupant also acknowledges that Occupant has had the opportunity, at any time, to contact RMS Asset Management Solutions through it's Agent. However, Occupant does not want to remain in the Property or receive further information on rental opportunities. Occupant agrees that any lease that remains in effect is terminated as of the Vacancy Date set forth herein. Occupant desires to accept relocation assistance in lieu of remaining in the Property

Occupant, to the fullest extent allowed by applicable law, hereby releases and discharges OWNER, and its servicers, representatives, agents, attorneys, Officers, Directors, employees, successors and assigns, contractors and agents (collectively, the "Released Parties") from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, claims, demands and liabilities whatsoever of any type, both in LAW and in EQUITY, which the Occupant now has or ever has had to this date against the Released Parties, in connection with the premises located at 10095 SHELDON ROAD in the city of ELK GROVE state of CA (the "Property")

This Release includes, but is not limited to, all claims which the Occupant may have pursuant to state, local or federal law, claims against the Released Parties for irregularities in the foreclosure process, claims that the Owner is not the rightful owner of the Property, for wrongful foreclosure, declaratory and injunctive relief, breach of contract, rescission, quiet title, fraud, the breach or violation of any rent control statutes and any related disclosure provisions, any implied warranties of fitness for purpose and/or habitability, state or local board of health codes, lead paint regulations or statutes, security deposit or last month's rental payment violations, and any other applicable local, state or federal codes, regulations or statutes arising out of or in connection with the Property. In addition, the Occupant hereby agrees that upon execution of this Agreement, the Occupant has no other lawful right or privilege to occupy the Property other than pursuant to the terms of this Agreement, and will completely vacate the Property and remove all personal property from the Property in accordance with the terms of this Agreement. Occupant shall hold the Released Parties harmless from any and all liability, loss, cost or expense, including reasonable attorney's fees arising out of a claim that is released herein.

Occupant agrees to leave the Property in "broom swept" condition when vacating the premises, including the removal of all trash and debris. In the event there is damage caused by Occupant between the date of this Agreement and the date Occupant vacates the Property, or if Occupant leaves trash and debris, the cost of repairing or replacing any fixtures or property removed from the Property, or the removal of trash and debris will be deducted from the agreed relocation assistance amount.

## Cash For Keys Agreement & Release

RMS Asset Management
Solutions
5222 FM 1960, Suite 325
Houston, TX 77069
Corporate
File

permitted under applicable law, but will not schedule a "lockout" date prior to the Vacancy Date so long as Occupant complies with the terms and conditions of this Agreement.

During the term of this Agreement, Occupant shall bear full responsibility for all personal property kept at the Property and shall further bear all risk of any loss or damage caused to such personal property, regardless of cost.

On or before the Vacancy Date, Occupant shall have removed all personal property from the Property, and any items remaining after the Vacancy Date shall become the property of the Owner.

Throughout the period Occupant occupies the Property, Occupant shall, at his/her own expense, maintain and care for the Property, keep the lawn and other plantings trimmed, keep the Property free of debris, and use the Property in accordance with all applicable governmental codes and regulations, and shall, at personal expense, pay for all utility service at the Property.

Occupant understands and acknowledges that this Agreement does not create a leasehold interest or a landlord/tenant relationship with Owner.

This Agreement shall constitute the entire Agreement between the parties, and no changes to it shall be valid and enforceable, except by supplemental agreement in writing, signed by all parties to this Agreement.


By:  Real Estate Agent on behalf of Owner

By:_____
          Occupant

Witness:_____

By:_____
          Occupant

Witness:_____

05/06/11

- Re: 10095 Sheldon Rd Elk Grove CA 95624

Hello my name is Cora Lukens and I handle the cash for keys for Paul Boudier. The bank is offering relocation assistance to you if you meet the following requirements:

1. Move out at the agreed upon date
2. Remove all personal property inside and outside of the house – nothing can be left including any building materials, firewood or uninstalled screens for the property.
3. Leave all permanent appliances and fixtures. Washer, Dryer and refrigerator are yours to take.
4. Leave the property in broom swept condition

Once approved we will schedule the walkthrough and Paul, or someone on Paul's team would meet you at the property on the designated day and do the walkthrough, and after verification of the above items, you will receive your check. Please call me and we will discuss your options.

Please know that this bank ONLY offers cash for keys on a ten day move out. Please call me to let me know if this is something that you are interested in asap. I will also need the documents and W9 signed and faxed back to me as soon as possible.

Thank you,

Cora Lukens
Phone 916-960-4464
916-960-4464
FAX 760-375-5554
Billing@PaulBoudier.Com

EXHIBIT B



7160 9668 9670 5275 9809

ROSEMARY S. CHANDLER, TRUSTEE OF THE
R
MICHAEL L. FABER ATTORNEY AT LAW
9124 ELK GROVE BLVD
ELK GROVE, CA 95624

CASEKEY: 20100168815635

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

## PLEASE READ CAREFULLY

CERT

# NDEX WEST, L.L.C. MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

FCUS_Std_Banner_Portrait_DocGen.rpt - [01/06/2011] / Ver-32

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
APN #: 122-0250-011-0000
Property Address:
10095 SHELDON ROAD
ELK GROVE, CALIFORNIA 95624

**\*DFF20100169815635\***
DFF20100169815635

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE: **$21.00**

RECORDED ON: **January 7, 2011**

AS DOCUMENT NO. **BK: 110107 / PG: 269**

BY **s/ Andres Cortez**
LSI TITLE COMPANY (CA)

