MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
REBECCA S. SAELAO (State Bar No. 222731)
rss@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION a/k/a FANNIE MAE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WELLS FARGO BANK, N.A., a California corporation, and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>                    Defendants. | Case No.:  CV11 3831 SC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:     January 13, 2012<br>Time:                 10:00 a.m.<br>Courtroom:        1<br>Judge:               Hon. Samuel Conti<br><br>Complaint Filed: August 3, 2011 |

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Please take notice that on January 13, 2012, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 1 on the 17th Floor of the above-entitled Court at 450 Golden Gate Avenue, San Francisco, California, Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage Association ("Fannie Mae"), will, and hereby do, move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the August 3, 2011 "Complaint for Declaratory Relief; Breach of Contract; and Violation of Business and Professions Code § 17200," filed by Plaintiff Robert Chandler, as representative of the estate of Rosemary S. Chandler, individually and on behalf of others similarly situated, in this matter.

Plaintiff fails to state any claim upon which relief may be granted. Wells Fargo and Fannie Mae request that the Court dismiss the complaint in its entirety, without leave to amend.

This motion is based on this notice, the accompanying memorandum of points and authorities, the request for judicial notice, as well as the complaint and all other records on file in this action, and any further briefs, evidence, authorities, or argument presented before or at the hearing of this motion.

DATED:  October 4, 2011

SEVERSON & WERSON
A Professional Corporation


By: _____/s/___*Rebecca S. Saelao*_____
Rebecca S. Saelao

Attorneys for Defendants
WELLS FARGO BANK, N.A. and FEDERAL
NATIONAL MORTGAGE ASSOCIATION
a/k/a FANNIE MAE

-1-

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ....................................... 2

III.  BACKGROUND ........................................................................................ 3

      A.    Plaintiff's Allegations ...................................................................... 3

      B.    The Chandler HECM .......................................................................... 4

      C.    HUD's Servicing Guidelines for FHA Approved Lenders. ................... 5

IV.   STANDARDS FOR DISMISSAL ........................................................... 8

V.    ARGUMENT ............................................................................................. 9

      A.    Plaintiff's Breach of Contract Claim Fails. .......................................... 9

            1.   Where the Borrower's Death Causes the Loan to Be Due and
                 Payable, Paragraph 9(d)—Upon Which Plaintiff Relies—Does
                 Not Apply. ......................................................................................... 10

            2.   Even When Paragraph 9(d) Applies, It Does Not Require the
                 Lender to Notify the Borrower of the 95% Rule Prior to
                 Initiating Foreclosure. .................................................................... 11

            3.   The Chandler HECM Does Not Require the Lender to Permit
                 the Borrower or Its Heirs to *Purchase* the Property For 95% of
                 its Appraised Value When the Loan is Due and Payable. ...................... 12

            4.   The Parties' Contract Does Not Incorporate HUD's Servicing
                 Guidelines. ..................................................................................... 13

      B.    Plaintiff's Declaratory Relief Claim Fails. ........................................... 14

            1.   There Is No Private Right of Action to Enforce the National
                 Housing Act or HUD's Regulations and Servicing Guidelines
                 Thereunder. ..................................................................................... 14

            2.   Even if There Were A Private Right of Action, Plaintiff's
                 Claim That Defendants Violated HECM Law Fails As Based
                 on a Plainly Incorrect Interpretation of that Law. .............................. 16

      C.    Plaintiff Cannot State A Claim For Violations of California Business
            and Professions Code § 17200 ............................................................ 18

VI.   CONCLUSION ........................................................................................ 20

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alperin v. Vatican Bank,*
    410 F.3d 532 (9th Cir. 2005) .................................................................................8

*Arvizu v. GMAC Mortg., LLC,*
    No. 10-990, 2010 WL 3958666 (E.D. Cal. Oct. 8, 2010) ....................................18

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) .....................................................................................9, 19

*Astoria Federal Sav. & Loan Ass'n v. Solimino,*
    501 U.S. 104 (1991) ..............................................................................................8

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ................................................................................8

*Balvage v. Ryderwood Improvement & Service Ass'n, Inc.,*
    642 F.3d 765 (9th Cir. 2011) ..............................................................................16

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................................................9

*Bennett v. Donovan,*
    No. 11–0498 (ESH), 2011 WL 2746233 (D. D.C. 2011)................................1, 12-14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999)........................................................................................19

*Churchill Village, L.L.C. v. Gen. Elec. Co.,*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000)..............................................................18

*Cleveland v. Aurora Loan Services, LLC,*
    No. C-11–0773-PJH, 2011 WL 2020565 (N.D. No. Cal. May 24, 2011).........16, 18

*Cort v. Ash,*
    422 U.S. 66 (1975) ..............................................................................................15

*Dunn v. GMAC Mortg., LLC,*
    No. 2:10–CV–03196, 2011 WL 1230211 (E.D. Cal. Mar. 28, 2011) ....................9

*Federal Nat. Mortg. Ass'n v. LeCrone,*
    868 F.2d 190 (6th Cir. 1989)..............................................................................15

*Higginbottom v. U.S. Bancorp,*
    2011 WL 1558681 (N.D. Cal. April 25, 2011) ..................................................18

-ii-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

*Hsu v. UBS Financial Services, Inc.*,
 No. C 11–02076 WHA, 2011 WL 3443942 (N.D. Cal. Aug. 5, 2011) ............................ 9, 11

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .................................................................................. 18, 19

*Keng Hee Paik v. Wells Fargo Bank, N.A.*,
 No. C 10–04016 WHA, 2011 WL 3359697 (N.D. Cal. Aug. 3, 2011) ................................ 20

*M. B. Guran Co., Inc. v. City of Akron*,
 546 F.2d 201, 205) (6th Cir. 1976) ...................................................................................... 15

*Mack v. South Bay Beer Distributors*,
 798 F.2d 1279 (9th Cir. 1986) ............................................................................................... 8

*Malone Mortgage Company America, Ltd. v. Martinez*,
 No. 02–CV–1870–P, 2002 WL 31114160 (N.D. Tex. Sept. 23, 2002) ................................ 16

*McAllister v. BAC Home Loans Servicing, LP*,
 No. 4:10–CV–504, 2011 WL 2200672 (E.D. Tex. Apr. 28, 2011) ........................................ 13

*Mitchell v. Chase Home Fin. LLC*,
 No. 3:06-CV2099-k, 2008 WL 623395 (N.D. Tex. Mar. 4, 2008) ........................................ 14

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
 160 Cal.App.4th 638 (2008) ................................................................................................ 18

