MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
REBECCA S. SAELAO (State Bar No. 222731)
rss@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION a/k/a FANNIE MAE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a California corporation, and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>Defendants. | Case No.:  CV11 3831 SC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:   January 13, 2012<br>Time:           10:00 a.m.<br>Courtroom:      1<br>Judge:          Hon. Samuel Conti<br><br>Complaint Filed: August 3, 2011 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT .......................................................................................................................2

    A. Plaintiff Concedes that the Complaint Is Grounded in a Federal Statutory and Regulatory Regime which Provides No Private Right of Action, and His Complaint Should Thus Be Dismissed. ...........................................................2

    B. Plaintiff Fails to Refute that the Deeds of Trust Do Not Incorporate HUD's Regulations, and His Declaratory Relief and Contract Claims Thus Fail. ...............3

    C. Plaintiff Fails to Refute that His Breach of Contract Claim Fails for Additional Independent Reasons. ..............................................................................6

        1. Plaintiff Fails to Overcome Defendants' Showing that the Contractual Provision Plaintiff Alleges Defendants Breached— Paragraph 9 of the Deeds of Trust—Is Inapplicable Here. .........................6

        2. Plaintiff Fails to Refute that Paragraph 9 Never Requires Notice of the 95% Rule Prior to Initiating Foreclosure. ...............................................8

        3. Plaintiff Fails to Refute that Defendants Were Not Permitted— Much Less Obligated—to "Allow the Chandler Estate to Sell" the Property To Chandler under the 95% Rule." .........................................8

    D. Plaintiff Fails to Salvage His Section 17200 Claim. ............................................10

III. CONCLUSION ..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Int'l Specialty Lines Ins. Co. v. U.S.*,
   No. CV-09-01734, 2010 WL 2635768 (C.D. Cal. June 30, 2010) ........................... 4

*Bennett v. Donovan*,
   No. 11–0498, 2011 WL 2746233 (D.D.C. July 15, 2011) ................................ 8, 9

*Brooks v. Gomez*,
   No. C 10–01873 SBA, 2010 WL 5141862 (N.D. Cal. Dec. 13, 2010) ....................... 3

*Chabner v. United of Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000) ......................................................... 10

*Christensen v. Provident Life & Accident Ins. Co.*,
   No. C07 04789, 2008 WL 410238 (N.D. Cal. Feb. 12, 2008) ............................. 10

*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
   169 F.Supp.2d 1119 (N.D. Cal. 2000) .................................................. 12

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
   No. 04-2867, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ............................... 10

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
   868 F.2d 190 (6th Cir. 1989) .......................................................... 2

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
   No. C-07-2424 SC, 2007 WL 2572191 (N.D. Cal. Sept. 5, 2007) ......................... 12

*Ghazali v. Moran*,
   46 F.3d 52 (9th Cir. 1995) ............................................................ 3

*Higginbottom v. U.S. Bancorp*,
   2011 WL 1558681 (N.D. Cal. Apr. 25, 2011) ........................................... 12

*J & J Sports Prods., Inc. v. Walia*,
   No. 10–5136 SC, 2011 WL 902245 (N.D. Cal. Mar. 14, 2011) ............................ 12

*Labrador v. Seattle Mortg. Co.*,
   No. 08-2270 SC, 2008 WL 475239 (N.D. Cal. Oct. 29, 2008) ............................ 10

*Lucia v. Wells Fargo Bank, N.A.*,
   No. C 10-04749 JSW, 2011 WL 3134422 (N.D. Cal., Apr. 22, 2011) ...................... 10

*M.B. Guran Co., Inc. v. City of Akron*,
   546 F.2d 201 (6th Cir. 1976) .......................................................... 2

*Martinez v. Wells Fargo Bank, N.A.*,
   No. C-06-03327 RMW, 2007 WL 963965 (N.D. Cal. Mar. 30, 2007) ............................... 5, 6

*Motten v. Chase Home Fin.*,
   No. 10–4994, 2011 WL 2566092 (S.D. Tex. June 28, 2011) ...................................................... 5

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
   499 U.S. 117 (1991) ................................................................................................................ 3, 4

*Ocean View Towers Ass'n Ltd. P'Ship. v. U.S.*,
   88 Fed. Cl. 169 (Fed. Ct. Cl. 2009) .............................................................................................. 4

*Rohnert Park v. Harris*,
   601 F.2d 1040 (9th Cir. 1979) ...................................................................................................... 2

*Shivers v. Landrieu*,
   674 F.2d 906 (D.C. Cir. 1981) ...................................................................................................... 2

