MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
REBECCA S. SAELAO (State Bar No. 222731)
rss@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION a/k/a FANNIE MAE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a California corporation, and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>Defendants. | Case No.:  CV11 3831 SC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  October 11, 2013<br>Time:  10:00 a.m.<br>Courtroom:  1 – 17th Floor<br>Judge:  Hon. Samuel Conti<br><br>Complaint Filed: August 3, 2011 |

07685.1058/2820750.1

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Please take notice that on October 11, 2013, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 1 on the 17th Floor of the above-entitled Court at 450 Golden Gate Avenue, San Francisco, California, Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage Association ("Fannie Mae"), will, and hereby do, move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the August 5, 2013 "First Amended Complaint for Declaratory Relief; Breach of Contract; and Violation of Business and Professions Code § 17200" ("FAC"), filed by Plaintiff Robert Chandler, as representative of the estate of Rosemary S. Chandler, individually and on behalf of others similarly situated, in this matter.

Plaintiff fails to state any claim upon which relief may be granted. Wells Fargo and Fannie Mae request that the Court dismiss the FAC in its entirety, without leave to amend.

This motion is based on this notice, the accompanying memorandum of points and authorities, the request for judicial notice, as well as the FAC and all other records on file in this action, and any further briefs, evidence, authorities, or argument presented before or at the hearing of this motion.

DATED:  August 23, 2013

SEVERSON & WERSON
A Professional Corporation

By: _____/s/___*Rebecca S. Saelao*_____
                    Rebecca S. Saelao

Attorneys for Defendants
WELLS FARGO BANK, N.A. and FEDERAL
NATIONAL MORTGAGE ASSOCIATION
a/k/a FANNIE MAE

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ...................................................3

III.  BACKGROUND ..................................................................................................4

    A.   Plaintiff's Allegations....................................................................................4

    B.   The Chandler HECM......................................................................................5

    C.   HUD's Servicing Guidelines for FHA Approved Lenders. ...................................6

IV.  STANDARDS FOR DISMISSAL ......................................................................9

V.   ARGUMENT ......................................................................................................10

    A.   Plaintiff's Declaratory Relief Claim Fails. ..................................................10

        1.   There Is No Private Right of Action to Enforce the National Housing Act or HUD's Regulations and Servicing Guidelines. ..............10

        2.   Even if There Were a Private Right of Action, Plaintiff's Claim That Defendants Violated HECM Law Fails as Based on a Plainly Incorrect Interpretation of that Law. ...............................................12

    B.   Plaintiff's Breach of Contract Claim Fails. .................................................14

        1.   Where the Borrower's Death Causes the Loan to Be Due and Payable, Paragraph 9(d)—Upon Which Plaintiff Relies—Does Not Apply. ........................................................................................15

        2.   Even When Paragraph 9(d) Applies, It Does Not Require the Lender to Obtain an Appraisal or Notify the Borrower of the "FMV Rule" Prior to Initiating Foreclosure.............................................17

        3.   The Chandler HECM Does Not Require the Lender to Permit the Borrower or Heirs to *Purchase* the Property For 95% of its Appraised Value When the Loan is Due and Payable.............................18

        4.   The Parties' Contract Does Not Incorporate the National Housing Act or HUD's Regulations...........................................................19

    C.   Plaintiff Cannot State A Claim For Violations of California Business and Professions Code § 17200 ........................................................................21

VI.  CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aguiar v. Wells Fargo Bank, N.A.*,
    2012 WL 5915124 (N.D. Cal. Nov. 26, 2012) ..................................................... 11

*Alperin v. Vatican Bank*,
    410 F.3d 532 (9th Cir. 2005) ............................................................................ 9

*Arvizu v. GMAC Mortg., LLC*,
    2010 WL 3958666 (E.D. Cal. Oct. 8, 2010) ................................................ 22, 23

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) .................................................................................. 10, 23

*Astoria Federal Sav. & Loan Ass'n v. Solimino*,
    501 U.S. 104 (1991) ......................................................................................... 10

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ............................................................................. 9

*Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc.*,
    642 F.3d 765 (9th Cir. 2011) ..................................................................... 12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 10

*Bennett v. Donovan*,
    2011 WL 2746233 (D. D.C. Jul. 15, 2011) ............................................... 17, 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .................................................................................... 22

*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ........................................................... 22

*Cleveland v. Aurora Loan Services, LLC*,
    2011 WL 2020565 (N.D. Cal. May 24, 2011) .......................................... 12, 22

*Cort v. Ash*,
    422 U.S. 66 (1975) .......................................................................................... 12

*Denley v. Vericrest Fin., Inc.*,
    2012 WL 2368325 (S.D. Tex. June 21, 2012) ................................................. 19

*Dunn v. GMAC Mortg., LLC*,
    2011 WL 1230211 (E.D. Cal. Mar. 28, 2011) ........................................... 14, 16

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

*Federal Nat. Mortg. Ass'n v. LeCrone*,
868 F.2d 190 (6th Cir. 1989) ...................................................................11

*Higginbottom v. U.S. Bancorp*,
2011 WL 1558681 (N.D. Cal. Apr. 25, 2011) .......................................22

*Holloway v. Wells Fargo Bank, N.A.*,
2013 WL 1187156 (N.D. Tex. Feb. 26, 2013) .......................................19

*Hsu v. UBS Fin. Servs., Inc.*,
2011 WL 3443942 (N.D. Cal. Aug. 5, 2011) ...................................14, 17

*Jara v. Aurora Loan Servs. LLC*,
2011 WL 4536898 (N.D. Cal. Sept. 30, 2011) .......................................11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...........................................................22, 23

*Keng Hee Paik v. Wells Fargo Bank, N.A.*,
2011 WL 3359697 (N.D. Cal. Aug. 3, 2011) .........................................23

*Lollis v. HUD*,
2012 WL 1252568 (N.D. Tex. Mar. 14, 2012).......................................18

*M. B. Guran Co., Inc. v. City of Akron*,
546 F.2d 201 ..............................................................................................11

*Mack v. South Bay Beer Distributors*,
798 F.2d 1279 (9th Cir. 1986) .................................................................9

*Malone Mortgage Company America, Ltd. v. Martinez*,
2002 WL 31114160 (N.D. Tex. Sept. 23, 2002) ...................................12

*Martinez v. Wells Fargo Bank, N.A.*,
2007 WL 963965 (N.D. Cal. Mar. 30, 2007) .........................................20

*McAllister v. BAC Home Loans Servicing, LP*,
2011 WL 2200672 (E.D. Tex. Apr. 28, 2011) ...................................19, 20

*Mitchell v. Chase Home Fin. LLC*,
2008 WL 623395 (N.D. Tex. Mar. 4, 2008).........................................11

*Motten v. Chase Home Fin.*,
831 F.Supp.2d 988 (S.D. Tex. 2011)........................................................20

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
499 U.S. 117 (1991) .................................................................................21

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
160 Cal.App.4th 638 (2008) ..................................................................23

*Roberts v. Cameron-Brown Co.*
    556 F.2d 356 (5th Cir. 1977) ............................................................... 12

*Robertson v. Dean Witter Reynolds, Inc.,*
    749 F.2d 530 (9th Cir. 1984) ................................................................. 9

*Rohnert Park v. Harris,*
    601 F. 2d 1040 (9th Cir. 1979) .......................................................... 12

*Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of S.F.,*
    724 F.Supp. 683 (N.D. Cal. 1989) ..................................................... 11

*Shivers v. Landrieu,*
    674 F.2d 906 (D.C. Cir. 1981) ............................................................ 11

*Shroyer v. New Cingular Wireless Servs.,*
    622 F.3d 1035 (9th Cir. 2010) ........................................................... 23

*Smithson v. United States,*
    847 F.2d 791 (Fed. Cir. 1988) ........................................................... 21

*South Bay Chevrolet v. General Motors Acceptance Corp.,*
    72 Cal.App.4th 861 (1999) ................................................................ 23

*St. Christopher Assocs., L.P. v. U.S.,*
    511 F.3d 1376 (Fed. Cir. 2008) ......................................................... 21

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.,*
    252 Fed. App'x 123 (9th Cir. 2007) ................................................... 14