*Space above this line for Recorders use only*

Trustee Sale No.: 20100169815635 Title Order No.: 100805454

IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $339,034.87 as of 1/6/2011 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

IMPORTANT NOTICE
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
Trustee Sale No.: 20100169815635 Title Order No.: 100805454

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO BANK, N.A.
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT:  NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 11/27/2006, executed by ROSEMARY S CHANDLER, TRUSTEE OF THE ROSEMARY S CHANDLER, 1993 TRUST (CREATED BY A DECLARATION OF TRUST DATED MAY 7 1993), as Trustor, to secure obligations in favor of WELLS FARGO BANK, N.A., as Beneficiary Recorded on 12/27/2006 as Book No. 20061227 and Page No. 0392 of official records in the Office of the Recorder of SACRAMENTO County, California, as more fully described on said Deed of Trust. Including a Note(s) Unconditional Guaranty which had a principal amount of $544,185.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE FAILURE TO PAY THE ENTIRE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST THEREON WHICH BECAME IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED AND THE PROPERTY CEASED TO BE THE PRINCIPAL RESIDENCE OF ANY SURVIVING BORROWER.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 1/6/2011

NDEX WEST, LLC as Agent for Beneficiary
By: LSI Title Company, as its authorized agent

By:

Menghong But

FCOS_NoticeOfDefault.rpt - Rev04 - (12/04/2010) - Ver-39

EXHIBIT C

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

APN #: 122-0250-011-0000
Property Address:
10095 SHELDON ROAD
ELK GROVE, CALIFORNIA  95624



NOTS2010016981565635

Space above this line for Recorder's use only

Trustee Sale No.: 20100169815635        Title Order No.: 100805454        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A  DEED OF TRUST,  DATED 11/27/2006.  UNLESS YOU TAKE ACTION TO
PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 12/27/2006 as Book No.
20061227 and Page No. 0392 of official records in the office of the County Recorder of SACRAMENTO County, State of
CALIFORNIA.
EXECUTED BY:     ROSEMARY  S  CHANDLER,  TRUSTEE  OF  THE  ROSEMARY  S  CHANDLER,  1993 TRUST
                (CREATED BY A DECLARATION OF TRUST DATED MAY 7 1993),
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other
form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:  04/28/2011        TIME OF SALE:        1:30 PM
PLACE OF SALE:     AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 720 9TH ST., SACRAMENTO, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
            10095 SHELDON ROAD, ELK GROVE, CALIFORNIA 95624
APN#:            122-0250-011-0000

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any,
shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in
said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by
said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable
estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $339,459.70    The beneficiary
under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale,
and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be
recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
PRIORITY POSTING & PUBLISHING, INC.
17501 IRVINE BLVD., SUITE ONE
TUSTIN, CA 92780
714-573-1965
www.priorityposting.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT
COLLECTOR  ATTEMPTING  TO  COLLECT  A
DEBT.  ANY  INFORMATION  OBTAINED  WILL
BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Trustee

BY:  Ric Juarez                                    Dated:  04/04/2011

FCUS_NoticeOfTrusteeSale.rpt - Report - 12/07/2010 - Ver. 29                    Page 1 of 1

# EXHIBIT D

# THREE DAY NOTICE TO QUIT

*(Cal. Code of Civ. Pro. § 1161a(b)(3))*

To:   ROBERT CHANDLER AND/OR ALL OTHER NON-TENANT
      OCCUPANTS
      10095 SHELDON ROAD, ELK GROVE, CA 95624

YOU ARE HEREBY NOTIFIED that the real property and improvements thereon commonly known as 10095 SHELDON ROAD, ELK GROVE, CA 95624 ("the Property") were sold to FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE at a non-judicial foreclosure sale in accordance with Cal. Civ. Code §§ 2924 et seq. under the power of sale contained in that certain Deed of Trust executed by ROSEMARY S CHANDLER, TRUSTEE OF THE ROSEMARY S CHANDLER, 1993 TRUST (CREATED BY A DECLARATION OF TRUST DATED MAY 7 1993), as trustor, and recorded on December 27, 2006 as Book No. 20061227 and Page No. 0392 in the Office of the Sacramento County Recorder. The new owner's title has been duly perfected by Trustee's Deed Upon Sale recorded in the Office of the Sacramento County Recorder.

YOU ARE FURTHER NOTIFIED that your occupancy of the Property shall terminate effective THREE (3) CALENDAR DAYS after service of this Notice upon you.

WITHIN THREE (3) CALENDAR DAYS following service of this Notice, you must vacate and surrender possession of the Property to the undersigned, or legal proceedings will be immediately commenced to declare your occupancy forfeited, to obtain restitution and possession of the Property and to obtain a money judgment against you for damages and court costs.

Barrett Daffin Frappier Treder & Weiss, LLP

Dated: June 16, 2011            By: _____
                                    DEIDRA N BUFFINGTON
FILE NO. 2480671                    Attorneys for Property Owner
                                    FEDERAL NATIONAL MORTGAGE
                                    ASSOCIATION A/K/A FANNIE MAE

*Direct All Inquiries to:*

DEIDRA N BUFFINGTON
State Bar No. 241448
Law Offices of
Barrett Daffin Frappier Treder & Weiss, LLP
20955 Pathfinder Road, Suite 300
Diamond Bar, California 91765
Phone: (626) 915-5714
FAX:  (626) 915-0289