*Roberts v. Cameron-Brown Co.*
 556 F.2d 356 (5th Cir. 1977) .............................................................................................. 16

*Robertson v. Dean Witter Reynolds, Inc.*,
 749 F.2d 530 (9th Cir. 1984) ................................................................................................. 8

*Rohnert Park v. Harris*,
 601 F. 2d 1040 (9th Cir. 1979) ........................................................................................... 15

*Shivers v. Landrieu*,
 674 F.2d 906 (D.C. Cir. 1981) ............................................................................................ 15

*Shroyer v. New Cingular Wireless Servs.*,
 622 F.3d 1035 (9th Cir. 2010) ............................................................................................ 19

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
 72 Cal.App.4th 861 (1999) .................................................................................................. 18

*Spieth v. Bucks County Housing Authority*,
 594 F.Supp.2d 584 (E.D. Pa. 2009) .................................................................................... 15

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
 252 Fed. App'x 123 (9th Cir. 2007) ...................................................................................... 9

-iii-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.: CV11 3831 SC

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .................................................... 8

*Wells Fargo Bank, N.A. v. Favino,*
   No. 1:10-Cv-571, 2011 WL 1256771 (N.D. Ohio Mar. 31, 2011) ......................................... 14

**FEDERAL REGULATIONS, RULES & STATUTES**

United States Code
   Title 12
      §§ 1701 *et seq.* ......................................................... 14
      § 1701c ......................................................... 5
      § 1708 ......................................................... 16
      § 1715z-20 ......................................................... *passim*
   Title 42
      § 1460 ......................................................... 15

Code of Federal Regulations
   Title 24
      § 206.1 *et seq.* ......................................................... *passim*
      § 206.125 ......................................................... 6, 17
      § 206.201 ......................................................... 6

Federal Rules of Civil Procedure
   Rule 8 ......................................................... 9
   Rule 9 ......................................................... 19
   Rule 12 ......................................................... *passim*

**STATE STATUTES**

Business & Professions Code
   § 17200 ......................................................... *passim*

-iv-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage Association ("Fannie Mae") bring this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Each of Plaintiff's claims—for declaratory relief, breach of contract, and violations of California Business and Profession Code § 17200—fails, as set forth below.

This action concerns Home Equity Conversion Mortgage ("HECM") loans serviced or owned by Defendants Wells Fargo and Fannie Mae.  HECM loans are federally insured reverse mortgages available to qualifying seniors.  Because the Department of Housing and Urban Development ("HUD"), through the Federal Housing Administration ("FHA"), insures HECM loans, HUD promulgates regulations for FHA approved lenders to follow to maintain their "approved" status.

Plaintiff contends that Defendants violated "HECM law," breached HECM contracts, and committed § 17200 violations by: failing to notify Borrowers (or the Borrowers' estates) of certain options to cure a loan default when a loan becomes due and payable; commencing foreclosures without issuing the allegedly required notice; and "refusing to allow payment of 95% of the appraised value to satisfy the HECM Mortgages at issue."  (Complaint, dated August 3, 2011 ("Compl.") ¶ 64.)

As set forth below, Plaintiff brings these claims in the context of HUD's ever-changing guidance to FHA insured lenders.  Plaintiff cannot state a claim for violation of HUD's regulations governing insured lenders, however.  Among other things, what HUD may require for a lender to maintain its FHA approved status is a question entirely separate from what an individual lender's contracts require.  *See Bennett v. Donovan*, No. 11–0498 (ESH), 2011 WL 2746233, at *7 (D. D.C. 2011) ("[W]hether the 'mortgages were properly insured or not does not affect the mortgage's own contractual terms.'").  Under the HECM contract's clear terms, the contract does not require the notice Plaintiff alleges was lacking here, and does not incorporate HUD's regulations.  Moreover, there is no private right of action to enforce the statute or regulations at issue.

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831-SC

Plaintiff's entire complaint is premised on the theory that Defendants were obligated to issue a notice to borrowers or their heirs of certain options to cure when an HECM loan becomes due and payable.  The plain language of the HECM contracts, however, evidences no such requirement.  First, the notice provision Plaintiff invokes—Paragraph 9(d) of the HECM Deeds of Trust—by its terms does not apply where, as here, the event causing the HECM loan to become due and payable is the borrower's death.  Second, as set forth below, Paragraph 9(d) requires the lender, in certain circumstances (not including the borrower's death), to: (1) notify the borrower that a loan is due and payable; and (2) wait 30 days after giving that notice to commence foreclosure.  During this 30 day waiting period the borrower may, of its own initiative, exercise certain options to cure.  The HECM does not require notice to the borrower of these cure options, as Plaintiff contends.

As to Plaintiff's theory that Defendants violated "HECM law," the statutes and regulations at issue—the National Housing Act, 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1 *et. seq*—confer no private right of action for enforcement in federal court.  Even if there were a private right of action to enforce these provisions, Plaintiff fails to state a claim for any violation of "HECM law."  At the time the Chandler HECM loan became due and payable, HUD required FHA approved lenders to only accept *arm's length*—*i.e.* non-family—sales transactions to satisfy due and payable HECM loans.  Thus Defendants' alleged failure to notify heirs of the option to purchase the property at 95% comported with HUD's requirements at that time.  Plaintiff's claim for declaratory relief under HECM law provisions thus fails.

Finally, Plaintiff's claim for violation of California Business and Professions Code § 17200 fails as premised on the other failed claims.  This action should be dismissed with prejudice.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the HECM loan's notice provision applies where the event causing the loan to become due and payable is the borrower's death, when Paragraph 9(d)—the notice provision Plaintiff invokes—omits the borrower's death as an event triggering the notice provision.

2.      Whether, in circumstances where Paragraph 9(d) is triggered, it requires Defendants to issue any notice other than that "the loan [has] become[] due and payable," when Paragraph 9(d)

-2-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1  plainly states only that the "*Lender shall notify the Borrower whenever the loan becomes due and*

2  *payable*," and that the Lender "shall not have the right to commence foreclosure until the Borrower

3  has had thirty (30) days after notice" to exercise various options to cure the default.  (Emphasis

4  added).

5       3.     Whether Paragraph 9(d) requires lenders to permit borrowers or their heirs to

6  *purchase* the property for 95% of the appraised value, when the plain language of that provision

7  instead provides that the borrower may *sell* the property for 95% of the appraised value in certain

8  circumstances other than the borrower's death.

9       4.     Whether Plaintiff's declaratory relief claim should be dismissed because there is no

10 private right of action to enforce the statute or regulations at issue, 12 U.S.C. § 1715z-20 and 24

11 C.F.R. § 206.1 *et seq.*

12      5.     Whether Plaintiff in any event fails to state a claim for declaratory relief because

13 Defendants followed HUD's guidance as to HECM loans, and this Court must defer to HUD's

14 interpretations of its own regulations.