*Shroyer v. New Cingular Wireless Servs.*,
   622 F.3d 1035 (9th Cir. 2010) .................................................................................................... 12

*Smithson v. United States*,
   847 F.2d 791 (Fed. Cir. 1988) ...................................................................................................... 4

*Spieth v. Bucks County Housing Auth.*,
   594 F.Supp.2d 584 (E.D. Pa. 2009) .............................................................................................. 2

*St. Christopher Assocs., L.P. v. U.S.*,
   511 F.3d 1376 (Fed. Cir. 2008) ................................................................................................ 4, 5

*Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*,
   922 F.Supp. 299 (C.D. Cal. Feb. 28, 1996) ............................................................................... 11

*Umland v. PLANCO Fin. Servs., Inc.*,
   542 F.3d 59 (3rd Cir. 2008) .......................................................................................................... 3

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
   660 F.Supp.2d 1163 (C.D. Cal. 2009) ....................................................................................... 11

*Wells Fargo Bank, N.A. v. Favino*,
   No. 1:10-Cv-571, 2011 WL 1256771 (N.D. Ohio Mar. 31, 2011) ............................................... 2

**STATE CASES**

*Cel-TRech Communic'ns., Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal.4th 163 (1999) ................................................................................................................ 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) .............................................................................................................. 12

**FEDERAL STATUTES**

United States Code
    Title 12, § 1715z-20 .................................................................................................. 6, 11
    Title 42, § 1460(c)(4) ........................................................................................................ 2

**STATE STATUTES**

California Business and Professions Code § 17200 ..................................................... 10, 11, 12, 13

**REGULATIONS**

Code of Federal Regulations
    § 206.31(a)(1) ................................................................................................................. 10
    § 206.201 ........................................................................................................................ 11

## I. INTRODUCTION

In his opposition to Defendants' motion to dismiss ("Opp'n"), Plaintiff argues that Defendants illegally, unfairly and unnecessarily refused to allow him to purchase his mother's home at 95% of its appraised value following her death in 2010. This denial was unnecessary, he says, because his mother's Home Equity Conversion Mortgage ("HECM") was federally insured by HUD, such that Defendants could not possibly have suffered a loss from the sale of the property at substantially less than the balance owed on the loan.

Plaintiff misunderstands or misconstrues HUD's HECM insurance regulations. HUD insurance is only available to FHA-approved HECM lenders. For Wells Fargo or any other lender to maintain its status as an FHA-approved lender, it must meet HUD's insurance eligibility regulations and guidelines. It is undisputed that, at the time of Mrs. Chandler's death in 2010, HUD's guidelines—as set forth in its ML 2008-38—precluded Wells Fargo from allowing Plaintiff to purchase his mother's home for 95% of its appraised value. Thus, had Wells Fargo done what Plaintiff wanted, Wells Fargo would have risked its FHA-approved lender status and the uninsured loss which Plaintiff says was impossible.

Plaintiff's positions are internally inconsistent. On the one hand, he argues that HUD's HECM regulations have the force of law, and should be viewed as having been written into his mother's loan agreement. But then he argues that HUD's interpretation of these regulations was wrong, such that Defendants were obligated to disregard HUD's guidance at the risk of incurring an uninsured loss on his mother's property or loss of Wells Fargo's FHA-approved lender status.

The Court need not and should not follow Plaintiff down this rabbit hole, wondering where his logic might lead. Plaintiff's overarching theory in this lawsuit—that he may "enforce protections central [to the] provision[s] of the federal [HECM] program" (Opp'n at 1)—is flawed and his claims fail for multiple reasons.

There is no private right of action for violation of HUD's regulations; court after court has so held. HUD's HECM regulations merely define what a lender such as Wells Fargo must do to maintain its FHA approval, which is necessary for that lender to be protected from loss as intended under HUD's program.

1

HUD's regulations were not incorporated into Plaintiff's mother's HECM loan agreement, either, and they cannot serve as the basis for his breach of contract claim. Plaintiff's insistence to the contrary ignores the plain language of the loan agreement. Defendants indisputably complied with the terms of the loan as written, by giving Plaintiff notice of default prior to foreclosure. Defendants clearly were not required under the terms of the loan to inform Plaintiff of his "right" to purchase the property at 95% of its appraised value, a right which HUD had decreed he did not have under its HECM program. Finally, Plaintiff's tag-along claim for violation of California's UCL fails because Defendants' compliance with HUD's insurance guidelines did not violate any law, nor could it have been "unfair" to comply with HUD's insurance program under which Wells Fargo agreed to make a HECM loan to Plaintiff's mother.