*Umland v. PLANCO Fin. Servs., Inc.,*
    542 F.3d 59, 66 (3rd Cir. 2008) ......................................................... 21

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ............................................................. 10

*Wells Fargo Bank, N.A. v. Favino,*
    2011 WL 1256771 (N.D. Ohio Mar. 31, 2011) ................................... 11

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

**STATUTES**

United States Code
 Title 12
   § 1701 *et seq.* ..................................................................................10, 11
   § 1701c ...............................................................................................6
   § 1708 ...............................................................................................12
   § 1715z-20 ...................................................................................*passim*
   § 2601 *et seq.*....................................................................................20
 Title 42
   §1460 ...............................................................................................12

Business & Professions Code
   § 17200 .......................................................................................*passim*

**REGULATIONS, RULES**

Code of Federal Regulations
 Title 24
   § 206.1 *et. seq.*............................................................................*passim*
   § 206.125 ...............................................................................7, 8, 14
   § 206.201 .............................................................................................7
 24 CFR pt. 206 and ..........................................................................9
 24 C.F.R. pt. 25 ...............................................................................12

Federal Rules of Civil Procedure
  Rule 8..................................................................................................10
  Rule 9..................................................................................................23
  Rule 12..........................................................................................1, 9

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.      INTRODUCTION

3

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage

4

Association ("Fannie Mae") bring this motion to dismiss pursuant to Federal Rule of Civil

5

Procedure 12(b)(6).  Each of Plaintiff's claims—for declaratory relief, breach of contract, and

6

violations of California Business and Profession Code § 17200—fails, as set forth below.

7

Plaintiff's complaint is premised on the theory that Defendants illegally, unfairly and

8

unnecessarily refused to allow him to purchase his mother's home at 95% of its appraised value,

9

following her death in 2010.[1]  This denial was unnecessary, he says, because his mother's Home

10

Equity Conversion Mortgage ("HECM") was federally insured by HUD, such that Defendants

11

could not possibly have suffered a loss from the sale of the property at substantially less than the

12

balance owed on the loan.  (FAC ¶ 3.)

13

Plaintiff misunderstands or misconstrues HUD's HECM insurance regulations.  HUD

14

insurance is only available to FHA approved HECM lenders.  For Wells Fargo or any other lender

15

to maintain its status as an FHA approved lender, it must meet HUD's insurance eligibility

16

regulations and guidelines.  It is judicially noticeable fact that, at the time of Mrs. Chandler's death

17

in 2010, HUD's guidelines—as set forth in its ML 2008-38—precluded Wells Fargo from allowing

18

Plaintiff to purchase his mother's home for 95% of its appraised value.  Thus, had Wells Fargo

19

done what Plaintiff wanted, Wells Fargo would have risked its FHA approved lender status and the

20

uninsured loss which Plaintiff says was impossible.

21

Plaintiff's positions are internally inconsistent.  On the one hand, he alleges that HUD's

22

HECM regulations have the force of law, and should be viewed as having been written into his

23

mother's loan agreement.  But then he assumes that HUD's interpretation of these regulations was

24

wrong, such that Defendants were obligated to disregard HUD's guidance at the risk of incurring

25

an uninsured loss on his mother's property or loss of Wells Fargo's FHA approved lender status.

26

27

[1] Plaintiff refers to the opportunity to purchase a deceased HECM borrower's property at 95% of current appraised value as the "fair market value" or "FMV Rule."  (First Amended

28

Complaint, dated August 5, 2013 ("FAC") ¶ 2.)

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831-SC

The Court need not and should not follow Plaintiff down this rabbit hole, wondering where his logic might lead. Plaintiff's overarching theory in this lawsuit—that the so called "FMV Rule" is "a term of the HECM itself" and "is also mandated by federal law" (FAC at ¶ 3)—is flawed and his claims fail for multiple reasons.

There is no private right of action for violation of the statutes and regulations at issue, the National Housing Act, 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1 *et. seq.*; court after court has so held. HUD's HECM regulations merely define what a lender such as Wells Fargo must do to maintain its FHA approval, which is necessary for that lender to be protected from loss as intended under HUD's program.

Even if there were a private right of action to enforce these provisions, Plaintiff fails to state a claim for any violation of these provisions. At the time the Chandler HECM loan became due and payable, HUD required FHA approved lenders to only accept *arm's length*—*i.e.* non-family—sales transactions to satisfy due and payable HECM loans. Thus Defendants' alleged failure to notify heirs of the option to purchase the property at 95% comported with HUD's requirements at that time.

Nor were HUD's regulations incorporated into Plaintiff's mother's HECM loan agreement, and they cannot serve as the basis for his breach of contract claim. Plaintiff's insistence to the contrary ignores the plain language of the loan agreement, with which Defendants indisputably complied. Indeed, the provision Plaintiff invokes as purportedly requiring notice of the "FMV Rule"—Paragraph 9(d) of the HECM Deeds of Trust—by its terms does not apply where, as here, the event causing the HECM loan to become due and payable is the borrower's death. Indeed, Plaintiff's amended complaint concedes that Paragraph 9(d) only applies "*in certain situations other than the death of the borrower.*" (FAC ¶ 28 (emphasis added).)

Finally, Plaintiff's tag-along claim for violation of California's UCL fails because Defendants' compliance with HUD's insurance guidelines did not violate any law, nor could it have been "unfair" to comply with HUD's insurance program under which Wells Fargo agreed to make a HECM loan to Plaintiff's mother.

1   For each of these reasons, explained in more detail below, the Court should grant

2   Defendants' motion to dismiss without leave to amend.

3                    II.      STATEMENT OF ISSUES TO BE DECIDED

4       1.      Whether Plaintiff's declaratory relief claim should be dismissed because there is no

5   private right of action to enforce the statute or regulations at issue, 12 U.S.C. § 1715z-20 and 24

6   C.F.R. § 206.1 *et seq.*

7       2.      Whether Plaintiff in any event fails to state a claim for declaratory relief because

8   Defendants followed HUD's guidance as to HECM loans, and this Court must defer to HUD's

9   interpretations of its own regulations.

10      3.      Whether the HECM contract's so-called "FMV Rule" provision applies where the

11  event causing the loan to become due and payable is the borrower's death, when Paragraph 9(d)—

12  the provision Plaintiff invokes—omits the borrower's death as a triggering event.

13      4.      Whether, in circumstances where Paragraph 9(d) is triggered, it requires Defendants

14  to do anything more than issue notice that "the loan [has] become[] due and payable," when

15  Paragraph 9(d) plainly states only that the "*Lender shall notify the Borrower whenever the loan*

16  *becomes due and payable*," and that the Lender "shall not have the right to commence foreclosure

17  until the Borrower has had thirty (30) days after notice" to exercise various options to cure the

18  default.  (Emphasis added).

19      5.      Whether Paragraph 9(d) requires lenders to permit borrowers or their heirs to

20  *purchase* the property for 95% of the appraised value, when the plain language of that provision

21  instead provides that the borrower may *sell* the property for 95% of the appraised value in certain

22  circumstances other than the borrower's death.

23      6.      Whether the HECM contract at issue incorporates HUD's regulations, where, as

24  here, there is no express incorporation of the regulations by reference, and there is no basis to

25  "imply" that the regulations are incorporated into the contract.

26      7.      Whether Plaintiff's claim under California Business and Profession Code § 17200

27  fails as a mere re-hash of Plaintiff's other failed claims.

28

# III.   BACKGROUND

## A.   Plaintiff's Allegations.

Plaintiff Robert Chandler is the heir of Rosemary Chandler, and the representative of her estate.[2]  (FAC ¶ 13.)  Mr. Chandler here sues Wells Fargo as the lender and loan servicer of Ms. Chandler's HECM loan, and Fannie Mae "as a successor-in-interest to Wells Fargo on the HECM loans it purchases from Wells Fargo."  (FAC ¶¶ 71-72.)  Plaintiff brings claims for alleged breaches of Ms. Chandler's HECM loan secured by a deed of trust on a residence located at 10095 Sheldon Road, Elk Grove, California.  (FAC ¶ 13.)