15      6.     Whether Plaintiff's claim under California Business and Profession Code § 17200

16 fails as a mere re-hash of Plaintiff's other failed claims.

17                       **III.     BACKGROUND**

18      **A.     Plaintiff's Allegations.**

19      Plaintiff Robert Chandler is the heir of Rosemary Chandler, and the representative of her

20 estate.[1]  (Compl. ¶ 12.)  Mr. Chandler here sues Wells Fargo as the lender and loan servicer of Ms.

21 Chandler's HECM loan, and Fannie Mae "as a successor-in-interest to Wells Fargo on the HECM

22 loans it purchases from Wells Fargo."  (Compl. ¶ 63.)  Plaintiff brings claims for alleged breaches

23 of Ms. Chandler's HECM loan secured by a deed of trust on a residence located at 10095 Sheldon

24 Road, Elk Grove, California.  (Compl. ¶ 12.)

25      Mr. Chandler alleges that "to issue qualifying [HECM] loans, Wells Fargo and other

26 lenders are required to abide by the rules and regulations set out in the HECM statute, 12 U.S.C.

27      [1] Solely for purposes of this motion to dismiss, Defendants assume the truth of the factual
allegations of Plaintiff's Complaint.  Plaintiff's legal conclusions are included here solely for
28 context, and need not be taken as true.

-3-

§ 1715z-20(a), and HECM regulations promulgated by [HUD], 24 C.F.R. § 206.1 *et seq.*"  (Compl. ¶ 20.)  Mr. Chandler further alleges that under "HECM law and the standard loan documents . . . a HECM borrower or the borrower's estate, heirs and/or personal representatives has the right to pay off the HECM by selling the property for 95% of its appraised value when the mortgage becomes due and payable," referred to as "the 95% Rule."  (*Id.* ¶¶ 2, 25.)

Plaintiff also contends that "[t]he 95% Rule is a term of the HECM itself (either the mortgage or deed of trust), and is also mandated by federal law."  (*Id.* ¶ 3.)  Plaintiff further contends that Paragraph 9(d) of the HECM mortgage and deed of trust "requires Defendants to issue notice to the borrowers and their estates that they can satisfy the HECM mortgage either by paying the full mortgage balance, or paying 95% of the appraised value prior to any foreclosure proceedings," and that "Wells Fargo cannot commence foreclosure until at least 30 days after giving this notice."  (Compl. ¶ 63.)

Plaintiff seeks to represent a class of "HECM borrowers, and the estates, heirs and personal representatives of such borrowers, whose loans are or were owned and/or serviced by Defendants, and who were not given the required 95% Rule notice prior to a Trustee's sale or foreclosure, or whose property was sold without allowing them the right to sell or transfer their property for at least 95% of its appraised value."  (Compl. ¶ 45.)

**B.**      **The Chandler HECM.**

The Chandler HECM is secured by two deeds of trust: an Adjustable Rate Home Equity Conversion Deed of Trust," dated November 27, 2006 (RJN Ex. A), and an Adjustable Rate Home Equity Conversion Second Deed of Trust," dated November 27, 2006 (RJN Ex. B).  These Deeds of Trust set forth the "[g]rounds for acceleration of debt."  (RJN Exs. A-B at ¶¶ 9.)  One such event, causing the debt to become "due and payable," occurs when "[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower."  (RJN Exs. A-B ¶¶ 9(a)(i).)

The Deeds of Trust underlying the Chandler HECM also state:

> **Notice to Borrower**.  Lender shall notify the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii)-(v)*.  Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

-4-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

(i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)    Pay the balance in full; or

(iii)    Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale to toward the balance; or

(iv)    Provide the Lender with a deed in lieu of foreclosure.

(*Id.* Ex. B ¶9(c) (emphasis added); *see also id.* Ex. A ¶ 9(d) (identical to language in the Second Deed of Trust, except that "Lender shall notify Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) or (b)"—i.e. when a loan becomes due for reasons *other than the borrower's death*, which is covered by Paragraph 9(a)(i)).)

Notably, this notice provision is not triggered when the event causing the debt to become due and payable is the borrower's death, which is covered by ¶ 9(a)(i), an event specifically *omitted* from triggering the notice provisions in the Deeds of Trust.  (*Id.* Exs. A-B ¶¶ 9.)

Pursuant to Paragraph 9 of the Deeds of Trust, the Chandler HECM thus obligates the lender to notify the borrower "whenever the loan becomes due and payable" for certain reasons other than the borrower's death.  (*Id.*)  The lender must then wait thirty days to commence foreclosure, during which time the borrower may avail itself of certain options to cure the default. Plaintiff, however, contends that in addition to notifying the borrower that the loan is due and payable and waiting thirty days to commence foreclosure, the lender must notify the borrower of its cure options.  (Compl. ¶ 63.)

## C.    HUD's Servicing Guidelines for FHA Approved Lenders.

HUD is the agency charged with administering the statute and regulations Plaintiff invokes, 12 U.S.C. § 1715z-20 and 24 C.F.R. §§ 206.1 *et. seq.  See* 12 U.S.C. §§ 1701c, 1715z-20.  Under the National Housing Act, certain loans, including HECM loans, are insured by the federal government, through the FHA.  *See* 12 U.S.C. § 1715z-20.  Indeed, the stated purpose of the statute Plaintiff invokes is "to authorize the Secretary to carry out a program of mortgage insurance" for HECM loans.  *Id.*  FHA insured loans are only available through FHA approved lenders.  (*See* Compl. ¶ 20.)  Because the FHA—which is a part of HUD—insures HECM loans, lenders are protected in the event the borrower defaults.

-5-

HUD regulations set forth FHA approved "servicing practices" for lenders to follow to maintain their FHA approved status. 24 C.F.R. § 206.201. Under the regulations, failure to follow the servicing guidelines "shall not be a basis for denial of the insurance benefits, but a pattern of refusal or failure to comply will be cause for withdrawal of HUD mortgagee approval." *Id.* The regulations also provide "claims procedures" whereby the lender may "submit claims for the payment of the mortgage insurance benefits" if the borrower defaults and fails to repay the full loan amount. *Id.* § 206.123. One subpart of the claims procedure states that in certain circumstances:

> the mortgagee shall notify the mortgagor that the mortgage is due and payable, *unless the mortgage is due and payable by reason of the mortgagor's death*. The mortgagee shall require the mortgagor to (i) pay the mortgage balance, including any accrued interest and MIP, in full; (ii) sell the property for at least 95% of the appraised value as determined under § 206.125(b), with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure. The mortgagor shall have 30 days in which to comply with the preceding sentence, or correct the matter which resulted in the mortgage coming due and payable, before a foreclosure proceeding is begun.