For each of these reasons, explained in more detail below, the Court should grant Defendants' motion to dismiss without leave to amend.

## II. ARGUMENT

### A. Plaintiff Concedes that the Complaint Is Grounded in a Federal Statutory and Regulatory Regime which Provides No Private Right of Action, and His Complaint Should Thus Be Dismissed.

Plaintiff concedes, as he must, that he "seeks to enforce protections central [to the] provision[s] of the federal Home Equity Conversion Mortgage ('HECM') program." (Opp'n at 1.) Likewise, the Complaint makes clear that it brings "claims based on federal statute and regulations" referred to by Plaintiff as "HECM law." (Compl. ¶¶ 33, 48.) Yet Plaintiff fails to address the numerous authorities cited by Defendants demonstrating that there is no private right of action to "enforce" the National Housing Act or related HUD regulations.[1] Despite Plaintiff's

---

[1] (*See* Opening Br. at 14-16 (citing *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action . . . exists for violation of HUD mortgage servicing policies.") (citation omitted); *Shivers v. Landrieu*, 674 F.2d 906, 910-11 (D.C. Cir. 1981) (No "right to sue . . . private parties in a federal court to force compliance with HUD regulations."); *M.B. Guran Co., Inc. v. City of Akron*, 546 F.2d 201, 205 (6th Cir. 1976) (No right of action to enforce a HUD handbook.); *Wells Fargo Bank, N.A. v. Favino*, No. 1:10-Cv-571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) ("[T]here is no private right of action for breach of HUD regulations or FHA policy. There is also no private right of action of a mortgagee's noncompliance with the National Housing Act, 12 U.S.C. 1701.") (citation omitted); *Spieth v. Bucks County Housing Auth.*, 594 F.Supp.2d 584, 592 (E.D. Pa. 2009) ("[Plaintiff] *cannot bring a claim . . . based on a violation of HUD's regulations because they do not create a private right of action*.") (emphasis added); *c.f. Rohnert Park v. Harris*, 601 F.2d 1040, 1046 (9th Cir. 1979) (no right of action under Housing Act, 42 U.S.C. § 1460(c)(4) and HUD regulations thereunder).)

footnote claiming otherwise, his failure to contend with these authorities amounts to a non-opposition, and warrants dismissal of the Complaint in its entirety. *See, e.g.*, *Brooks v. Gomez*, No. C 10–01873 SBA, 2010 WL 5141862, at *2 (N.D. Cal. Dec. 13, 2010) ("In view of Plaintiff's failure to provide a meaningful opposition to [Defendant's] motion to dismiss," granting the "motion in its entirety.") (citing *Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995)). Plaintiff's complaint may be dismissed on this independent basis.

### B. Plaintiff Fails to Refute that the Deeds of Trust Do Not Incorporate HUD's Regulations, and His Declaratory Relief and Contract Claims Thus Fail.

Plaintiff seeks to evade the lack of a private right of action to enforce HUD's regulations by arguing that the contract purportedly "incorporates HUD's regulations." (Opp'n at 13.) Plaintiff does not, and cannot, point to any express incorporation of HUD's regulations in the contract. Instead, Plaintiff contends that an express incorporation by reference is not required. For the proposition that the entire Code of Federal Regulations relating to HUD's HECM insurance program is part of the parties' contract, Plaintiff proffers the maxim "[l]aws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms." (Opp'n at 14 (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991) ("*Norfolk*")).)

Plaintiff's argument fails. Faced with a similar argument, the Third Circuit has squarely rejected the notion that *Norfolk*'s "broad canon of construction" can "trump the standard inquiry whether a federal statute creates a private right of action." *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66 (3rd Cir. 2008) (citing *Norfolk*, 499 U.S. at 130). In *Umland*, as here, the plaintiff argued that the "implied terms" of her contract incorporated federal statutory law and permitted her to circumvent the lack of a private right of action under a federal statute. *Id.* The Third Circuit disagreed, holding *Norfolk* does not provide a basis to "imply" a federal statute into a contract to get around the statute's lack of a private right of action. *Id.*

Likewise here, neither *Norfolk* nor any other authority permits Plaintiff to "imply" HUD's regulations into the Deeds of Trust. Plaintiff remains bound by both the contract—which does not incorporate the statute—and the terms of HECM law—which provides no right of action.