Mr. Chandler alleges that "to issue qualifying [HECM] loans, Wells Fargo and other lenders are required to abide by the rules and regulations set out in the HECM statute, 12 U.S.C. § 1715z-20, and HECM regulations promulgated by [HUD], 24 C.F.R. § 206.1 *et seq.*"  (FAC ¶ 21.)  Mr. Chandler further alleges that "[u]nder the HECM program, when a loan becomes due and payable, the borrower or the borrower's estate or personal representative may satisfy the loan and retain the property for its fair market value, which is defined as being at least 95% of its current appraised value," an option Plaintiff refers to as "the FMV Rule." (*Id.* ¶¶ 2, 26.)

Plaintiff contends that "[t]he FMV Rule is a term of the HECM itself (either the mortgage or deed of trust), and is also mandated by federal law."  (*Id.* ¶ 3.)  He further contends that Paragraph 9(d) of the HECM mortgage and deed of trust requires Defendants: "to notify Plaintiff and the Class that they could satisfy the HECM in full by selling or transferring the property;" "to appraise the property within 30-days of learning of the borrower's death," and "to advise Plaintiff and the Class of the results of the appraisal[.]"  (*Id.* ¶ 74.)

Finally, Plaintiff contends that "Defendants . . . initiated foreclosures and evictions on the subject properties prior to giving estates and personal representatives notice" of their options under the "FMV Rule," "misrepresented that the full mortgage balance must be paid to satisfy the HECM," and proceeded with foreclosure despite attempts by the estate or representative to sell the property under the FMV Rule.  (*Id.* ¶ 74.)

---

[2] Solely for purposes of this motion to dismiss, Defendants assume the truth of the factual allegations of Plaintiff's FAC.  Plaintiff's legal conclusions are included here solely for context, and need not be taken as true.

1    Plaintiff seeks to represent a class of "estates and personal representatives of HECM

2    borrowers, whose loans are or were owned and/or serviced by Defendants, and who are entitled to

3    notice and opportunity to purchase properties for 95% of appraised value." (*Id.* ¶ 54.)  Plaintiff

4    also seeks to represent a "subclass of estates and personal representatives for damages in the

5    amount of any increase in the fair market value of the HECM-financed property between the time

6    they sought to purchase the property and the time of the trial of this matter." (*Id.* ¶ 55.)

7    **B.      The Chandler HECM.**

8    The Chandler HECM is secured by two deeds of trust: an Adjustable Rate Home Equity

9    Conversion Deed of Trust," dated November 27, 2006 (Request for Judicial Notice in Support of

10   Motion to Dismiss Plaintiff's FAC, filed herewith ("RJN") Ex. A), and an Adjustable Rate Home

11   Equity Conversion Second Deed of Trust," dated November 27, 2006 (RJN Ex. B).  These Deeds

12   of Trust set forth the "[g]rounds for acceleration of debt."  (RJN Exs. A-B at ¶¶ 9.)  One such

13   event, causing the debt to become "due and payable," occurs when "[a] Borrower dies and the

14   Property is not the principal residence of at least one surviving Borrower," as set forth in paragraph

15   9(a)(i) of the Deeds of Trust.  (*Id.* ¶¶ 9(a)(i).)

16   Where "a Borrower dies and the Property is not the principal residence of at least one

17   surviving Borrower," the "Lender may require immediate payment in full of all sums secured by

18   the Security Instrument." (*Id.*)

19   The Deeds of Trust underlying the Chandler HECM also state:

20       **Notice to Secretary and Borrower**.  Lender shall notify the Secretary and
         Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii) or*
21       *(b)*.  Lender shall not have the right to commence foreclosure until Borrower has
         had thirty (30) days after notice to either:

22
         (i)     Correct the matter which resulted in the Security Instrument coming due and
23               payable; or

24       (ii)    Pay the balance in full; or

25       (iii)   Sell the Property for the lesser of the balance or 95% of the appraised value
                 and apply the net proceeds of the sale to toward the balance; or
26
         (iv)    Provide the Lender with a deed in lieu of foreclosure.
27

28

1    (*Id.* Ex. A ¶ 9(d) (emphasis added); *see also id.* Ex. B ¶ 9(c) ("Lender shall notify Borrower

2    whenever the loan becomes due and payable under Paragraph 9(a)(ii)-(v))."  Thus, by its terms, the

3    notice provision Plaintiff invokes here, Paragraph 9(d), applies when a loan becomes due for

4    reasons *other than the borrower's death*—i.e. reasons outlined in Paragraphs 9(a)(ii) and 9(b) of

5    the Deed of Trust.  (RJN Ex. A ¶ 9(d).)  Events triggering Paragraph 9(d) include: when a borrower

6    sells the property (¶ 9(a)(ii)); when the property ceases to be at least one borrower's principal

7    residence "*for reasons other than death*" (¶ 9(b)(i) (emphasis added)); when a borrower fails to

8    occupy the property due to physical or mental illness (¶ 9(b)(ii)); or when "an obligation of the this

9    Security Instrument is not performed" (¶ 9(b)(iii)).

10        Notably, Paragraph 9(d) is not triggered when the event causing the debt to become due and

11   payable is the borrower's death, which is covered by ¶ 9(a)(i), an event specifically *omitted* from

12   mention in Paragraph 9(d).  (*Id.*)  Indeed, Plaintiff's FAC concedes that 9(d) applies only "in

13   certain situations not including the death of the borrower."  (FAC ¶ 28.)

14        Pursuant to Paragraph 9 of the Deeds of Trust, the Chandler HECM thus obligates the

15   lender to notify the borrower "whenever the loan becomes due and payable" for certain reasons

16   other than the borrower's death.  (*Id.*)  The lender must then wait thirty days to commence

17   foreclosure, during which time the borrower may avail itself of certain options to cure the default.

18   Plaintiff, however, contends that in addition to notifying the borrower that the loan is due and

19   payable and waiting thirty days to commence foreclosure, the lender must notify the borrower of its

20   cure options, obtain an appraisal of the property, and advise the borrower or the borrowers heirs

21   and representatives of the appraisal.  (FAC ¶ 74.)  As set forth below, Plaintiff's theories find no

22   support in the Deeds of Trust.

23        **C.    HUD's Servicing Guidelines for FHA Approved Lenders.**

24        HUD is the agency charged with administering the statute and regulations Plaintiff invokes,

25   12 U.S.C. § 1715z-20 and 24 C.F.R. §§ 206.1 *et. seq.*  *See* 12 U.S.C. §§ 1701c, 1715z-20.  Under

26   the National Housing Act, certain loans, including HECM loans, are insured by the federal

27   government, through the FHA.  *See* 12 U.S.C. § 1715z-20.  Indeed, the stated purpose of the statute

28   Plaintiff invokes is "to authorize the Secretary to carry out a program of mortgage insurance" for

07685.1058/2820750.1                              -6-

1   HECM loans.  *Id.*  FHA insured loans are only available through FHA approved lenders.  (*See* FAC

2   ¶¶ 5, 24.)  Because the FHA—which is a part of HUD—insures HECM loans, lenders are protected

3   in the event the borrower defaults.  (*Id.*)

4        HUD regulations set forth FHA approved "servicing practices" for lenders to follow to

5   maintain their FHA approved status.  24 C.F.R. § 206.201.  Under the regulations, failure to follow

6   the servicing guidelines "shall not be a basis for denial of the insurance benefits, but a pattern of

7   refusal or failure to comply will be cause for withdrawal of HUD mortgagee approval."  *Id.*  The

8   regulations also provide "claims procedures" whereby the lender may "submit claims for the

9   payment of the mortgage insurance benefits" if the borrower defaults and fails to repay the full loan

10  amount.  *Id.* § 206.123.  One subpart of the claims procedure states that in certain circumstances:

11  > the mortgagee shall notify the mortgagor that the mortgage is due and payable,
    > *unless the mortgage is due and payable by reason of the mortgagor's death.*  The

12  > mortgagee shall require the mortgagor to (i) pay the mortgage balance, including
    > any accrued interest and MIP, in full; (ii) sell the property for at least 95% of the

13  > appraised value as determined under § 206.125(b), with the net proceeds of the sale
    > to be applied towards the mortgage balance; or (iii) provide the mortgagee with a

14  > deed in lieu of foreclosure.  The mortgagor shall have 30 days in which to comply
    > with the preceding sentence, or correct the matter which resulted in the mortgage

15  > coming due and payable, before a foreclosure proceeding is begun.