24 C.F.R. § 206.125(a)(2) (emphasis added).

A HUD Handbook provides "procedural standards and guidelines" for servicers to follow to maintain their FHA approved status.[2] Section 13-33,[3] relating to HECMs, provides:

> For a due and payable mortgage, the mortgagee must:
>
> A. Issue A Repayment Notice. The mortgagor or the mortgagor's estate must be issued a repayment notice stating that the mortgage is due and payable. The notice must also provide the amount of the outstanding balance and the following instructions:
>
> 1. That the debt must be paid in full; or the property must be sold for the lesser of the debt, including shared appreciation, if any, or 95% of the appraised value; or good marketable title to the property must be deeded to the mortgagee.
>
> 2. That the mortgagor or the mortgagor's estate may request an appraisal, at his or her own expense, if an estimate of the property's current value is desired.
>
> 3. That if none of the actions in paragraph A. 1. above are taken in 30 days, foreclosure will be initiated by the mortgagee within 3 months, but not less than 1 month.

---

[2] RJN Ex. C, HUD Handbook 4330.1 Rev-5, available at: http://portal.hud.gov/hudportal/documents/huddoc?id=43301c1HSGH.pdf; *see also* Compl. ¶¶ 29-32.

[3] RJN Ex. D, HUD Handbook 4330.1 Rev-5, § 13, available at: http://portal.hud.gov/hudportal/documents/huddoc?id=43301c13HSGH.pdf; *see also* Compl. ¶ 29-32.

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.: CV11 3831 SC

* * * *

5.  That the mortgage will be released and no deficiency judgment will be taken if the property has no junior liens and is sold for at least 95% of the appraised value, with the net proceeds paid to the mortgagee, even if the debt is greater than the appraised value.

(*Id.*; *see also* Compl. ¶ 30.)

Additionally, "If at any time prior to the foreclosure sale, the mortgagor or the mortgagor's estate sells the property (free of junior liens) for the lesser of the debt, including foreclosure costs actually incurred and the mortgagee's share of net appreciation, if applicable, or 95% of the current appraised value . . . the mortgagee shall discontinue the foreclosure proceedings and accept the payoff." (Compl. ¶ 31; *see also* RJN Ex. D, HUD Handbook 4330.1 Rev-5, § 13-34(C).)

From time to time HUD also issues "Mortgagee Letters" or "MLs" with guidance to servicers regarding their obligations as FHA approved lenders. After HUD issued its HECM Handbook, HUD issued Mortgagee Letter 2008-38, which "clarified" that when an HECM loan becomes due and payable, a borrower or the borrower's estate may *either* pay off the full amount of the loan and retain ownership of the property *or* sell the property in an *arm's length* transaction for at least 95% of the appraised value to pay off the loan. [4]  ML 2008-38 stated:

> *Some program participants mistakenly infer* from [the HECM loan being "non-recourse"] *that a borrower (or the borrower's estate) could pay off the loan balance of a HECM for the lesser of the mortgage balance or the appraised value of the property while retaining ownership of the home. This is not correct* and is not the intended meaning of the [non-recourse] provision.
>
> * * *
>
> *If the mortgage is due and payable and the borrower (or estate) desires to retain ownership of the property, the mortgage debt must be repaid in full.*
>
> * * *
>
> If the mortgage is due and payable and the borrower (or estate) will not be retaining ownership of the property, the property may be sold for at least the lesser of the unpaid mortgage balance or 95% of appraised value. [S]uch sale of the property . . . should be an *arm's length transaction*. An arm's length transaction is characterized by the following (1) *the absence of a relation between the buyer and seller* . . . .

*Id.* (Emphasis added).

---

[4] *See* RJN Ex. E, ML 2008-38, dated December 5, 2008, available at: http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_20411.doc.

On April 5, 2011, HUD issued ML 2011-16, rescinding ML 2008-38.[5]  ML 2011-16 did not itself provide guidance on what, if anything, servicers should do differently going forward, but stated "[n]ew guidance on topics related to the regulations at 24 CFR Part 206 and Handbook 4235.1 will be issued in the future."  (*Id.*)

On July 19, 2011, HUD issued new answers to HECM Servicer "Frequently Asked Questions," including new guidance that "[w]hen a HECM loan becomes due and payable as a result of the mortgagor's death and the property is conveyed by will or operation of law to the mortgagor's estate or heirs . . . that party (or parties if multiple heirs) may satisfy the HECM debt by paying the lesser of the mortgage balance or 95% of the current appraised value of the property."[6]

As set forth below, Plaintiff fails to state any claim—for breach of contract, declaratory relief, or violations of California Business and Professions Code § 17200—on these facts.

## IV.    STANDARDS FOR DISMISSAL

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true the facts properly pleaded in the complaint, but not conclusions of law.  *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005).  Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).

While a district court must normally confine its analysis to the pleadings, on a motion to dismiss it may "take judicial notice of facts outside the pleadings."  *See, e.g., Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  The Court may also consider documents incorporated into the complaint by reference.  *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

---

[5] *See* RJN Ex. F, ML 2011-16, available at:
http://portal.hud.gov/hudportal/documents/huddoc?id=11-16ml.pdf.

[6] *See* RJN Ex. G, HECM Servicing Frequently Asked Questions (FAQs)
http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_12607.pdf; *see also* Compl. ¶ 25 n. 3.

-8-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1   Moreover, to assess a complaint's compliance with Federal Rule of Civil Procedure 8, a

2   court must consider only the factual allegations of the complaint—not its legal conclusions or its

3   bare recitation of the elements of a claim—in determining whether the plaintiff has made a plain

4   statement of the grounds of her entitlement to relief.  Fed R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 129

5   S.Ct. 1937, 1949 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

6   harmed-me accusation"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A]

7   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

8   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

9   (internal citation omitted).  If a plaintiff has alleged sufficient facts to bear out the elements of the

10  claim, the court must then consider whether the adequately pleaded facts state a "plausible," rather

11  than a merely "possible," claim.  *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555.

## V.   ARGUMENT

### A.   Plaintiff's Breach of Contract Claim Fails.

14  Plaintiff contends that Defendants breached the HECM contract by: (1) failing to notify

15  borrowers (or the borrowers' estates) "that they can satisfy the HECM mortgage either by paying

16  the full mortgage balance, or by *paying* 95% of the appraised value prior to any foreclosure

17  proceedings;" (2) commencing foreclosure without issuing the required notice of these options; and

18  (3) "by refusing to allow *payment* of 95% of the appraised value to satisfy the HECM Mortgages at

19  issue."  (Compl. ¶ 64, emphasis added.)