Nor does Plaintiff's citation to a single Court of Federal Claims case support the sweeping proposition that HUD regulations may be imported wholesale into every contract mentioning HUD. (Opp'n at 14 (citing *Ocean View Towers Ass'n Ltd. P'Ship. v. U.S.*, 88 Fed. Cl. 169, 176 (Fed. Ct. Cl. 2009)).) First, in *Ocean View Towers*, the contract at issue was a Housing Assistance Payment contract *between HUD and the plaintiff. Id.* at 170. The case turned on whether *HUD* was bound by *its own regulations* bearing on the disputed contract language. *Id.* Such a case does not support binding Defendants—as opposed to HUD—to HUD's regulations.[2]

Moreover, the Court of Appeals for the Federal Circuit—to which appeals from the Court of Federal Claims are taken—rejected an identical argument to that made in *Ocean View Towers* and which Plaintiff champions here: "that although the statutory and regulatory provisions are not expressly incorporated by reference into the [contract], [the court] should incorporate the provisions into the [contract] by implication." *St. Christopher Assocs., L.P. v. U.S.*, 511 F.3d 1376, 1383 (Fed. Cir. 2008). There, the Federal Circuit declined to import HUD regulations into a contract by implication, and cited with approval a prior case "warning that wholesale incorporation of regulations into a contract would allow the contracting party to 'choose among a multitude of regulations as to which he could claim a contract breach—and thus [a] wholly new ground of obligation would be summarily created by mere implication.'" *Id.* at 1384 (citing *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988) (quotation marks omitted)). So here.

---

[2] Plaintiff's citation to *Am. Int'l Specialty Lines Ins. Co. v. U.S.*, No. CV-09-01734, 2010 WL 2635768, *5 (C.D. Cal. June 30, 2010) is equally unavailing. That case does not stand for the proposition that by allegedly "mirroring" a statute a contract thereby incorporates it, as Plaintiff contends. (*See* Opp'n at 15 n.9.) That case merely recited the unremarkable proposition that the contracts there at issue "incorporated the provisions of Armed Services Regulation . . . section 7-104.35, either by *reprinting* the language of that section, or by incorporating the terms by explicit reference." *See Am. Int'l Specialty Lines Ins.*, 2010 WL 2635768, at *5 (emphasis added). Plaintiff has not shown—and cannot show—that the Deeds of Trust reprinted (or for that matter "mirrored") the HUD regulations here.

Finally, Plaintiff cannot salvage his incorporation by reference theory by claiming that "references to the HUD Secretary, the HECM statute, and HECM regulations permeate the Deed of Trust." (Opp'n at 14 (citing Defs.' RJN Ex. A pp.2-6, ¶¶ 3, 5, 7, 8, 9(f), 10, 13, 15).)

First, references to HUD could just as easily be said to "permeate" the contract at issue in *St. Christopher Associates*. There, as here, the plaintiff contended that "the contract [should be] construed in light of the statutory program that it implements and the purpose of that program." *Compare St. Christopher Associates*, 11 F.3d at 1383 *with* Opp'n at 13 (advocating that the HECM be construed "in the context of the HECM documents, the program's regulations . . . and, more broadly, in the context of the HECM program itself."). The Federal Circuit, however, declined the plaintiff's invitation to re-write the parties' contract to include HUD's regulations in view of the "statutory program." *Id.* at 1383-84.

Indeed, another court has squarely rejected as "conclusory" the very argument Plaintiff asserts here—i.e., that Paragraph 9 of a Deed of Trust incorporated HUD's regulations merely by passing reference to HUD in the document. *See Motten v. Chase Home Fin.*, No. 10–4994, 2011 WL 2566092, at *10 (S.D. Tex. June 28, 2011) (rejecting the plaintiffs' "conclusor[y] assert[ion] that paragraph 9(d) of the Deed of Trust incorporates the rules and regulations of the Secretary of HUD[.]").

A court in this District likewise rejected the argument that a mortgage contract incorporates by reference HUD regulations mentioned, but not expressly incorporated, in the contract. *See Martinez v. Wells Fargo Bank, N.A.*, No. C-06-03327 RMW, 2007 WL 963965, at*9 (N.D. Cal. Mar. 30, 2007). There, the court held:

> Plaintiffs' breach of contract claim is premised entirely on its contention that the HUD regulations are specifically incorporated into the Deed of Trust between defendants and plaintiffs based on language in the Deed of Trust, which states: "'RESPA' means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part5 3500[sic]), as they might be amended from time to time." Assuming without deciding that the Deed of Trust is a contract between the parties, *the court does not find this language to create a contractual obligation to comply with RESPA and its regulations*.

*Id.* (emphasis added).