16  24 C.F.R. § 206.125(a)(2) (emphasis added).

17       A HUD Handbook provides "procedural standards and guidelines" for servicers to follow to

18  maintain their FHA approved status.[3]  Section 13-33,[4] relating to HECMs, provides:

19  > For a due and payable mortgage, the mortgagee must:

20  > A.  Issue A Repayment Notice.  The mortgagor or the mortgagor's estate must be
    > issued a repayment notice stating that the mortgage is due and payable.  The notice

21  > must also provide the amount of the outstanding balance and the following
    > instructions:

22

23  > 1.  That the debt must be paid in full; or the property must be sold for the lesser of
    > the debt, including shared appreciation, if any, or 95% of the appraised value; or

24  > good marketable title to the property must be deeded to the mortgagee.

25  _____
    [3]RJN Ex. C, HUD Handbook 4330.1 Rev-5, available at:

26  http://portal.hud.gov/hudportal/documents/huddoc?id=43301c1HSGH.pdf; *see also* FAC ¶¶ 21, 35-
    36.

27       [4] RJN Ex. D, HUD Handbook 4330.1 Rev-5, § 13, available at:

28  http://portal.hud.gov/hudportal/documents/huddoc?id=43301c13HSGH.pdf; *see also* FAC ¶¶ 21,
    35-36.

2. That the mortgagor or the mortgagor's estate may request an appraisal, at his or her own expense, if an estimate of the property's current value is desired.

3. That if none of the actions in paragraph A. 1. above are taken in 30 days, foreclosure will be initiated by the mortgagee within 3 months, but not less than 1 month.

\* \* \* \*

5. That the mortgage will be released and no deficiency judgment will be taken if the property has no junior liens and is sold for at least 95% of the appraised value, with the net proceeds paid to the mortgagee, even if the debt is greater than the appraised value.

(*Id.*; *see also* FAC ¶¶ 21, 35-36.)

Additionally, "[i]f at any time prior to the foreclosure sale, the mortgagor or the mortgagor's estate sells the property (free of junior liens) for the lesser of the debt, including foreclosure costs actually incurred and the mortgagee's share of net appreciation, if applicable, or 95% of the current appraised value . . . the mortgagee shall discontinue the foreclosure proceedings and accept the payoff."  (RJN Ex. D, HUD Handbook 4330.1 Rev-5, § 13-34(C); FAC ¶ 38.)

From time to time HUD also issues "Mortgagee Letters" or "MLs" with guidance to servicers regarding their obligations as FHA approved lenders.  After HUD issued its HECM Handbook, HUD issued Mortgagee Letter 2008-38, which "clarified" that when an HECM loan becomes due and payable, a borrower or the borrower's estate may *either* pay off the full amount of the loan and retain ownership of the property *or* sell the property in an *arm's length* transaction for at least 95% of the appraised value to pay off the loan.[5]  ML 2008-38 stated:

> *Some program participants mistakenly infer* from [the HECM loan being "non-recourse"] *that a borrower (or the borrower's estate) could pay off the loan balance of a HECM for the lesser of the mortgage balance or the appraised value of the property while retaining ownership of the home.  This is not correct* and is not the intended meaning of the [non-recourse] provision.
>
> \* \* \*
>
> *If the mortgage is due and payable and the borrower (or estate) desires to retain ownership of the property, the mortgage debt must be repaid in full.*
>
> \* \* \*
>
> If the mortgage is due and payable and the borrower (or estate) will not be retaining ownership of the property, the property may be sold for at least the lesser of the unpaid mortgage balance or 95% of appraised value.  [S]uch sale of the property . . . should be an *arm's length transaction*.  An arm's length transaction is characterized by the following (1) *the absence of a relation between the buyer and seller* . . . .

*Id.* (Emphasis added).

---

[5] *See* RJN Ex. E, ML 2008-38, dated December 5, 2008, available at: http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_20411.doc.

NOTICE OF MOTION AND MOTION TO DISMISS FAC
Case No.:  CV11 3831 SC

1    On April 5, 2011, HUD issued ML 2011-16, rescinding ML 2008-38.[6] ML 2011-16 did not

2    itself provide guidance on what, if anything, servicers should do differently going forward, but

3    stated "[n]ew guidance on topics related to the regulations at 24 CFR Part 206 and Handbook

4    4235.1 will be issued in the future."  (*Id.*)

5    On July 19, 2011, HUD issued new answers to HECM Servicer "Frequently Asked

6    Questions," including new guidance that "[w]hen a HECM loan becomes due and payable as a

7    result of the mortgagor's death and the property is conveyed by will or operation of law to the

8    mortgagor's estate or heirs . . . that party (or parties if multiple heirs) may satisfy the HECM debt

9    by paying the lesser of the mortgage balance or 95% of the current appraised value of the

10   property."[7]

11   Plaintiff's mother died in January 2010, when HUD's guidance stating that transactions

12   must be *arm's length* were still in effect.  (*See* FAC ¶¶ 6, 46; *see also* RJN Exs. E-F.)  It was not

13   until July 2011 that HUD issued its FAQs upon which Plaintiff now relies.  (*See* FAC ¶ 39; Ex. A

14   to FAC.)

15   As set forth below, Plaintiff fails to state any claim—for breach of contract, declaratory

16   relief, or violations of California Business and Professions Code § 17200—on these facts.

17   ### IV.    STANDARDS FOR DISMISSAL

18   On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts

19   as true the facts properly pleaded in the complaint, but not conclusions of law.  *Alperin v. Vatican*

20   *Bank*, 410 F.3d 532, 541 (9th Cir. 2005).  Dismissal may be based on the lack of a cognizable legal

21   theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica*

22   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d

23   530, 533-34 (9th Cir. 1984).

24   While a district court must normally confine its analysis to the pleadings, on a motion to

25   dismiss it may "take judicial notice of facts outside the pleadings."  *See, e.g., Mack v. South Bay*

26

27   _____

     [6] *See* RJN Ex. F, ML 2011-16, available at:
     http://portal.hud.gov/hudportal/documents/huddoc?id=11-16ml.pdf.

28   [7] *See* FAC Ex. A (HECM Servicing Frequently Asked Questions (FAQs).).

*Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  The Court may also consider documents incorporated into the complaint by reference.  *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Moreover, to assess a complaint's compliance with Federal Rule of Civil Procedure 8, a court must consider only the factual allegations of the complaint—not its legal conclusions or its bare recitation of the elements of a claim—in determining whether the plaintiff has made a plain statement of the grounds of her entitlement to relief.  Fed R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citation omitted).  If a plaintiff has alleged sufficient facts to bear out the elements of the claim, the court must then consider whether the adequately pleaded facts state a "plausible," rather than a merely "possible," claim.  *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555.

## V.    ARGUMENT

### A.    Plaintiff's Declaratory Relief Claim Fails.

Plaintiff fails to state a claim for declaratory relief because there is no express or implied private right of action to enforce the National Housing Act, 12 U.S.C. §§ 1701 *et seq.* ("NHA"), 12 U.S.C. 1715z-20 (the specific NHA provision here at issue), or the HUD regulations and servicing guidelines upon which Plaintiff relies (24 C.F.R. 206.1, *et seq.*, and accompanying guidelines).  (*See* FAC ¶ 65.)  Moreover, even if there were a private right of action, Defendants have complied with the statute and regulations at issue.  Plaintiff's declaratory relief claims should therefore be dismissed.

#### 1.    There Is No Private Right of Action to Enforce the National Housing Act or HUD's Regulations and Servicing Guidelines.