20  Because each of these alleged breaches is based on Plaintiff's plainly incorrect reading of

21  the HECM contract, Plaintiff's breach of contract claim should be dismissed as a matter of law.

22  *See Hsu v. UBS Financial Services, Inc.*, No. C 11–02076 WHA, 2011 WL 3443942, at *6 (N.D.

23  Cal. Aug. 5, 2011) ("A district court may dismiss a claim based on plaintiff's asserted

24  interpretation of a contract if the unambiguous plain meaning of its terms clearly do not support

25  that interpretation.") (citing *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 Fed.

26  App'x 123, 124 (9th Cir. 2007)); *Dunn v. GMAC Mortg., LLC*, No. 2:10–CV–03196, 2011 WL

27  1230211, at *2-4 (E.D. Cal. Mar. 28, 2011) (dismissing breach of contract claim where it was

28  based on a plainly incorrect interpretation of the contract).

-9-

Plaintiff's interpretation of the contract is incorrect for the following four reasons:

(1) Paragraph 9(d) does not apply when the event causing the loan to become due and payable is the Borrower's death, as was the case with the Chandler HECM;

(2) Paragraph 9(d) does not require notice of the 95% Rule prior to initiating foreclosure, even where the event triggering the due and payable clause is something other than the borrower's death;

(3) the HECM says nothing regarding whether borrowers may *purchase* the property for 95% of the appraised value; the HECM states only that in certain circumstances borrowers may *sell* at 95% of appraised value; and

(4) HUD's servicing requirements for FHA approved lenders are not incorporated by reference into the HECM contracts here.

Plaintiff's breach of contract claim should thus be dismissed.

**1.     Where the Borrower's Death Causes the Loan to Be Due and Payable, Paragraph 9(d)—Upon Which Plaintiff Relies—Does Not Apply.**

The Deeds of Trust underlying the Chandler HECM set forth the "Grounds for Acceleration of Debt." (Compl. ¶ 26; RJN Exs. A-B at ¶ 9.)  One such event, causing the debt to become "due and payable," occurs when "[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower."  (RJN Exs. A-B ¶¶ 9(a)(i).)

The Chandler HECM Deeds of Trust state in Paragraph 9:

> **Notice to Borrower**.  Lender shall notify the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii)-(v)*.  Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
>
> (i)      Correct the matter which resulted in the Security Instrument coming due and payable; or
>
> (ii)     Pay the balance in full; or
>
> (iii)    Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale to toward the balance; or
>
> (iv)     Provide the Lender with a deed in lieu of foreclosure.

(*Id.* Ex. B ¶ 9(c) (emphasis added); *see also id.* Ex. A ¶ 9(d).)

-10-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

Notably, this notice provision is not triggered when the event causing the debt to become due and payable is the borrower's death. (*See id.*) The borrower's death is covered by ¶ 9(a)(i), an event specifically *omitted* from triggering the notice provisions in the Deeds of Trust. (*Id.* ("Lender shall notify the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii)-(v)*.")(emphasis added); *id.* Ex. A ¶ 9(d) ("Lender shall notify the Secretary and the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii) or (b)*.") (emphasis added).)

Here, the event causing the Chandler HECM to become due and payable is alleged to have been the borrower's death. (Compl. ¶¶ 37-38.) Paragraph 9(d), by its terms, thus does not apply.

Plaintiff nevertheless asserts the blanket proposition that "[n]otice is required when the HECM becomes due and payable, which is addressed in paragraph 9 . . . of the standard HECM (mortgage or deed of trust)." (Compl. ¶ 26.) Plaintiff then selectively quotes paragraph 9(d) of the "standard HECM" Deed of Trust, leaving out the crucial first sentence: *"Lender shall notify the Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii)-(v)*." (RJN Ex. A.)

Plaintiff thus omits language in the contract that dooms his claim: under the plain language of Paragraph 9(d) of the Deeds of Trust, the Chandler HECM obligates the lender to notify the Borrower only "whenever the loan becomes due and payable" *for reasons other than the borrower's death.* (*Id.* Exs. A-B at ¶¶ 9.) Here, where the event triggering acceleration was the borrower's death, Plaintiff can have no claim for breach of Paragraph 9(d). Plaintiff's breach of contract claim should be dismissed for this independent reason. *Hsu*, 2011 WL 3443942, at *6 (dismissing breach of contract claim where it was clearly unsupported by the contract's plain language).

### 2. Even When Paragraph 9(d) Applies, It Does Not Require the Lender to Notify the Borrower of the 95% Rule Prior to Initiating Foreclosure.

Plaintiff's breach of contract claim should also be dismissed as it is based on the incorrect theory that the HECM contract—even as to events of default triggering Paragraph 9(d)—*ever* requires the lender to give the borrower or the borrower's estate notice of the 95% rule prior to initiating foreclosure. Simply put, Paragraph 9(d) does not require notice of the 95% Rule prior to

-11-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1  initiating foreclosure. Rather, Paragraph 9(d) only requires that the lender notify the borrower that

2  the loan is due and payable, and then wait 30 days—during which the borrower can exercise

3  various options—before initiating foreclosure.

4  Again, in selectively quoting Paragraph 9(d), Plaintiff leaves out the crucial first sentence:

5  "*Lender shall notify the Borrower whenever the loan becomes due and payable* under Paragraph

6  9(a)(ii)-(v)." (*See* Compl. ¶ 26; RJN Exs. A-B, ¶¶ 9, emphasis added.) That paragraph continues:

7  "Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days

8  after notice" to exercise cure options. (*See id.*)

9  Thus, the HECM's plain language makes clear that the lender only had to provide notice

10 that the "loan [was] due and payable" and then the lender's right to foreclose did not commence

11 until 30 days elapsed. That the contract permitted Plaintiff to take certain steps during those 30

12 days after notice does not transform the contract into one requiring the lender to notify the Plaintiff

13 of steps he could take. *Cf. Bennett*, 2011 WL 2746233, at *6 (in the context of a prior suit relating

14 to HECM loans brought by Plaintiff's AARP Litigation Foundation counsel, holding "[t]he terms

15 of the [HECM] mortgages at issue are clear.").