Similarly here, none of the contract provisions cited by Plaintiff expressly or impliedly incorporates HUD's regulations into the contract. Instead, most of the provisions Plaintiff cites relate to HUD *insurance* for HECM loans. (*See* RJN Ex. A pp.2-6 at ¶ 3 ("*insurance* shall be maintained in the amounts . . . required by the Secretary of [HUD]"); ¶ 5 (referring to amounts "due to the Secretary for the *Mortgage Insurance Premium*"); ¶ 9(f) (relating to instances of ineligibility for HUD insurance); ¶ 10 ("Borrower shall not be liable for any difference between the *mortgage insurance benefits* paid to Lender and the outstanding indebtedness"); ¶ 13 (relating to security for Secretary's payment of insurance benefits, and stating that "Secretary has no duty to Lender to enforce the covenants of the Second Security Instrument") (all emphasis added).

In fact, the provision the Plaintiff relies on as "critical"—Paragraph 13's mention of the National Housing Act, 12 U.S.C. § 1715z-20 (Opp'n at 14)—relates entirely to the Secretary's security for any payment of insurance benefits. (RJN Ex. A ¶ 13.) The stated purpose of the cited statute is, moreover, "to authorize the Secretary to carry out a program of mortgage insurance." 12 U.S.C. § 1715z-20. As in *Martinez*, this passing reference to a statute does not suffice to incorporate HUD's regulations.[3] *See* 2007 WL 963965, at*9.

This Court should decline Plaintiff's invitation to incorporate HUD's regulations into the contract by purported "implication." As Plaintiff cannot import the regulations into the contract, Plaintiff cannot state a contractual claim for violation of HUD's regulations.

### C. Plaintiff Fails to Refute that His Breach of Contract Claim Fails for Additional Independent Reasons.

#### 1. Plaintiff Fails to Overcome Defendants' Showing that the Contractual Provision Plaintiff Alleges Defendants Breached—Paragraph 9 of the Deeds of Trust—Is Inapplicable Here.

In their motion to dismiss, Defendants demonstrated that Paragraph 9 of the Deed of Trust—the provision Plaintiff contends Defendants breached—does not apply where, as here, the event causing the loan to become due and payable is the borrower's death. (Opening Br. § V.A.1.)

---

[3] The remaining provisions Plaintiff cites likewise do not incorporate HUD's regulations into the contract. (*Id.* ¶ 7 (referring to "Second Security Instrument held by the Secretary on the Property"); ¶ 8 (stating "the Lender may collect fees and charges authorized by the Secretary"); ¶ 15 (stating "Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary").)

1    In response, Plaintiff argues that Defendants' position means that borrowers' estates will never
2    receive notice of default and the estate will then "operate in an information black hole with no
3    knowledge of the lender's determination of default or timeline for foreclosure." (Opp'n at 11.)
4    Plaintiff misstates Defendants' position. Defendants do not contend that borrowers' estates are not
5    entitled to notice of default. Indeed, as Plaintiff concedes, after the borrower's death, *Defendants
6    issued and Plaintiff received a Notice of Default here*. (Compl. ¶ 39; Opp'n at 12, 15.)

7    Defendants' position is rather that Paragraph 9 of the Deed of Trust—which Plaintiff cites
8    as "requir[ing] Defendants to issue notice to the borrowers and their estates that they can satisfy the
9    HECM mortgage either by paying the full mortgage balance, or paying 95% of the appraised value
10   prior to foreclosure proceedings" (Compl. ¶ 63)—is inapplicable here.

11   Plaintiff's citations to other provisions in the Deed of Trust relating to notice are
12   immaterial. (Opp'n at 10-11.) Plaintiff contends Defendants breached the contract not by failing
13   to provide notice of default (which Plaintiff concedes he received) but by allegedly *failing to
14   comply with Paragraph 9*.

15   Plaintiff fails to refute that the borrower's death is an event specifically *omitted* from
16   triggering the notice provisions in Paragraph 9 of the Deeds of Trust. (Opening Br. § V.A.1.;
17   Defendants' Request for Judicial Notice, dated October 4, 2011 ("RJN") Exs. A-B ¶¶ 9).) The
18   borrower's death is covered by ¶ 9(a)(i). (*Id.*) By Paragraph 9's own terms, the Lender is not
19   obligated to notify the Borrower when a loan becomes due and payable under ¶ 9(a)(i). (*Id.* Ex. B
20   ¶ 9 ("Lender shall notify the Borrower whenever the loan becomes due and payable under
21   *Paragraph 9(a)(ii)-(v)*.") (emphasis added); *id.* Ex. A ¶ 9 ("Lender shall notify the Secretary and
22   the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii) or (b)*.")
23   (emphasis added).