"[T]here is no private right of action for breach of HUD regulations or FHA policy.  There is also no private right of action available to a mortgagor for a mortgagee's noncompliance with the

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1  National Housing Act, 12 U.S.C. § 1701."  *Wells Fargo Bank, N.A. v. Favino*, No. 1:10-Cv-571,

2  2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) (citing *Mitchell v. Chase Home Fin. LLC*,

3  No. 6-2099, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008)).  Indeed, "[a]s other courts have

4  observed, the regulations promulgated under the National Housing Act govern relations between

5  the mortgagee and the government, and give the mortgagor no claim for duty owed or for the

6  mortgagee's failure to follow said regulations."  *Mitchell*, 2008 WL 623395, at *3 (collecting

7  cases).

8       "The [National Housing] Act does not provide an express private cause of action—the

9  statute's various intended beneficiaries are thus without an explicit remedy either against HUD or

10  against any of the other private parties also involved in the statutory scheme."  *Shivers v. Landrieu*,

11  674 F.2d 906, 910-911 (D.C. Cir. 1981) ("We find that the statute does not support a judicial

12  inference that tenants in federally insured veterans' housing have a right to sue the government or

13  these private parties in a federal court to force compliance with HUD regulations.").

14       Courts in this District agree: there is simply no private right of action to enforce the NHA.

15  *See, e.g., Aguiar v. Wells Fargo Bank, N.A.*, No. 12-03653, 2012 WL 5915124, at *3 (N.D. Cal.

16  Nov. 26, 2012) ("[Defendant] argues that ... the NHA does not provide for a private right of action.

17  The Court agrees."); *see also Jara v. Aurora Loan Servs. LLC*, 11-00419, 2011 WL 4536898, at *4

18  (N.D. Cal. Sept. 30, 2011); *Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of S.F.*, 724

19  F.Supp. 683, 690 (N.D. Cal. 1989).

20       Likewise "no express or implied right of action in favor of the mortgagor exists for

21  violation of HUD mortgage servicing policies."  *Federal Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d

22  190, 193 (6th Cir. 1989) (citation omitted); *accord M. B. Guran Co., Inc. v. City of Akron*, 546 F.2d

23  201, 205) (6th Cir. 1976) (City's violation of competitive bid guidelines contained in a HUD

24  handbook did not give rise to an implied right of action cognizable in federal court by the

25  disappointed contractor.).

26       Indeed, "[a] private cause of action would not further the goals of the National Housing

27  Act.  It would delay foreclosure, and the ultimate losses to HUD will be much greater . . . . Further,

28  an implied cause of action will discourage private investment, and interfere with the primary

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

jurisdiction of HUD to approve and supervise HUD programs." *Roberts v. Cameron-Brown Co.* 556 F.2d 356, 361 (5th Cir. 1977).

The Ninth Circuit, faced with a suit under the Housing Act, 42 U.S.C. 1460(c)(4) and HUD regulations thereunder, similarly found that statute and accompanying HUD regulations conferred no private right of action. *See Rohnert Park v. Harris*, 601 F. 2d 1040, 1046 (9th Cir. 1979) (applying standards under *Cort v. Ash*, 422 U.S. 66 (1975) in determining the lack of implied private right of action).

Because there is no private right of action to enforce the HECM laws Plaintiff invokes, his claim for declaratory relief premised on those laws—i.e. that "Defendants' failure to provide such notice and opportunity [regarding the "FMV Rule"] violates 12 U.S.C. § 1715z-20, 24 C.F.R. 206.1 *et seq.*" (FAC ¶ 65)—should be dismissed.[8]  *Cleveland v. Aurora Loan Services, LLC*, No. 11–0773, 2011 WL 2020565, at *5 (N.D. Cal. May 24, 2011) ("Since plaintiff has no right of action under [provision there at issue, the Home Affordable Modification Program] . . . the court would have no basis upon which to make a judicial determination of plaintiff's 'rights, obligations, and duties,'" as requested in Plaintiff's claim for declaratory relief.).

**2.      Even if There Were a Private Right of Action, Plaintiff's Claim That Defendants Violated HECM Law Fails as Based on a Plainly Incorrect Interpretation of that Law.**

Even if there were a private right of action to enforce HECM law, Plaintiff's claim fails as based on a plainly incorrect interpretation of that law.  Plaintiff's allegations that Defendants violated the NHA and HUD's regulations stands in stark contrast to HUD's guidance to lenders regarding what it expects from FHA approved servicers.  HUD's interpretation of the NHA and its own regulations and guidelines is entitled to deference. *See Malone Mortgage Company America, Ltd. v. Martinez*, No. 02-1870, 2002 WL 31114160, at *19 (N.D. Tex. Sept. 23, 2002) ("Deferring to HUD's interpretation of 12 U.S.C. § 1708(c) and 24 C.F.R. part 25, the Court rejects Plaintiff's claim . . . ."); *cf. Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc.*, 642 F.3d 765, 775 (9th Cir. 2011) (In context of the Fair Housing Act, holding "We defer to HUD's reasonable

---

[8] To the extent Plaintiff seeks a declaration that Defendants violated "the standard HECM loan contract" (FAC ¶ 65), that claim fails for the reasons set forth in Section V.B., detailing that Plaintiff fails to state a claim for breach of contract.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1 interpretation of the [statute]" and "[t]he agency is entitled to further deference when it adopts a

2 reasonable interpretation of regulations it has put in force.").

3     Far from *requiring* lenders to provide notice and opportunity to a borrower's heirs of an

4 alleged right to purchase the property for 95%, at the time of Ms. Chandler's death in 2010 (FAC

5 ¶ 6), HUD *prohibited* lenders from allowing heirs to purchase the property.

6     From December 5, 2008, until April 5, 2011, HUD's guidance to lenders who wished to

7 maintain their FHA approved status was: "[i]f the mortgage is due and payable and the borrower

8 (or estate) desires to retain ownership of the property, *the mortgage debt must be repaid in full.*"[9]

9 Additionally, "[*i*]*f the mortgage is due and payable and the borrower (or estate) will not be*

10 *retaining ownership* of the property, *the property may be sold* for at least the lesser of the unpaid

11 mortgage balance or 95% of appraised value. [S]uch sale of the property . . . should be an *arm's*

12 *length transaction*. An arm's length transaction is characterized by the following (1) *the absence*

13 *of a relation between the buyer and seller . . . .* (*See id.* (emphasis added).)

14     It was only in April 2011 that HUD "rescinded," without explanation, its guidance that

15 sales must be arms' length transactions and thus could not be made to family members of the

16 deceased HECM borrower. (*See* RJN Ex. F, ML 2011-16.) Indeed, by Plaintiff's own account, it

17 was not until July 2011 that HUD made guidance available to servicers shedding light on the

18 procedures to follow in the wake of HUD's reversal of its policy against sales of properties to

19 family members. (*See* FAC ¶ 39 and FAC Ex. A (July 2011 FAQs).)

20     Thus, in January 2010, when the Chandler HECM became due and payable due to the

21 borrower's death, *HUD interpreted its own servicing guidelines to bar sales to heirs for 95% of the*

22 *appraised value*. (*See* RJN Exs. E-F; FAC ¶ 6.) Plaintiff thus cannot state a claim for failure to

23 provide notice and opportunity to Mr. Chandler of an alleged right to purchase the property for

24 95% prior to mid-2011, since such conduct plainly complied with HUD's guidance.

25     As set forth above, HUD has changed its view regarding whether a lender is even *permitted*

26 to let a borrower or the borrower's heirs purchase property at 95% of the appraised value, and still

27 _____

28     [9] *See* RJN Ex. E, ML 2008-38, available at:
http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_20411.doc (emphasis added).

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.: CV11 3831 SC

1   qualify for an FHA insurance claim for any shortfall on the loan amount.  (*See Supra*, § III.C.

2   (discussing ML 2008-38 (barring lenders from permitting heirs to purchase at 95% of appraised

3   value when loan is due and payable) and ML 2011-16 (rescinding ML 2008-38).)

4           Finally, 24 C.F.R. § 206.125 makes clear that the lender need not issue a notice that the

5   loan is due and payable when the event triggering acceleration is the borrower's death.  24 C.F.R.

6   § 206.125(a)(2), upon which Plaintiff relies, provides: "the mortgagee shall notify the mortgagor

7   that the mortgage is due and payable, *unless the mortgage is due and payable by reason of the*

8   *mortgagor's death*."  24 C.F.R. § 206.125(a)(2) (emphasis added).