16        **3.**     **The Chandler HECM Does Not Require the Lender to Permit the Borrower or Its Heirs to *Purchase* the Property For 95% of its**

17                 **Appraised Value When the Loan is Due and Payable.**

18 Plaintiff also attempts to turn the HECM's provision permitting borrowers in certain

19 circumstances 30 days to "[s]ell the Property for the lesser of the [loan] balance or 95% of the

20 appraised value and apply the net proceeds of the sale toward the [loan] balance," on its head. (*See*

21 RJN Exs. A-B, ¶¶ 9; emphasis added.) Plaintiff contends that this provision means something

22 entirely different than what it says: that the borrower or the borrowers' heirs may not just *sell* but

23 also *purchase* the property for 95% of the appraised value. (Compl. ¶ 34 ("Mr. Chandler . . . is

24 ready and willing to *purchase* the home . . . ."); *id.* ¶ 38 ("Mr. Chandler [spoke] with a Wells Fargo

25 representative . . . stating that he wanted to *purchase* the property . . . ."); *id.* ¶ 44 ("Counsel for

26 Plaintiff . . . communicated Plaintiff's desire to *purchase* the Property for 95% of its appraised

27 value . . . ."). Plaintiff thus contends that "by refusing to allow *payment* of 95% of the appraised

28

-12-
07685/1058/968286.8

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.: CV11 3831 SC

1   value to satisfy the HECM Mortgages at issue," Defendants "have breached the contracts with

2   Plaintiff and Class Members."  (*Id.* ¶ 64 (emphasis added).)

3         Plaintiff's construction is contrary to the plain language of the contract, and its breach of

4   contract claim should thus be dismissed.

5         Nor does it avail Plaintiff that at varying times HUD has taken different views regarding

6   whether a lender is *permitted* to let a borrower or the borrower's heirs purchase property at 95% of

7   the appraised value, and still qualify for an FHA insurance claim for any shortfall on the loan

8   amount.  (*See infra* § III.C. (discussing ML 2008-38 (barring lenders from permitting heirs to

9   purchase at 95% of appraised value when loan is due and payable) and ML 2011-16 (rescinding

10  ML 2008-38).)  First, as set forth in below in Section V.B.2., at the time the Chandler HECM

11  became due, HUD *prohibited* FHA approved lenders from permitting heirs to purchase the

12  property at 95% of appraised value.  Second, as another Court faced with interpreting HECM

13  contracts has recently held, "*whether the 'mortgages were properly insured or not does not affect*

14  *the mortgage's own contractual terms.*'"  *Bennett*, 2011 WL 2746233, at *7 (emphasis added).

15        Plaintiff thus fails to state a claim that Defendants breached the HECM by failing to permit

16  borrowers to *purchase* the properties for 95% of appraised property value.

17        **4.**      **The Parties' Contract Does Not Incorporate HUD's Servicing Guidelines.**

18        The Chandler HECM also does not incorporate HUD's servicing guidelines or regulations

19  into the contract by reference, as some courts have held is the case with other contracts involving

20  FHA approved lenders.  *See McAllister v. BAC Home Loans Servicing, LP*, No. 4:10–CV–504,

21  2011 WL 2200672, at *1 (E.D. Tex. Apr. 28, 2011) (Plaintiff stated a claim where mortgage at

22  issue incorporated HUD regulations by reference; the claim sounded in contract).

23        The contracts at issue in *McAllister* contained language absent here.  There, the contract

24  included a provision titled "Regulations of HUD Secretary" and stated that "[t]his [Deed of Trust]

25  *does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary*."

26  (*See McAllister*, E.D. Tex. No. 4:10–CV–504, Dkt. No. 13, Second Am. Compl., dated January 19,

27  2011, ¶ 25, emphasis added.)  Here, the Chandler HECM Deeds of Trust refer to the HUD

28  Secretary in the context of HUD's insurance of the debt, but have no separate "Regulations of

-13-

HUD Secretary" provision or other reference incorporating HUD's regulations. Plaintiff may not import into the HECM contract requirements that the HECM does not itself contain. *Cf. Bennett*, 2011 WL 2746233, at *6 (Plaintiffs' "proposed interpretation" of HUD regulations cannot "retroactively change the contractual provisions in [HECM] mortgages . . . .").

In summary, the contract claim fails for four reasons: (1) Paragraph 9(d) does not apply when the event causing the loan to become due and payable is the Borrower's death, as was the case with the Chandler HECM; (2) Paragraph 9(d) does not require notice of the 95% Rule prior to initiating foreclosure, even where the event triggering the due and payable clause is something other than the borrower's death; (3) the HECM says nothing regarding whether borrowers may *purchase* the property for 95% of the appraised value; the HECM states only that in certain circumstances borrowers may *sell* at 95% of appraised value; and (4) HUD's servicing requirements for FHA approved lenders are not incorporated by reference into the HECM contracts here. Plaintiff's breach of contract claim should thus be dismissed.

**B.     Plaintiff's Declaratory Relief Claim Fails.**

Plaintiff fails to state a claim for declaratory relief because there is no express or implied private right of action to enforce the National Housing Act, 12 U.S.C. §§ 1701 *et seq.* ("NHA"), 12 U.S.C. 1715z-20 (the specific NHA provision here at issue), or the HUD regulations and servicing guidelines upon which Plaintiff relies. Moreover, even if there were a private right of action, Defendants have complied with the statute and regulations at issue. Plaintiff's declaratory relief claims should therefore be dismissed.

**1.     There Is No Private Right of Action to Enforce the National Housing Act or HUD's Regulations and Servicing Guidelines Thereunder.**

"[T]here is no private right of action for breach of HUD regulations or FHA policy. There is also no private right of action of a mortgagee's noncompliance with the National Housing Act, 12 U.S.C. 1701." *Wells Fargo Bank, N.A. v. Favino*, No. 1:10-Cv-571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) (citing *Mitchell v. Chase Home Fin. LLC*, No. 3:06-CV2099-k, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008). Indeed, "[a]s other courts have observed, the regulations promulgated under the National Housing Act govern relations between the mortgagee

-14-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.: CV11 3831 SC

1   and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure
2   to follow said regulations." *Mitchell*, 2008 WL 623395, at *3 (collecting cases).