24   Plaintiff's theory that Defendants may not have been obligated to notify him that the loan
25   was due and payable under Paragraph 9, but nevertheless were obligated by Paragraph 9 to notify
26   him of options to cure the due and payable loan prior to initiating foreclosure, is nonsensical and
27   contrary to the contract's express language. (*See* Opp'n at 11-12.) Paragraph 9, by its terms, is
28   inapplicable where the loan becomes due as a result of the borrower's death.

Plaintiff cannot state a claim for breach of an inapplicable contractual provision. Plaintiff's breach of contract claim thus fails.

### 2. Plaintiff Fails to Refute that Paragraph 9 Never Requires Notice of the 95% Rule Prior to Initiating Foreclosure.

Plaintiff also fails to refute that Paragraph 9 of the Deeds of Trust *never* requires the lender to give the borrower or the borrower's estate notice of the 95% rule prior to initiating foreclosure. (*See* Opening Br. at § V.A.2.) Rather, Paragraph 9 only requires that the lender notify the borrower that the loan is due and payable, and then wait 30 days—during which the borrower can exercise various options—before initiating foreclosure. (*See* Compl. ¶ 26; RJN Exs. A-B, ¶¶ 9.)

Plaintiff concedes that "Defendants . . . did, in fact, send such a notice." (Opp'n at 15.) Plaintiff also concedes that the notice provided "approximately 90 days to cure the default before foreclosure." (*Id.*) Because Paragraph 9 of the Deeds of Trust never requires more than a Notice of Default followed by a waiting period of 30 days before proceeding with foreclosure—occurrences Plaintiff concedes were met here—Plaintiff fails to state a claim.

### 3. Plaintiff Fails to Refute that Defendants Were Not Permitted—Much Less Obligated—to "Allow the Chandler Estate to Sell" the Property To Chandler under the 95% Rule."

Even if HUD's regulations were somehow imported into the contract, Plaintiff fails to refute that Defendants have complied with those regulations and with HUD's guidance thereunder.

As set forth in Defendants' Opening Brief, at the time the Chandler HECM became due, HUD *prohibited* FHA approved lenders from permitting heirs to purchase the property at 95% of appraised value. (*See* Opening Br. § III.C. (discussing ML 2008-38 (barring lenders from permitting heirs to purchase at 95% of appraised value when loan is due and payable) and ML 2011-16 (rescinding ML 2008-38)).) Thus, not only did HUD's guidance not *obligate* Defendants to permit heirs to purchase the property—HUD did not *permit* such purchases.

In the face of Defendants' clear compliance with ML 2008-38 here, Plaintiff baldly asserts that "ML 2008-38 was an illegally promulgated alteration of the rights of HECM borrowers" which HUD "rescinded shortly after it was challenged." (Opp'n at 17 n.11 (citing *Bennett v. Donovan*, No. 11–0498, 2011 WL 2746233, at *1 (D.D.C. July 15, 2011)).) Plaintiff apparently would have

this Court "imply" into the parties' contract HUD's insurance regulations, and then hold Defendants to account for alleged failure to comply with those regulations not as HUD promulgated or interpreted them, but as Plaintiff wishes them to be understood.

Moreover, *Bennett*, upon which Plaintiff relies, hardly supports Plaintiff's view. (*See id.*) Rather, *Bennett* dismissed in its entirety a complaint brought by Plaintiff's same attorneys, which "allege[d] that the [HUD] Secretary has acted contrary to law by failing to protect the spouses of holders of HECMs from foreclosure." *See* 2011 WL 2746233, at *1. There, "[t]he Secretary move[d] . . . to dismiss plaintiffs' claim . . . *because his interpretation of the statute is both in accordance with the unambiguously expressed intent of Congress and based on a permissible construction of the statute*." *Id.* (emphasis added). After agreeing with the parties that some of the claims were moot, the court granted the Secretary's motion, and dismissed the remaining claims for lack of jurisdiction. (*Id.*)

Throughout the decision dismissing the claims attacking HUD, the court made clear that "[t]he HECM program is designed to 'authorize the Secretary to carry out a program of *mortgage insurance*'." *Id.* (emphasis original). The court further held "whether the 'mortgages were properly insured or not *does not affect the mortgage's own contractual terms*.'" *Id.* at *7 (emphasis added). The court concluded "plaintiffs have not argued, nor could they argue, that that their interpretation of subsection (j) would allow HUD to void the mortgage or alter the terms of contracts between the plaintiffs and private lenders." *Id.*

Plaintiff's citation to *Bennett* for the proposition that he may both discount HUD's guidance in ML 2008-38 while simultaneously re-writing the parties' contract to incorporate *Plaintiff*'s—as opposed to HUD's—view of the regulations, thus fails. Applying the reasoning in *Bennett*, Plaintiff fails to state any claim.