9           As Defendants have complied with HUD's interpretation of its own guidelines and with the

10  plain letter of the regulations, Plaintiff fails to state a claim that Defendants violated "HECM law."

11          **B.      Plaintiff's Breach of Contract Claim Fails.**

12          Plaintiff contends that "Defendants breached Paragraph 9 of the standard HECM Mortgages

13  and Deeds of Trust because when the HECM borrow(s) died, Defendants" purportedly: (1) "failed

14  to notify Plaintiff and the Class that they could satisfy the HECM in full by selling or transferring

15  the property" prior to initiating foreclosure; (2) "failed to appraise the property within 30-days of

16  learning of the borrower's death and/or to advise Plaintiff and the Class of the results of the

17  appraisal"; (3) misrepresented that only payment of the full mortgage balance—as opposed to

18  purchase under the "FMV Rule"—would satisfy the HECM terms; and (5) proceeded with

19  foreclosure despite attempts by the estate or representative to sell the property under the "FMV

20  Rule."  (FAC ¶ 74.)

21          Because each of these alleged breaches is based on Plaintiff's plainly incorrect reading of

22  Paragraph 9 of the HECM contract, Plaintiff's breach of contract claim should be dismissed as a

23  matter of law.  *See Hsu v. UBS Fin. Servs., Inc.*, No. 11–02076, 2011 WL 3443942, at *6 (N.D.

24  Cal. Aug. 5, 2011) ("A district court may dismiss a claim based on plaintiff's asserted

25  interpretation of a contract if the unambiguous plain meaning of its terms clearly do not support

26  that interpretation.") (citing *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 Fed.

27  App'x 123, 124 (9th Cir. 2007)); *Dunn v. GMAC Mortg., LLC*, No. 10–03196, 2011 WL

28

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1230211, at *2-4 (E.D. Cal. Mar. 28, 2011) (dismissing breach of contract claim where it was

based on a plainly incorrect interpretation of the contract).

Plaintiff's interpretation of the contract is incorrect for the following four reasons:

(1) Paragraph 9(d)—which sets forth the notice, 30-day waiting period, and so-called "FMV

Rule" provisions which Plaintiff claims the Defendants breached—*does not apply* when the event

causing the loan to become due and payable is the borrower's death, as was the case with the

Chandler HECM;

(2) Paragraph 9(d) does not require notice of the "FMV Rule" prior to initiating foreclosure,

even where the event triggering the due and payable clause is something other than the borrower's

death;

(3) the HECM says nothing regarding whether borrowers may *purchase* the property for

95% of the appraised value; the HECM states only that in certain circumstances borrowers may

*sell* at 95% of appraised value; and

(4) HUD's servicing requirements for FHA approved lenders are not incorporated by

reference into the HECM contracts here.

Plaintiff's breach of contract claim should thus be dismissed.

### 1. Where the Borrower's Death Causes the Loan to Be Due and Payable, Paragraph 9(d)—Upon Which Plaintiff Relies—Does Not Apply.

Plaintiff's breach of contract claim is premised on the theory that "Defendants breached

Paragraph 9 of the standard HECM Mortgages and Deeds of Trust" by allegedly violating the

notice, 30-day waiting period, and so-called "FMV Rule" provisions outlined in Paragraph 9(d)

"*when the HECM borrower(s) died*." (FAC ¶ 74 (emphasis added).) Yet, as Plaintiff expressly

concedes, Paragraph 9(d) does not apply where, as here, the event causing the loan to become due

and payable is the borrower's death. (*See* FAC ¶¶ 28, 74.) Plaintiff's FAC states: "Section 9(d)

requires notice to both the Secretary and Borrower *in certain circumstances other than the death of*

*the borrower*." (FAC ¶ 28 (emphasis added).) Paragraph 9(d), by its terms, thus does not apply

here, as set forth below.

-15-

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

Paragraph 9 sets forth the "Grounds for Acceleration of Debt," and provides that the borrower's death is one of several events that will cause the loan to become due and payable. (FAC ¶ 25; RJN Exs. A-B at ¶ 9(a)(i).)  The borrower's death as a grounds for acceleration is outlined in Paragraph 9(a)(i).  (RJN Exs. A-B ¶ 9(a)(i).)  Other grounds for acceleration, such as sale of the property, that the property cease's to be the borrower's primary residence, failure to occupy the property for 12 consecutive months due to illness, and failure to perform obligations under the Deed of Trust, are outlines in Paragraphs 9(a)(ii) and 9(b).

Paragraph 9(d) states:

> **Notice to Secretary and Borrower**.  Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii) or (b)*.  Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
>
> (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or
>
> (ii)   Pay the balance in full; or
>
> (iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale to toward the balance; or
>
> (iv)   Provide the Lender with a deed in lieu of foreclosure.

(*Id.* Ex. A ¶ 9(d) (emphasis added); *see also id.* Ex. B ¶ 9(c); *see also* FAC ¶ 28.)

Notably, the provisions of 9(d), all of which are tied to "Notice to the Secretary and Borrower," are not triggered when the event causing the debt to become due and payable is the borrower's death.  (*See* RJN Ex. A ¶ 9.)  Instead, as set forth above, the borrower's death is covered by ¶ 9(a)(i), an event specifically *omitted* from triggering the notice provisions in the Deeds of Trust.  (*Id.* Ex. A ¶ 9(d) ("Lender shall notify the Secretary and the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii) or (b)*.") (emphasis added); *id.* Ex. B ("Lender shall notify the Borrower whenever the loan becomes due and payable under *Paragraph 9(a)(ii)-(v)*.") (emphasis added).)

Indeed, in direct contravention on Plaintiff's claim that Defendants "misrepresented that the full mortgage balance must be paid to satisfy the HECM" (FAC ¶ 74), the Deed of Trust plainly states the "*Lender may require immediate payment in full of all sums secured by the Security*

Instrument" where "a Borrower dies and the Property is not the principal residence of at least one surviving Borrower."  (RJN Exs. A-B ¶¶ 9(a)(i) (emphasis added).)

The plain language of the contract thus dooms Plaintiff's claim: where the event triggering acceleration is the borrower's death, Paragraph 9(d) does not apply, and the Lender may require payment in full of the mortgage balance.  (*See id.*)  Plaintiff's breach of contract claim should be dismissed for this independent reason.  *Hsu*, 2011 WL 3443942, at *6 (dismissing breach of contract claim where it was clearly unsupported by the contract's plain language).

### 2.   Even When Paragraph 9(d) Applies, It Does Not Require the Lender to Obtain an Appraisal or Notify the Borrower of the "FMV Rule" Prior to Initiating Foreclosure.

Plaintiff's breach of contract claim should also be dismissed as it is based on the incorrect theory that the HECM contract—even as to events of default triggering Paragraph 9(d)—*ever* requires the lender to give anyone notice of the "FMV Rule" or obtain an appraisal prior to initiating foreclosure.  Paragraph 9(d) merely requires that the lender notify the borrower that the loan is due and payable, and then wait 30 days—during which the borrower can exercise various options—before initiating foreclosure.

Paragraph 9(d) states: "*Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable* under Paragraph 9(a)(ii) or (b)."  (*See* RJN Ex. A, ¶ 9(d), emphasis added.)  That paragraph continues: "Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice" to exercise cure options.  (*See id.*)

The cure options are set forth in the contract.  Paragraph 9(d) nowhere states that the lender must notify the heirs or estate of the options to avoid foreclosure.  (*Id.*)  Nor does paragraph 9(d) require the lender to obtain an appraisal within 30 days, as Plaintiff contends.  (*Id.*)  Plaintiff may not read requirements into the contract that simply are not there.  *Cf. Bennett v. Donovan*, No. 11-0498, 2011 WL 2746233, at *6 (D. D.C. Jul. 15, 2011) (Plaintiffs' "proposed interpretation" of HUD regulations cannot "retroactively change the contractual provisions in [HECM] mortgages . . . ."), *reversed and remanded on other grounds by* 703 F.3d 582, 588 (D.C. Cir. 2013) (in turn

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1   holding that "foreclosure according to the terms of a lawfully executed mortgage contract" is a

2   matter "independent of HUD's control.").