3        "The [National Housing] Act does not provide an express private cause of action—the
4   statute's various intended beneficiaries are thus without an explicit remedy either against HUD or
5   against any of the other private parties also involved in the statutory scheme." *Shivers v. Landrieu*,
6   674 F.2d 906, 910-911 (D.C. Cir. 1981) ("We find that the statute does not support a judicial
7   inference that tenants in federally insured veterans' housing have a right to sue the government or
8   these private parties in a federal court to force compliance with HUD regulations.").  Likewise "*no
9   express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage
10  servicing policies*."  *Federal Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989)
11  (citation omitted, emphasis added); *accord M. B. Guran Co., Inc. v. City of Akron,* 546 F.2d 201,
12  205) (6th Cir. 1976) (City's violation of competitive bid guidelines contained in a HUD handbook
13  did not give rise to an implied right of action cognizable in federal court by the disappointed
14  contractor.); *Spieth v. Bucks County Housing Authority*, 594 F.Supp.2d 584, 592 (E.D. Pa. 2009)
15  (In suit relating to HUD regulations involving Section 8 housing, holding "[plaintiff] *cannot bring
16  a claim in a District Court based on a violation of HUD's regulations because they do not create a
17  private right of action*.") (emphasis added).

18       Moreover, "[a] private cause of action would not further the goals of the National Housing
19  Act.  It would delay foreclosure, and the ultimate losses to HUD will be much greater . . . . Further,
20  an implied cause of action will discourage private investment, and interfere with the primary
21  jurisdiction of HUD to approve and supervise HUD programs." *Roberts v. Cameron-Brown Co*.
22  556 F.2d 356, 361 (5th Cir. 1977).

23       The Ninth Circuit, faced with a suit under the Housing Act, 42 U.S.C. 1460(c)(4) and HUD
24  regulations thereunder, similarly found that statute and accompanying HUD regulations conferred
25  no private right of action.  *See Rohnert Park v. Harris*, 601 F. 2d 1040, 1046 (9th Cir. 1979)
26  (applying standards under *Cort v. Ash*, 422 U.S. 66 (1975) in determining the lack of implied
27  private right of action).

28

-15-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1   Because there is no private right of action to enforce the HECM laws Plaintiff invokes, his

2   claim for declaratory relief—that "Defendants' failure to provide such notice and opportunity

3   [regarding the 95% Rule] violates 12 U.S.C. § 1715z-20, 24 C.F.R. 206.1 *et seq.*"—should be

4   dismissed.  (Compl. ¶ 54); *Cleveland v. Aurora Loan Services, LLC*, No. C-11–0773-PJH, 2011

5   WL 2020565, at *5 (N.D. No. Cal. May 24, 2011) ("Since plaintiff has no right of action under

6   [provision there at issue, the Home Affordable Modification Program] . . . the court would have no

7   basis upon which to make a judicial determination of plaintiff's 'rights, obligations, and duties,'"

8   as requested in Plaintiff's claim for declaratory relief.).

9         **2.   Even if There Were A Private Right of Action, Plaintiff's Claim That
10             Defendants Violated HECM Law Fails As Based on a Plainly Incorrect
               Interpretation of that Law.**

11   Even if there were a private right of action to enforce HECM law, Plaintiff's claim fails as

12   based on a plainly incorrect interpretation of that law.  Plaintiff's allegations that Defendants

13   violated the NHA and HUD's regulations stands in stark contrast to HUD's guidance to lenders

14   regarding what it expects from FHA approved servicers.  HUD's interpretation of the NHA and its

15   own regulations and guidelines is entitled to deference.  *See Malone Mortgage Company America,*

16   *Ltd. v. Martinez*, No. 02–CV–1870–P, 2002 WL 31114160, at *19 (N.D. Tex. Sept. 23, 2002).

17   ("Deferring to HUD's interpretation of 12 U.S.C. § 1708(c) and 24 C.F.R. part 25, the Court rejects

18   Plaintiff's claim . . . ."); *cf. Balvage v. Ryderwood Improvement and Service Ass'n, Inc*., 642 F.3d

19   765, 775 (9th Cir. 2011) (In context of the Fair Housing Act, holding "We defer to HUD's

20   reasonable interpretation of the [statute]" and "[t]he agency is entitled to further deference when it

21   adopts a reasonable interpretation of regulations it has put in force.").

22   Far from *requiring* lenders to provide notice and opportunity to a borrower's heirs of an

23   alleged right to purchase the property for 95%, HUD until recently *prohibited* lenders from

24   allowing heirs to purchase the property.

25   From December 5, 2008, until April 5, 2011, HUD's guidance to lenders who wished to

26   maintain their FHA approved status was: "[i]f the mortgage is due and payable and the borrower

27

28

-16-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1   (or estate) desires to retain ownership of the property, *the mortgage debt must be repaid in full.*"[7]

2   Additionally, "[i]*f the mortgage is due and payable and the borrower (or estate) will not be*

3   *retaining ownership* of the property, *the property may be sold* for at least the lesser of the unpaid

4   mortgage balance or 95% of appraised value. [S]uch sale of the property . . . should be an *arm's*

5   *length transaction*. An arm's length transaction is characterized by the following (1) *the absence*

6   *of a relation between the buyer and seller . . . . Id.* (Emphasis added).

7           Thus, in January 2010, when the Chandler HECM became due and payable due to the

8   borrower's death, *HUD interpreted its own servicing guidelines to bar sales to heirs for 95% of the*

9   *appraised value*. (*See id.*; Compl. ¶ 27.) Plaintiff thus cannot state a claim for alleged failures to

10  provide notice and opportunity to Mr. Chandler of an alleged right to purchase the property for

11  95% prior to April 5, 2011, since such conduct plainly complied with HUD's guidance.

12          As set forth above, HUD has recently changed its view regarding whether a lender is even

13  *permitted* to let a borrower or the borrower's heirs purchase property at 95% of the appraised

14  value, and still qualify for an FHA insurance claim for any shortfall on the loan amount. (*See*

15  *Supra*, § III.C. (discussing ML 2008-38 (barring lenders from permitting heirs to purchase at 95%

16  of appraised value when loan is due and payable) and ML 2011-16 (rescinding ML 2008-38).)

17          Finally, as with Plaintiff's selective quotation of the contract, Plaintiff selectively relies on

18  24 C.F.R. § 206.125. That regulation makes clear that the lender need not issue a notice that the

19  loan is due and payable when the event triggering acceleration is the borrower's death. 24 C.F.R.

20  § 206.125(a)(2), upon which Plaintiff relies, provides: "the mortgagee shall notify the mortgagor

21  that the mortgage is due and payable, *unless the mortgage is due and payable by reason of the*

22  *mortgagor's death*." 24 C.F.R. § 206.125(a)(2) (emphasis added); (Compl. ¶ 27).

23          As Defendants have complied with HUD's interpretation of its own guidelines and with the

24  plain letter of the regulations, Plaintiff fails to state a claim that Defendants violated "HECM law."

25

26

27  _____

28     [7] *See* RJN Ex. E, ML 2008-38, available at:
    http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_20411.doc (emphasis added).