Nor is ML 2008-38 "irrelevant" based on the theory that HUD rescinded the letter prior to the foreclosure sale here in April 2011. (Opp'n at 15, n.10; Compl. ¶ 40.) Plaintiff challenges Defendants' procedures "*when a loan becomes due and payable*," alleging that when the loan becomes due "the borrower or the borrower's estate . . . have the right to receive a 30-day notice" of cure options. (Compl. ¶ 2; emphasis added.) Irrefutably, ML 2008-38 was in effect when the

loan became due and payable in January 2010, and was still in effect in January 2011 when Defendants issued the Notice of Default. (*See* RJN Ex. E (ML 2008-38, dated December 5, 2008); Ex. F (ML 2011-16, dated April 5, 2011, rescinding ML 2008-38); Compl. ¶¶37-39 (stating Borrower died in January 2010 and Defendants issued a Notice of Default in January 2011).)

Plaintiff thus fails to state a claim that Defendants breached HECM law—even if it were imported into the parties' contract—as Defendants complied with HUD's interpretation of its own regulations.

### D. Plaintiff Fails to Salvage His Section 17200 Claim.

As set forth in Defendants' Opening Brief, Plaintiff cannot state a claim under California Business and Professions Code section 17200 for "violations" of HUD's regulations governing FHA approved lenders' insurance eligibility. Plaintiff fails to overcome Defendants' showing.

First, Plaintiff cites inapposite authority for the proposition that a section 17200 claim may be premised on alleged "violation" of a federal statute which itself provides no private right of action. (Opp'n at 19 (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).) As a court in this District has recognized, "the [*Chabner*] decision was particular to [California Insurance Code] § 10144" and is "not controlling" in other contexts. (*See Christensen v. Provident Life & Accident Ins. Co.*, No. C07 04789, 2008 WL 410238, at **2-3 (N.D. Cal. Feb. 12, 2008). Contrary to Plaintiff's arguments, courts in this District and beyond recognize that section 17200 claims should be dismissed where premised on federal statutes which themselves lack a private right of action.[4] *See, e.g.*, *Lucia v. Wells Fargo Bank, N.A.*, No. C 10-04749 JSW, 2011 WL 3134422, at *11 (N.D. Cal., Apr. 22, 2011) (holding plaintiffs "may not assert a UCL claim based on alleged violations of HAMP *because the UCL cannot create a private right of action where none exists under the federal statute*.") (emphasis added); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04-2867, 2006 WL 6217754, at *11 (S.D.N.Y.

---

[4] Plaintiff's citation to this Court's decision in *Labrador v. Seattle Mortg. Co.*, No. 08-2270 SC, 2008 WL 475239 (N.D. Cal. Oct. 29, 2008) is also inapposite. (Opp'n at 19.) There, the lack of a separate federal private right of action was not at issue, as the defendant argued the plaintiff's claims failed on other grounds. *See Labrador*, 2008 WL 475239, at *2 ("Defendant moves to dismiss the entire Complaint based on the argument that there was no 'financial interest' between Defendant and the mortgage broker Home Center, and, accordingly, that there was no violation of 24 C.F.R. § 206.31(a)(1).").

Mar. 31, 2006) ("[T]o the extent that plaintiff's [sections] 17200 et seq. claim is premised on a violation of GATT, it also fails to state a claim because there is no private right of action under GATT.") (citations omitted).

In any event, Plaintiff's section 17200 claim fails on additional, independent grounds. As Plaintiff concedes, "unlawful" acts under section 17200 include only those business practices that are "forbidden by law." (Opp'n at 19 (citing *Cel-TRech Communic'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)).) Plaintiff fails to refute Defendants' showing that the regulations at issue do not "*forbid*" Defendants' alleged conduct. The regulations simply set *eligibility* for FHA insurance and FHA approved lender status. (Opening Br. at 5-8 (detailing HUD's regulation of HECM insurance).)