3         As the contract's plain language makes clear, the lender only has to provide notice that the

4   "loan is due and payable" and then wait 30 days before commencing foreclosure.  (*See* RJN Ex. A,

5   ¶ 9(d).)  Notice of the so called "FMV Rule" is simply not required by the contract.

6               **3.      The HECM Does Not Require the Lender to Permit Heirs to *Purchase***
                          **Properties For 95% of Appraised Value.**
7

8         Plaintiff also attempts to turn the HECM's provision permitting borrowers in certain

9   circumstances 30 days to "[s]ell the Property for the lesser of the [loan] balance or 95% of the

10  appraised value and apply the net proceeds of the sale toward the [loan] balance," on its head.  (*See*

11  RJN Exs. A-B, ¶¶ 9; emphasis added.)  Plaintiff contends that this provision means something

12  entirely different than what it says: that the borrower or the borrowers' heirs may not just *sell* but

13  also *purchase* the property for 95% of the appraised value.  (FAC ¶ 47 ("Mr. Chandler [spoke] with

14  a Wells Fargo representative . . . about *purchasing* the property . . . ."); *id.* ¶ 53 ("[C]ounsel for

15  Plaintiff . . . communicated Plaintiff's desire to *purchase* the Property for 95% of its appraised

16  value . . . .") (all emphasis added).)

17        Plaintiff's construction is contrary to the plain language of the contract, and his breach of

18  contract claim should thus be dismissed.  *See Lollis v. HUD*, No. 12–0392, 2012 WL 1252568, at

19  *3 (N.D. Tex. Mar. 14, 2012) ("Plaintiff contends that [lender] and FNMA breached the Deed of

20  Trust by refusing to sell him the property for 95% of its appraised value . . . . However, *the Deed of

21  Trust imposes no such requirement*.  Instead, it simply allows the borrower to *sell* the property

22  thirty days before foreclosure . . . ." (citing HECM DOT, ¶ 9(d), Dkt. No. 11 in Case No. 12–0392

23  (N.D. Tex.), at p. 25) (emphasis added)).

24        Nor does it avail Plaintiff that at varying times HUD has taken different views regarding

25  whether a lender is *permitted* to let a borrower or the borrower's heirs purchase property at 95% of

26  the appraised value, and still qualify for an FHA insurance claim for any shortfall on the loan

27  amount.  (*See supra* § III.C. (discussing ML 2008-38 (barring lenders from permitting heirs to

28  purchase at 95% of appraised value when loan is due and payable) and ML 2011-16 (rescinding

1  ML 2008-38).)  As set forth in above in Section V.A.2., at the time the Chandler HECM became

2  due, HUD *prohibited* FHA approved lenders from permitting heirs to purchase the property at 95%

3  of appraised value.

4  Plaintiff thus fails to state a claim that Defendants breached the HECM by failing to permit

5  borrowers to *purchase* the properties for 95% of appraised property value.

6  **4.  The Parties' Contract Does Not Incorporate the National Housing Act or HUD's Regulations.**

7

8  Plaintiff also fails to state any claim for breach of contract premised on the theory that the

9  Chandler HECM incorporates the NHA or HUD's regulations thereunder.

10  First, though Plaintiff asserts a breach of contract claim and avers that Defendants have

11  violated the NHA and HUD's regulations, Plaintiff fails to explicitly allege that the Chandler

12  HECM incorporates the statute or the regulations.  A federal court recently dismissed a breach of

13  contract claim in precisely these circumstances:

14  > Plaintiff avers only that Defendant violated the NHA and various HUD regulations, but he does not allege that any provisions of the NHA or any HUD regulations were expressly incorporated into the note or deed of trust, and he fails to state any facts or cite to any provision in the loan documents showing that such was the case. Accordingly, his claim for violations of the NHA and its accompanying HUD regulations fails and should be dismissed.

15

16

17

18  *See Holloway v. Wells Fargo Bank, N.A.*, No. 12-2184, 2013 WL 1187156, 18 (N.D. Tex. Feb. 26,

19  2013) (citing *Denley v. Vericrest Fin., Inc.*, No. 12–992, 2012 WL 2368325, at *2 (S.D. Tex. June

20  21, 2012) (in turn granting motion to dismiss where the plaintiff "ha[d] not alleged ... an

21  independent cause of action based upon HUD regulations" because he "neither allege[d] nor

22  point[ed] to any language in the Deed of Trust factually to support [the] assertion" that the deed of

23  trust incorporated the regulations)).

24  To the extent Plaintiff attempts to advance such a claim here, it fails.  The Chandler HECM

25  does not incorporate HUD's regulations by reference, as some courts have held is the case with

26  other contracts involving FHA approved lenders.  *See McAllister v. BAC Home Loans Servicing,*

27  *LP*, No. 10–504, 2011 WL 2200672, at *1 (E.D. Tex. Apr. 28, 2011) (Plaintiff stated a claim where

28  mortgage at issue incorporated HUD regulations by reference; the claim sounded in contract).

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1    The contracts at issue in *McAllister* contained language absent here.  There, the contract

2 included a provision titled "Regulations of HUD Secretary" and stated that "[t]his [Deed of Trust]

3 *does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary*."

4 (*See McAllister*, E.D. Tex. No. 10–504, Dkt. No. 13, Second Am. Compl., dated Jan. 19, 2011, ¶ 25

5 (emphasis added).)  Here, the Chandler HECM Deeds of Trust refer to the HUD Secretary merely

6 in the context of HUD's insurance of the debt, but have no separate "Regulations of HUD

7 Secretary" provision or other reference incorporating HUD's regulations.  Plaintiff may not import

8 into the HECM contract requirements that the HECM does not itself contain.  *Cf. Bennett*, 2011

9 WL 2746233, at *6 (Plaintiffs' "proposed interpretation" of HUD regulations cannot "retroactively

10 change the contractual provisions in [HECM] mortgages . . . ."), *reversed and remanded on other*

11 *grounds by* 703 F.3d 582, 588 (D.C. Cir. 2013) (in turn holding that "foreclosure according to the

12 terms of a lawfully executed mortgage contract" is a matter "independent of HUD's control.").

13    Indeed, another court has squarely rejected as "conclusory" the very argument that a Deed

14 of Trust incorporated HUD's regulations merely by passing reference to HUD in the document.

15 *See Motten v. Chase Home Fin.*, 831 F.Supp.2d 988, 1005 (S.D. Tex. 2011) (rejecting the

16 plaintiffs' "conclusor[y] assert[ion] that paragraph 9(d) of the Deed of Trust incorporates the rules

17 and regulations of the Secretary of HUD[.]").

18    Likewise, a court in this District rejected the argument that a mortgage contract

19 incorporates by reference HUD regulations mentioned, but not expressly incorporated, in the

20 contract.  *See Martinez v. Wells Fargo Bank, N.A.*, No. 06-03327, 2007 WL 963965, at *9 (N.D.

21 Cal. Mar. 30, 2007).  There, the court held:

22        Plaintiffs' breach of contract claim is premised entirely on its
        contention that the HUD regulations are specifically incorporated
23        into the Deed of Trust between defendants and plaintiffs based on
        language in the Deed of Trust, which states: "'RESPA' means the
24        Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
        seq.) and its implementing regulation, Regulation X (24 C.F.R. Part5
25        3500[sic]), as they might be amended from time to time."  Assuming
        without deciding that the Deed of Trust is a contract between the
26        parties, *the court does not find this language to create a contractual*
        *obligation to comply with RESPA and its regulations*.
27
28 *Id.* (emphasis added).

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1   Plaintiff thus may not circumvent the lack of a private right of action to enforce the federal

2   statute or regulations at issue by urging that the regulations may be "implied" into the contract.  *See*

3   *Umland v. PLANCO Fin. Servs*., Inc., 542 F.3d 59, 66 (3rd Cir. 2008) (holding that a Plaintiff may

4   not advance principles articulated in *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499

5   U.S. 117, 130 (1991) to "imply" a federal statute into a contract and thus get around the statute's

6   lack of a private right of action); *see also St. Christopher Assocs., L.P. v. U.S*., 511 F.3d 1376,

7   1383-84 (Fed. Cir. 2008) (declining to import HUD regulations into a contract by implication, and

8   citing with approval a prior case "warning that wholesale incorporation of regulations into a

9   contract would allow the contracting party to 'choose among a multitude of regulations as to which

10  he could claim a contract breach—and thus [a] wholly new ground of obligation would be

11  summarily created by mere implication.'") (citing *Smithson v. United States*, 847 F.2d 791, 794

12  (Fed. Cir. 1988) (quotation marks omitted)).

13  In summary, the contract claim fails for four reasons:  (1) Paragraph 9(d) does not apply

14  when the event causing the loan to become due and payable is the Borrower's death, as was the

15  case with the Chandler HECM; (2) Paragraph 9(d) does not require notice of the "FMV Rule" prior

16  to initiating foreclosure, even where the event triggering the due and payable clause is something

17  other than the borrower's death; (3) the HECM says nothing regarding whether borrowers may

18  *purchase* the property for 95% of the appraised value; the HECM states only that in certain

19  circumstances borrowers may *sell* at 95% of appraised value; and (4) HUD's servicing

20  requirements for FHA approved lenders are not incorporated by reference into the HECM contracts

21  here.  Plaintiff's breach of contract claim should thus be dismissed.

22  **C.   Plaintiff Cannot State A Claim For Violations of California Business
        and Professions Code § 17200**

23

24  Plaintiff purports to bring his claim under the "unlawful" and "unfair" prongs of California

25  Business and Professions Code § 17200 ("UCL").[10]  (FAC ¶ 82.)

26

27  _____

28  [10] In an abundance of caution, Defendants address all three "prongs" of the UCL—
    unlawful, unfair, and fraudulent, below.

**NOTICE OF MOTION AND MOTION TO DISMISS FAC**
Case No.:  CV11 3831 SC

1    "Because the [UCL] statute is written in the disjunctive, it applies separately to business

2    acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Each prong of the UCL is a

3    separate and distinct theory of liability."  *Arvizu v. GMAC Mortg., LLC*, No. 10-990, 2010 WL

4    3958666, at *6 (E.D. Cal. Oct. 8, 2010); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127

5    (9th Cir. 2009).  Plaintiff fails to state a claim under each prong of the UCL.

6    Plaintiff's "unlawful" claim under the UCL is premised on alleged violation of "numerous

7    laws and public policies of the state of California."  (FAC ¶ 81.)  The only laws Plaintiff

8    specifically alleges that the Defendants have violated, however, are the HECM statutes and

9    regulations addressed above, 12 U.S.C. § 1715z-20, 24 C.F.R. 206.1 *et seq*.  As set forth above,

10   these alleged violations of "HECM law" are not actionable.  (*Supra*, § V.A.1.)  Where "the alleged

11   [statutory] violations are not actionable, [they] cannot be used to support a claim under § 17200."

12   *See, e.g., Cleveland*, 2011 WL 2020565, at *5.

13   Moreover, even if there were a right of action to enforce HECM law, Plaintiff's § 17200

14   claim fails as premised on an incorrect interpretation of HECM law.  (*Supra*, § V.A.2.)  A claim

15   under § 17200 fails where, based on the allegations of the complaint, the Defendant complied with

16   the underlying law.  *Higginbottom v. U.S. Bancorp*, 2011 WL 1558681, at *7 (N.D. Cal. Apr. 25,

17   2011).  Under HUD's interpretations of its own guidelines, Defendants' alleged conduct in failing

18   to issue notice and opportunity to borrowers' heirs of an ability to purchase the property for 95%

19   complied with HECM law.  The § 17200 claim should therefore be dismissed.

20   Plaintiff's claim fares no better under the "unfair" prong.  "[A] business practice cannot be

21   unfair under the UCL if that practice is permitted by law." *Churchill Village, L.L.C. v. Gen. Elec.*

22   *Co.*, 169 F. Supp. 2d 1119, 1130 (N.D. Cal. 2000).  Instead, "unfairness" must be "'tethered to

23   some legislatively declared policy or proof of some actual or threatened impact on competition.'"

24   *Id.* (citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-

25   187 (1999)).  As set forth herein, Plaintiff fails to allege a viable violation of any law, as the

26   HECM laws permit of no private right of action, and Defendants have in any event complied with

27   the law. Plaintiff thus cannot state any "unfairness" claim under the UCL.

28

1    Moreover, under *Iqbal*, UCL claims based on alleged unfairness must be pled with enough

2    specificity to state a plausible claim. *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035,

3    1044 (9th Cir. 2010) ("[C]onclusory allegations about fraud [and] unfair treatment" do not "state[]

4    a plausible claim.") (citing *Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint

5    must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

6    its face.")).  Plaintiff's § 17200 claim recites only the conduct which Plaintiff alleges violates

7    HECM law, and then tags on the conclusory allegation that such conduct is "unfair."  This lack of

8    plausibility dooms Plaintiff's "unfairness" claim.

9    Finally, UCL claims under either the "unfair" or "fraudulent" prongs must be plead with

10   particularity under Rule 9(b) where they are rooted in allegations of "unified fraudulent course of

11   conduct."  *See Kearns*, 567 F.3d at 1126 (dismissing claims of "unfair" UCL violations under Rule

12   9(b)); *Arvizu*, 2010 WL 3958666, at *6 (dismissing claims of "deceptive" and "fraudulent" UCL

13   violations because "allegations [did] not specify the basis for [the] claim—i.e., whether it is based

14   on an unlawful, unfair, or fraudulent practice—let alone state, with reasonable particularity, the

15   facts supporting the statutory elements of the violation.").  Plaintiff's UCL claims based on alleged

16   "unfair" or "fraudulent" violations should be dismissed for failure to plead with particularity,

17   because—beyond reciting alleged violations of HECM law (which fail, as set forth above)—

18   Plaintiff provides no specificity as to allegedly "unfair" or "fraudulent" conduct.

19   Similarly, Plaintiff cannot premise a violation of § 17200 on mere allegations of a breach of

20   contract. *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal.App.4th 638, 645 (2008) (A mere

21   breach of contract cannot form the predicate for a UCL claim unless "'it also constitutes conduct

22   that is "unlawful, or unfair, or fraudulent.") (citations omitted); *see also South Bay Chevrolet v.

23   General Motors Acceptance Corp.*, 72 Cal.App.4th 861, 887 (1999) (The UCL "does not give the

24   courts a general license to review the fairness of contracts.").  Plaintiff's § 17200 claim should

25   therefore be dismissed with prejudice.

26   In sum, because Plaintiff's UCL claim is a mere re-hash of its failed claim for violations of

27   HECM law, the claim should be dismissed. *See Keng Hee Paik v. Wells Fargo Bank, N.A.*, No.

28

1  10–04016, 2011 WL 3359697, at *5 (N.D. Cal. Aug. 3, 2011) (UCL claim failed where it was

2  premised solely on failed allegations of a statutory violation).

## VI.    CONCLUSION

4        For the foregoing reasons, Defendants Wells Fargo and Fannie Mae respectfully request

5  that the Court dismiss the complaint in its entirety, without leave to amend.  Specifically,

6  Defendants request that the Court: (1) dismiss Plaintiff's claim for declaratory relief that

7  Defendants violated the contract or "HECM law," as (a) there is no private right of action to

8  enforce the statute or regulations at issue; (b) Defendants have in any event complied with the

9  statute and regulations at issue; and (c) Defendants have not breached the HECM contract;

10  (2) dismiss Plaintiff's claim for breach of contract as based on an incorrect reading of the HECM

11  contract; and (3) dismiss Plaintiff's § 17200 claim as a mere re-hash of Plaintiff's other failed

12  claims.

13                                          Respectfully submitted,

14  DATED:  August 23, 2013                 SEVERSON & WERSON
                                            A Professional Corporation
15

16                                          By: _____/s/___*Rebecca S. Saelao*_____
                                                        Rebecca S. Saelao
17

18                                          Attorneys for Defendants
                                            WELLS FARGO BANK, N.A. and FEDERAL
                                            NATIONAL MORTGAGE ASSOCIATION
19                                          a/k/a FANNIE MAE

20

21

22

23

24

25

26

27

28