**NOTICE OF MOTION AND MOTION TO DISMISS**
                                                              Case No.: CV11 3831 SC

**C.**     **Plaintiff Cannot State A Claim For Violations of California Business and Professions Code § 17200**

Plaintiff purports to bring his claim under each "prong"—unlawful, unfair and fraudulent—of California Business and Professions Code § 17200 ("UCL").  (Compl. ¶¶ 69-72.)

"Because the [UCL] statute is written in the disjunctive, it applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Each prong of the UCL is a separate and distinct theory of liability."  *Arvizu v. GMAC Mortg., LLC*, No. 10-990, 2010 WL 3958666, at *6 (E.D. Cal. Oct. 8, 2010); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  Plaintiff fails to state a claim under each prong of the UCL.

Plaintiff's "unlawful" claim under the UCL is premised on alleged violation of "numerous laws and public policies of the state of California."  (Compl. ¶ 70.)  The only laws Plaintiff specifically alleges that the Defendants have violated, however, are the HECM statutes and regulations addressed above, 12 U.S.C. § 1715z-20, 24 C.F.R. 206.1 *et seq.*  As set forth above, these alleged violations of "HECM law" are not actionable.  (*Supra*, § V.B.1.)  Where "the alleged [statutory] violations are not actionable, [they] cannot be used to support a claim under § 17200."  *See, e.g., Cleveland*, 2011 WL 2020565, at *5.

Moreover, even if there were a right of action to enforce HECM law, Plaintiff's § 17200 claim fails as premised on an incorrect interpretation of HECM law.  (*Supra*, § V.B.2.)  A claim under § 17200 fails where, based on the allegations of the complaint, the Defendant complied with the underlying law.  *Higginbottom v. U.S. Bancorp*, 2011 WL 1558681, at *7 (N.D. Cal. April 25, 2011).  Under HUD's interpretations of its own guidelines, Defendants' alleged conduct in failing to issue notice and opportunity to borrowers' heirs of an ability to purchase the property for 95% complied with HECM law.  The § 17200 claim should therefore be dismissed.

Similarly, Plaintiff cannot premise a violation of § 17200 on mere allegations of a breach of contract.  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal.App.4th 638, 645 (2008) (A mere breach of contract cannot form the predicate for a UCL claim unless "'it also constitutes conduct that is "unlawful, or unfair, or fraudulent.") (citations omitted); *see also South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861, 887 (1999) (The UCL "does not give the

-18-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1  courts a general license to review the fairness of contracts.").  Plaintiff's § 17200 claim should

2  therefore be dismissed with prejudice.

3  Plaintiff's claim fares no better under the "unfair" prong.  "[A] business practice cannot be

4  unfair under the UCL if that practice is permitted by law." *Churchill Village, L.L.C. v. Gen. Elec.*

5  *Co.*, 169 F. Supp. 2d 1119, 1130 (N.D. Cal. 2000).  Instead, "unfairness" must be "'tethered to

6  some legislatively declared policy or proof of some actual or threatened impact on competition.'"

7  *Id.* (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-187

8  (1999)).  As set forth herein, plaintiff fails to allege a viable violation of any law, as the HECM

9  laws permit of no private right of action, and Defendants have in any event complied with the law.

10  Plaintiff thus cannot state any "unfairness" claim under the UCL.

11  Moreover, under *Iqbal*, UCL claims based on alleged unfairness must be pled with enough

12  specificity to state a plausible claim.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035,

13  1044 (9th Cir. 2010) ("[C]onclusory allegations about fraud [and] unfair treatment" do not "state[]

14  a plausible claim.") (citing *Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint

15  must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

16  its face.")).  Plaintiff's § 17200 claim recites only the conduct which Plaintiff alleges violates

17  HECM law, and then tags on the conclusory allegation that such conduct is "unfair."  This lack of

18  plausibility dooms Plaintiff's "unfairness" claim.

19  Finally, UCL claims under either the "unfair" or "fraudulent" prongs must be plead with

20  particularity under Rule 9(b) where they are rooted in allegations of "unified fraudulent course of

21  conduct."  *See Kearns*, 567 F.3d at 1126 (dismissing claims of "unfair" UCL violations under Rule

22  9(b)); *Arvizu*, 2010 WL 3958666, at *6 (dismissing claims of "deceptive" and "fraudulent" UCL

23  violations because "allegations [did] not specify the basis for [the] claim—i.e., whether it is based

24  on an unlawful, unfair, or fraudulent practice—let alone state, with reasonable particularity, the

25  facts supporting the statutory elements of the violation.").  Plaintiff's UCL claims based on alleged

26  "unfair" or "fraudulent" violations should be dismissed for failure to plead with particularity,

27  because—beyond reciting alleged violations of HECM law (which fail, as set forth above)—

28  Plaintiff provides no specificity as to allegedly "unfair" or "fraudulent" conduct.

-19-

**NOTICE OF MOTION AND MOTION TO DISMISS**
Case No.:  CV11 3831 SC

1   In sum, because Plaintiff's UCL claim is a mere re-hash of its failed claim for violations of

2   HECM law, the claim should be dismissed. *See Keng Hee Paik v. Wells Fargo Bank, N.A.*, No. C

3   10–04016 WHA, 2011 WL 3359697, at *5 (N.D. Cal. Aug. 3, 2011) (UCL claim failed where it

4   was premised solely on failed allegations of a statutory violation).

5   ## VI.    CONCLUSION

6   For the foregoing reasons, Defendants Wells Fargo and Fannie Mae respectfully request

7   that the Court dismiss the complaint in its entirety, without leave to amend.  Specifically,

8   Defendants request that the Court: (1) dismiss Plaintiff's claim for breach of contract as based on

9   an incorrect reading of the HECM contract; (2) dismiss Plaintiff's claim for declaratory relief that

10  Defendants violated the contract or "HECM law," as (a) there is no private right of action to

11  enforce the statute or regulations at issue; (b) Defendants have in any event complied with the

12  statute and regulations at issue; and (c) Defendants have not breached the HECM contract; and

13  (3) dismiss Plaintiff's § 17200 claim as a mere re-hash of Plaintiff's other failed claims.

14

15                                           Respectfully submitted,

16  DATED:  October 4, 2011                  SEVERSON & WERSON
                                             A Professional Corporation
17

18                                           By:         /s/    *Rebecca S. Saelao*
                                                         Rebecca S. Saelao
19

20                                           Attorneys for Defendants
                                             WELLS FARGO BANK, N.A. and FEDERAL
21                                           NATIONAL MORTGAGE ASSOCIATION
                                             a/k/a FANNIE MAE

22

23

24

25

26

27

28

-20-