Indeed, 24 C.F.R. § 206.201 makes clear that HUD's remedy where a lender fails to follow HUD's servicing guidelines is "withdrawal of HUD mortgagee approval." At best Plaintiff has thus alleged that Defendants failed to meet HUD's standards for approved lender status, not that Defendants "violated" any law.[5] *See Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F.Supp. 299, 316 (C.D. Cal. Feb. 28, 1996) (dismissing section 17200 claims because "none of the theories of 'unfair competition' asserted by Plaintiff are 'forbidden by law.'"); *cf. United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1194 (C.D. Cal. 2009) (holding that the California Insurance Code there at issue did not forbid the alleged conduct but merely "establish[ed] a default 'right' held by a contracting party—a right the party may waive, contract away, elect not to invoke, or otherwise impair" and the defendants could thus not have "'violate[d]' [the California Insurance Code] so as to give rise to a § 17200 unlawful business act or practice.").

Second, Defendants showed that HUD not only did not prohibit their alleged conduct, but at the time the Chandler HECM became due and payable, actually *required* lenders to only accept either full payment or sale of the property in an *arms' length transaction* to preserve insurance eligibility for HECM loans. (Opening Br. at 16-17.) A claim under section 17200 fails where,

---

[5] Defendants submit that a lender's FHA approved status is a matter firmly committed to HUD's discretion and not subject to challenge by Plaintiff here. (*See* Opening Br. at 5-8 (detailing regulatory regime under 12 U.S.C. § 1715z-20).)

11

based on the allegations of the complaint, the defendant complied with the underlying law. *Higginbottom v. U.S. Bancorp*, 2011 WL 1558681, at *7 (N.D. Cal. Apr. 25, 2011).

Nor may Plaintiff salvage his claim by arguing that though HUD regulations permitted the alleged conduct, it was somehow nevertheless "unfair." "[A] business practice cannot be unfair under the UCL if that practice is permitted by law." *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F.Supp.2d 1119, 1130 (N.D. Cal. 2000).

As Defendants demonstrated, Plaintiff's section 17200 claim is merely a re-hash of his other failed claims. Courts routinely dismiss section 17200 claims where other claims based on the same alleged conduct fail, leaving "no predicate claim on which a UCL violation can stand." *See, e.g.*, *J & J Sports Prods., Inc. v. Walia*, No. 10–5136 SC, 2011 WL 902245, at *6 (N.D. Cal. Mar. 14, 2011) (dismissing section 17200 claim premised on the same conduct as that underlying other dismissed claims); *First Advantage Background Servs. Corp. v. Private Eyes, Inc*., No. C-07-2424 SC, 2007 WL 2572191, at *5 (N.D. Cal. Sept. 5, 2007) ("'[A]n action under the UCL is not an all-purpose substitute for a tort or contract action.'") (quoting *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1150 (2003)).

Finally, Plaintiff fails to plead his section 17200 claim with anywhere near the particularity required to state a claim under the "fraudulent" and "unfair" prongs of the statute. (Opening Br. at 19.) Plaintiff instead merely recites alleged violations of HECM law (which fail, as set forth above), adding no specificity as to allegedly "unfair" or "fraudulent" conduct. In opposition, Plaintiff merely asserts that the alleged conduct in demanding full payment of the HECM mortgage was "unfair" because purportedly the "harm to the victim outweighs the alleged benefits," and was "fraudulent" because the demand for payment was allegedly a "misrepresentation." (Opp'n at 21.) These conclusory allegations are insufficient. *See Shroyer v. New Cingular Wireless Servs*., 622 F.3d 1035, 1044 (9th Cir. 2010) ("[C]onclusory allegations about fraud [and] unfair treatment" do not "state[] a plausible claim.") (citations omitted).

Plaintiff thus fails to state a claim under the "unlawful," "unfair," or "fraudulent" prongs of section 17200, and the claim should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants Wells Fargo and Fannie Mae respectfully request that the Court dismiss the complaint in its entirety, without leave to amend. Specifically, Defendants request that the Court (1) dismiss Plaintiff's claim for breach of contract as based on an incorrect reading of the HECM contract; (2) dismiss Plaintiff's claim for declaratory relief that Defendants violated the contract or "HECM law," as (a) there is no private right of action to enforce the statute or regulations at issue; (b) Defendants have in any event complied with the statute and regulations at issue; and (c) Defendants have not breached the HECM contract; and (3) dismiss Plaintiff's § 17200 claim as a mere re-hash of Plaintiff's other failed claims.

DATED: November 22, 2011

RESPECTFULLY submitted,

SEVERSON & WERSON
A Professional Corporation

By: /s/ *Rebecca S. Saelao*
    Rebecca S. Saelao

Attorneys for Defendants
WELLS FARGO BANK, N.A. and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE