STEVEN A. SKALET (*pro hac vice*)
CRAIG L. BRISKIN  (*pro hac vice*)
**MEHRI & SKALET, PLLC**
1250 Connecticut Avenue NW, Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Fax: (202) 822-4997

JEAN CONSTANTINE-DAVIS (*pro hac vice*)
**AARP FOUNDATION LITIGATION**
601 E Street NW
Washington, D.C. 20049
Telephone:  (202) 434-2060
Fax:  (202) 434-6424

MICHAEL NG (237915)
KELLY A. CORCORAN (260268)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105-1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiff and the Putative Class

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a California corporation*,*<br><br>*and*<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>Defendants. | Case No. 3:11-cv-03831-SC<br><br>**<u>CLASS ACTION</u>**<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>DATE:  October 11, 2013<br>TIME:   10:00 a.m.<br>DEPT:  1<br><br>Hon. Samuel Conti |

# TABLE OF CONTENTS

*Page*

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ......................................................................................................... 2

    A. Legal Standard ............................................................................................ 2

    B. The Complaint States A Claim For Breach Of Contract. ..................... 3

        1. The Complaint States a Claim for Breach of Contract for Defendants' Refusal to Allow the Chandler Estate to Sell the Property under the FMV Rule ................................................... 3

        2. Defendants Incorrectly Construe Their Notice Obligations Under the HECM Documents and Applicable Law. ........................... 8

        3. Paragraph 9(a)(ii) of the Mortgage Independently Requires Notice. ..... 11

        4. Defendants Misrepresented the Chandler Estate's Contractual and Legal Rights. ........................................................................... 12

        5. To The Extent That the Contract Is Ambiguous, It Should Be Read To Comply With Applicable Law ................................................ 13

    C. Plaintiff May Obtain a Declaration That Defendants Have Violated The HECM Statute and Regulations ........................................................ 17

    D. Business & Professions Code § 17200 .................................................. 19

        1. Defendants' Practices, As Alleged in the Complaint, Are Unlawful. ........................................................................................ 20

        2. Plaintiff Has Adequately Pled That Defendants Engaged in Unfair Practices. ..................................................................................... 21

        3. The Complaint States a UCL Action Based on Defendants' Fraudulent Practices. ......................................................................... 22

III. CONCLUSION .................................................................................................. 23

1

<u>**TABLE OF AUTHORITIES**</u>

2

*Page*

3

<u>*Cases*</u>

4

<u>Amer. Intern. Specialty Lines Ins. Co. v. U.S.,</u>
    2010 WL 2635768 (C.D. Cal. June 30, 2010) ................................................................ 15

5

6

<u>Ashcroft v. Iqbal,</u>
    556 U.S. 662 (2009) ........................................................................................................... 2

7

<u>Bank of the West v. Superior Court,</u>
    2 Cal.4th 1254 (1992) ...................................................................................................... 20

8

9

<u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 1264-1265 (1992). ................................ 17

<u>Bodle v. Bodle,</u>
    76 Cal. App. 3d 758 (1978) ............................................................................................ 14

10

<u>Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.,</u>
    20 Cal.4th 163 (1999) ...................................................................................................... 19

11

12

<u>Chabner v. United of Omaha Life Ins. Co.,</u>
    225 F.3d 1042 (9th Cir. 2000) ........................................................................................ 20

13

<u>City of El Cajon v. El Cajon Police Officers' Assocation,</u>
    49 Cal. App. 4th 64 (1996) ............................................................................................. 15

14

15

<u>Cleveland v. Aurora Loan Services, LLC,</u>
    2011 WL 2020565 (N.D. Cal. May 24, 2011) ................................................................ 20

16

17

<u>Garcia v. Sony Computer Entm't Am., LLC,</u>
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ........................................................................... 3

18

<u>Harris v. United States Fid. & Guar. Co.,</u>
    569 F.2d 850 (5th Cir. 1978) .......................................................................................... 18

19

20

<u>Hsu v. UBS Financial Services, Inc.,</u>
    2011 WL 3443942 (N.D. Ca. Aug. 5, 2011) .............................................................. 3, 17

21

<u>In re Facebook PPC Adver. Litig.,</u>
    709 F. Supp. 2d 762 (N.D. Cal. 2012) ........................................................................... 14

22

23

<u>Labrador v. Seattle Mortg. Co.,</u>
    2008 WL 4775239 (N.D. Cal. Oct. 29, 2008) ................................................................ 19

24

<u>Lucas v. Dep't of Corr.,</u>
    66 F.3d 245 (9th Cir. 1995) .............................................................................................. 3

25

26

<u>McAllister v. BAC Home Loans Servicing, LP,</u>
    2011 WL 2200672 (E.D. Tex. Apr. 28, 2011) ............................................................... 16

27

<u>McCracken v. Hayward,</u>
    43 U.S. 608 (1884) .......................................................................................................... 14

28

Munoz v. Fin. Freedom Senior Funding Corp.,
    567 F. Supp. 2d 1156 (C.D. Cal. 2008) ........................................................................ 19

Norfolk & W. Ry. Co. v. American Train Dispatchers Ass'n,
    499 U.S. 117 (1991)...................................................................................................... 14

Ocean View Towers Assoc., Ltd. Partnership v. United States,
    88 Fed. Cl. 169 (Fed. Ct. Cl. 2009)............................................................................. 16

Robinson v. Bank of Am.,
    2012 U.S. Dist. LEXIS 74212 (N.D. Cal. May 29, 2012) ............................................. 3

Romero v. Countrywide Bank, N.A.,
    740 F. Supp. 2d 1129 (N.D. Cal. 2010) ........................................................................ 19

Saunders v. Superior Court,
    27 Cal. App. 4th 832 (1994) .................................................................................. 20, 22

Shroyer v. New Cingular Wireless Servs.,
    622 F.3d 1035 (9th Cir. 2010) .............................................................................. 19, 20

Societe de Conditionnement on Aluminum v. Hunter Eng. Co., Inc.,
    655 F.2d 938 (9th Cir. 1981) ........................................................................................ 18

Stevens v. Superior Court,
    75 Cal. App. 4th 594 (1999) ......................................................................................... 19

Ticor Title Ins. Co. v. Rancho Santa Fe Ass'n,
    177 Cal. App. 3d 726 (1986) ........................................................................................ 15

Walsh v. Schlecht,
    429 U.S. 401 (1977)...................................................................................................... 14

Wolf v. Superior Court,
    114 Cal. App. 4th 1343 (Cal. App. 2d Dist. 2004) ...................................................... 14

### *Statutes*

12 U.S.C. § 1715z-20(d)(7) ............................................................................................ 6

24 C.F.R. § 206.123(b) ............................................................................................... 6, 9

24 C.F.R. § 206.125 ...................................................................................................... 16

24 C.F.R. § 206.125(a)(2) .......................................................................................... 9, 22

24 C.F.R. § 206.125(b) .................................................................................................. 12

24 C.F.R. § 206.125(c) ............................................................................................... 9, 22

24 C.F.R. § 206.27((b)(8) ............................................................................................... 6

24 C.F.R. § 206.3 ............................................................................................................ 9

24 C.F.R. § 206.123(b) .................................................................................................. 22

24 C.F.R. §§ 206.123-206.133 ............................................................................... 1

28 U.S.C. § 2201(a) .............................................................................................. 18

Cal. Civ. Code §§ 1923-1923.10 ......................................................................... 19

Cal. H & S Code § 51656 ..................................................................................... 19

Fed. R. Civ. P. 8 ..................................................................................................... 2

### *Other Authorities*

24 Corbin on Contracts § 24 (1998) .................................................................... 16

5-24 Corbin on Contracts § 24.22 (2013) ............................................................ 14

5-24 Corbin on Contracts § 24.26 (2013) ............................................................ 15

Restatement (Second) of Contracts § 203 ............................................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KERR
&
WAGSTAFFE
LLP

## I.   INTRODUCTION

Plaintiff Robert Chandler seeks to enforce a central protection of the federal Home Equity Conversion Mortgage ("HECM") program, which provides that HECM borrowers can sell or transfer their homes at fair market value, even if that amount is less than the full mortgage balance.  The Chandler estate has sought to sell the Chandler home to Robert Chandler since 2011.  Defendants fail to explain why they are standing in the way.

The HECM contract and HECM regulations state that the borrower or estate can sell or transfer the property *at any time* for its appraised value, even if it is less than the mortgage balance, in full satisfaction of the loan.  If the loan is due and payable, the borrower may sell for the lesser of the mortgage balance or 95 percent of its appraised value (referred to herein as the "Fair Market Value Rule" or "FMV Rule").  Since the beginning of the program, HUD has maintained administrative procedures for such sales and insurance claims by lenders.[1]  All borrowers pay substantial premiums into a dedicated insurance fund to provide them with this protection.  Plaintiff's case is a good example.  At the time of Rosemary Chandler's death, the reverse mortgage balance was $338,000, and the property was worth an estimated $194,900.  If Defendants had not thwarted Mr. Chandler's efforts, the Chandler estate would have sold the property to Mr. Chandler for $185,155, 95% of fair market value, and Defendants could have made a claim on the insurance fund for the difference, $152,845.  The transaction would be a win-win:  Mr. Chandler would be able to purchase and continue living in his family home, and Defendants would be made whole.

Yet despite Plaintiff's repeated requests, Defendants refused to allow the Chandler estate to sell the property to Mr. Chandler under these terms, and foreclosed on the home.  After failing to find a buyer at auction, Defendant Fannie Mae now owns the home.  Defendants ask the Court to adopt a reading of the HECM contract that is equal parts illegal and irrational, pursuant to

---

[1]   See 24 C.F.R. §§ 206.123-206.133 (detailing procedures for notice to borrowers and estates, ordering appraisals on property, timelines for foreclosure, application for insurance for and payment of insurance benefits).

which they continue to issue deceptive information to borrowers' estates and their heirs, and insist on payment in amounts they are not entitled to collect. Defendants attempt to turn this case into a question of whether Robert Chandler as an heir has a contractual right to **purchase** the property, rather than whether the Chandler estate has a right to **sell** it to whomever it wishes.[2] Plaintiff filed this case as the representative of an *estate* that wishes to *sell* the property, and he brings this claim on behalf of a class of estates and personal representatives.[3]

Nothing in the contract or applicable law stands in Plaintiff's way. Only Defendants do. There simply is no justification for Defendants to subject borrowers and their families to this treatment. Defendants' actions constitute a breach of contract and a violation of California's consumer protection laws. The legal and the common sense solutions to this problem are one and the same: the Chandlers should be allowed to keep a home that has been theirs since the 1940s. Defendants' motion to dismiss should be denied in its entirety.

## II.   ARGUMENT

### A.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] Pleadings are "so construed as to do substantial justice."[5] Detailed factual allegations are not required; a complaint need only include sufficient factual allegations to "state a claim to relief that is plausible on its face."[6] "When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe

---

[2]     Dkt. No. 67 at 25.

[3]     FAC ¶ 74(d) (Defendants breached contract *inter alia* by "[i]nitiating and continuing foreclosure and eviction proceedings on HECM-secured properties when estates or personal representatives have undertaken to satisfy the HECM by selling the property under the FMV Rule."); see also id. ¶¶ 66, 76, 81.

[4]     Fed. R. Civ. P. 8(a)(2).

[5]     Fed. R. Civ. P. 8(e).

[6]     Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

KERR
&
WAGSTAFFE
LLP

them in the light most favorable to the non-moving party."[7]  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.[8]

### B.   THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT.

Defendants breached their contracts with Plaintiff and the Class when they failed to issue a notice that complied with the terms of the HECM loan, and when they obstructed and refused the Chandler estate and other estates' attempts and offers to sell the property under the FMV Rule.  "In California, a claim for breach of contract requires a plaintiff to establish: (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiffs."[9]  The court should interpret the contract in a manner that gives effect to the mutual intent of the parties, if that intent can be ascertained.[10]  A motion to dismiss a claim for breach of contract should not be granted where the contract "leaves doubt as to the parties' intent."[11]  As Defendants acknowledge, they may only prevail on their motion to dismiss the Complaint's breach of contract claim of the HECM Deed of Trust if its "unambiguous plain meaning" compels an interpretation in their favor.[12]

#### 1.   The Complaint States a Claim for Breach of Contract for Defendants' Refusal to Allow the Chandler Estate to Sell the Property under the FMV Rule.

Defendants ignore Plaintiff's claims that they breached the HECM contract by refusing to allow the Chandler Estate to **sell** the property to Mr. Chandler under the FMV Rule.  Instead,

---

[7]    Garcia v. Sony Computer Entm't Am., LLC, 859 F. Supp. 2d 1056, 1061 (N.D. Cal. 2012).

[8]    Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).

[9]    Robinson v. Bank of Am., 2012 U.S. Dist. LEXIS 74212, *11 (N.D. Cal. May 29, 2012) (citing Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (Cal. App. 2009)).

[10]    Cal. Civ. Code § 1636.

[11]    Id.; see also Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008).

[12]    Dkt. No. 67 at 21 (citing Hsu v. UBS Financial Services, Inc., No. C 11-02076 WHA, 2011 WL 3443942, at *6 (N.D. Cal. Aug. 5, 2011)).

they attempt to recast the issue as one of whether Mr. Chandler is entitled to **purchase** the property.[13]

This is a red herring. The Complaint is clear from the first page that this case first and foremost concerns the borrower's contractual right to sell pursuant to the FMV Rule.[14] First, the caption of the complaint states that Mr. Chandler brings this case "AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER."[15] He and his counsel did communicate to Defendants his interest in purchasing the property from the Estate.[16] If no one had been interested in buying the Chandler property under the FMV Rule, there would have been no point in raising the Estate's interest in selling it. Defendants were obligated to allow that sale to proceed. Instead, they foreclosed on the property. Second, the right of a borrower's estate to sell to anyone pursuant to the FMV Rule, including a spouse or heir, is not seriously in dispute.

Paragraph 9(d) states in part:

> Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
>
> > (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or
> >
> > (ii)   Pay the balance in full; or
> >
> > (iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or
> >
> > (iv)   Provide the Lender with a deed in lieu of foreclosure.[17]

---

[13]    Dkt. No. 67 at 20-21.

[14]    *See, e.g.,* FAC ¶ 2 (defining the FMV Rule as the ability to selling or transfer the property to anyone, including a spouse or family member); FAC ¶ 74 (breach of contract claim based on Defendants' "[i]nitiating and continuing foreclosure and eviction proceedings on HECM-secured properties when estates or personal representatives have undertaken to satisfy the HECM by selling the property under the FMV Rule"). *See also* FAC ¶¶ 2, 3, 26, 30, 40, 42, 58, 60, 66.

[15]    FAC at 1.

[16]    FAC ¶¶ 47-53.

[17]    Dkt. No. 68-1, Ex. A at 5.


KERR
&
WAGSTAFFE
LLP

It is important to recognize that this is the *only* provision in the Deed of Trust that gives the lender the right to foreclose. It cannot do so until it has notified the borrower of his or her available options to satisfy the loan, and of course it follows that the lender has to honor the borrower's choice. Paragraph 20 of the HECM ("Foreclosure Procedure") makes this clear: the Lender may not "invoke the power of sale" until it has "require[d] immediate payment in full under Paragraph 9." According to Defendants, they can disregard this explicit notice requirement if the borrower has died, and proceed straight to invoking the power of sale.

Defendants place great significance on the placement of the contract options in the HECM immediately following a sentence concerning when the lender must give notice to both the Borrower and the Secretary.[18] However, while the options might more artfully have been placed in a separate section of the mortgage, the right of the estate to satisfy the mortgage under these terms and the demand for notice of these options 30 days before initiating foreclosure is indisputable.

Defendants' reading would eviscerate an essential protection that the reverse mortgage program provides: the borrower is never liable for any deficiency on the loan. The standard HECM states:

> 10. **No Deficiency Judgments**. Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender

---

[18]     Dkt. No. 67 at 22-24. This passage does not exempt the lender from notifying the borrower's estate, but simply requires the lender to notify *both* the Secretary and the borrower in certain situations. Moreover, Defendants misrepresent Plaintiff's position. Plaintiff did not "expressly concede" that Paragraph Section 9(d) exempted the lender from notice requirement where the borrower died. Dkt. No. 67 at 22 (citing FAC ¶¶ 28, 74). Plaintiff's position in those paragraphs is the same as it is here: the first sentence of Paragraph 9(d) requiring notice to both the Secretary and the Borrower does not negate the notice requirement to the Borrower in the second sentence.

KERR
&
WAGSTAFFE
LLP

and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.[19]

Reflecting the fact that the lender can never collect more than the value of the property, the HECM regulations explain how the borrower's estate may satisfy the HECM by selling the property under the FMV Rule:

> a.   The property may be sold *at any time* for the lesser of the mortgage balance or the appraised value of the property. 24 C.F.R. § 206.125(c).
>
> b.   If the mortgage is due and payable, the property may be sold for the lesser of the mortgage balance or 95% of its appraised value; *Id.*
>
> c.   In order to avoid delays and additional expense of a foreclosure action, a mortgagee must accept a deed in lieu of foreclosure from the mortgagor.  24 C.F.R. § 206.125(f).

The right to sell the property on these terms is available both to the original mortgagor and to the estate of a deceased mortgagor.[20]

> (b) *Expanded definition of mortgagor.*  The term *mortgagor* as used in this subpart shall have the same meaning as stated in § 206.3, except that in reference to a sale by the mortgagor, the term **shall also mean the mortgagor's estate or personal representative**.[21]

---

[19]     Dkt. No. 68-1, Ex. A at 4; *see also* 12 U.S.C. § 1715z-20(d)(7) (to be eligible for mortgage insurance, a reverse mortgage shall "provide that the homeowner shall not be liable for any difference between the net amount of the remaining indebtedness of the homeowner under the mortgage and the amount recovered by the mortgagee"); 24 C.F.R. § 206.27(b)(8) ("The borrower shall have no personal liability for the payment of the mortgage balance."); Dkt. No. 68-1, Ex. E at 1 (HUD determined from the outset that "the HECM borrower (or his or her estate) will never owe more than the loan balance or the value of the property, whichever is less.").

[20]     The general definition of "mortgagor" in the HECM regulations excludes estates: "Mortgagor means each original borrower under a mortgage.  The term does not include successors or assigns of a borrower." 24 C.F.R. § 206.3.  The general definition applies *unless*: (1) "mortgagor" is used in reference to a sale of the property by the mortgagor; **and** (2) the term appears in Subsection C of the regulations. 24 C.F.R. § 206.123(b).[21]     24     C.F.R.     § 206.123(b) (emphasis added).  This definition of "mortgagor" applies to all of Subsection C, sections 206.101 - 206.133.  Id.

[21]     24 C.F.R. § 206.123(b) (emphasis added).  This definition of "mortgagor" applies to all of Subsection C, sections 206.101 - 206.133.  Id.

Defendants' position is directly contrary to the contract and corresponding regulations:  they insist that they may demand that the borrower or the estate pay the full mortgage balance in order to keep the property.

Defendants contend that they did not breach the contract in refusing to allow the Chandler estate to sell to Mr. Chandler because, they claim, if a HECM is terminated because of the death of the borrower, the estate has *no right to sell the property under the FMV Rule.*[22]  In essence, they contend that an estate must pay the full mortgage balance to satisfy the HECM and keep the property.  The only authority they cite in support is the HECM contract language that a lender "may require immediate payment *in full*" after borrower dies.[23]  But this same payable "in full" language precedes *all of the events triggering acceleration* in Paragraph 9 of the HECM. Defendants appear to agree that there is a right to purchase under the FMV Rule for any of the other events.  This argument reflects a basic misunderstanding of the non-recourse nature of HECMs.

The other rationale Defendants give for their refusal to allow the Chandler estate to sell the property under the FMV Rule is HUD's informal guidance, Mortgagee Letter 2008-38, which stated that a FMV Rule sale could only be an "arms length" transaction – it could not be made to a family member.  Defendants are confusing two separate things:  the right to sell for fair market value, and the right to sell at that amount to a spouse or heir.  Even ML 2008-38 made clear that the estate could avail itself of the FMV Rule.  Indeed, if it could not, there would have been no need for ML 2008-38 in the first place.  The only basis in contract for a FMV Rule sale is in Paragraph 9(d), so there is no doubt it applies to borrower's estates.  In any event, HUD explicitly revoked this guidance well over two years ago, in Mortgagee Letter 2011-16, after borrowers challenged it under the Administrative Procedure Act, because it directly contradicted HUD's duly promulgated regulations.  HUD stated that the rescission was *effective immediately*,

---

[22]     Dkt. No. 67 at 14-15.

[23]     Dkt. No. 68-1, Ex. A, ¶ 9.

KERR
&
WAGSTAFFE
LLP

and referred lenders to regulations and guidance making clear that there was no restriction on the right of sale.[24]  Contrary to Defendants' arguments, there was nothing left to explain.  HUD's rescission occurred on April 5, 2011 – three weeks *before* Defendants foreclosed on the Chandler home.  In addition to withdrawing ML 2008-38, HUD issued a Model Notice on April 21, 2011, directing lenders to correct previously inaccurate notices to estates and parties related to deceased HECM borrowers, and to give them the opportunity to purchase under the FMV Rule.[25]

Moreover, even if ML 2008-38 had not been rescinded, it would be no defense to Plaintiff's contractual right to sell the property.  Under the terms of the HECM Deed of Trust, Defendants were obliged to permit the Chandler Estate to sell the property to *any willing buyer* for 95% of the property's appraised value.  It is strange, to say the least, that Defendants insist that one not look outside the contract to governing law regarding Plaintiff's rights, yet they ultimately defend their actions by reference to long-defunct informal guidance from HUD.  The contract and the law are clear:  Defendants are obligated to allow the Chandler Estate to sell under the FMV Rule.  They have breached that duty.

### 2.  Defendants Incorrectly Construe Their Notice Obligations Under the HECM Documents and Applicable Law.

Defendants contend that they were entitled to "call" the mortgage due and payable without actually telling anyone they were doing it.  Even though the Chandler estate had several options to satisfy the mortgage and/or retain the home—whether through payment of the mortgage balance, the FMV Rule, or a deed in lieu—Defendants insist they were entitled to simply notice a non-judicial sale of the property.[26]  Defendants misconstrue Paragraph 9(d) of the Deed of Trust (discussed above), ignore the foreclosure procedure set out in Paragraph 20, as well as HUD's regulations, Handbook, Model Notice and FAQs.[27]  By contract and by law,

---

[25]    Plaintiff's RJN, Ex. E.

[26]    Dkt. No. 67 at 22, 24-25.

[27]    See FAC ¶¶ 30-39.



Lenders must notify borrowers and estates of the rights accorded them by contract and federal law prior to initiating a foreclosure.[28]

Defendants' position does not merely defy the contractual and regulatory requirements; it defies common sense. Under the Deed of Trust, the lender is to "*require*" payment upon the occurrence of a terminating event, including the death of the borrower, after which it "shall require" the mortgagor to satisfy the HECM by choosing among three options. Paragraph 9 lists the grounds for accelerating -- otherwise known as "calling" -- the mortgage due and payable. How does a lender call a mortgage due and "require" payment if it need not notify the Borrower or the estate that is has decided to accelerate the debt? Providing notice that foreclosure will occur unless certain actions are taken is the act of "requiring" payment. Under Defendants' interpretation, the estate of a deceased borrower would operate in an information black hole with no knowledge of what it can do to retain the property and avoid foreclosure.

In all situations, Paragraph 20 of the Deed of Trust states that the lender may invoke the power of sale only after calling the loan due and payable under Paragraph 9. Under the HECM Loan Agreement, executed by the borrower, the lender, *and HUD,* the lender is obliged to continue making loan advances until it issues a notice that the loan is due and payable. ("Lender

---

[28]     See 24 C.F.R. §§ 206.125(a)(2); 206.123(b). The history of section 206.125 shows that HUD has always required notice, including in the event of the mortgagor's death. HUD amended 24 C.F.R. § 206.125(a)(2) in 1995 to "relieve the mortgagee from notifying the *mortgagor* when the mortgage is due and payable because the mortgagor is deceased." (Plaintiff's RJN, Ex. D, 60 Fed. Reg. 42754-01 at 14 (emphasis added).) HUD did this for a practical reason: ". . . the term 'mortgagor' is used in the HECM regulations as referring only to the original mortgagor or mortgagors, not to their successor in interest, so that notice to the mortgagor after death would be an impossibility." Id.; *see also* 24 C.F.R. § 206.3. However, because of the expanded definition of "mortgagor" referred to above, this change had no effect on the established right of the *estate of a mortgagor* to satisfy the HECM by selling the property under the FMV Rule. 24 C.F.R. §§ 206.125(c); 206.123(b) (as used in sections 206.101 - 206.133, "in reference to a sale by the mortgagor," the term "mortgagor" "shall also mean the mortgagor's estate or personal representative").

Nor, as HUD's Commentary makes clear, did the amendment relieve the mortgagee of the obligation to provide "adequate notice to an executor or other party responsible for the property before a foreclosure is commenced." Plaintiff's RJN, Ex. D, 60 Fed. Reg. 42754 at 14; 24 C.F. R. § 206.125(a)(2).

shall have no obligation to make Loan Advances if Lender has notified Borrower that immediate payment in full to Lender is required under one or more of the Loan Documents. . ."[29] The HECM Note also states that the borrower is not obliged to repay until "receipt of a notice by Lender" requiring such payment.[30]

The HECM Handbook, Section 4330.1 REV-5, § 13-33 requires the lender to issue a notice that offers mortgagors *or estates* the three options (including the FMV Rule) 30 days prior to initiating foreclosure.[31] HUD confirmed Plaintiff's position still further with a Model Notice from Lenders to Related Parties. ("Model Notice").[32] HUD expressly required HECM lenders to take action to correct their notices to estates and other persons related to the deceased HECM borrower and to offer such persons the opportunity to purchase the homes under the FMV Rule.

In July 2011, HUD issued a series of HECM Servicer Frequently Asked Questions and answers to clarify the actions it expected of lenders in the wake of its revocation of ML 2008-38.[33] The FAQs stated that: (a) HUD interprets the word "sale" to include any **post-death** conveyance of the mortgage property (even by operation of law) to the borrower's estate or heirs; (b) the Model Notice must be sent to estates and any person know to be related to the deceased HECM borrower; and (c) HECM lenders should stay foreclosure sales pending receipt of the Model Notice by related persons and afford them adequate time (up to 180 days after receipt of the Notice) to purchase the property.[34]

In short, this system *cannot function* properly in the absence of notice to the mortgagor or his estate of their rights. A refusal to provide notice and allow sales under the FMV Rule simply

---

[29] Plaintiff's RJN Ex. C at HECM Loan Agreement ¶ 4.1.

[30] Plaintiff's RJN, Ex. B ¶ 4(A).

[31] Dkt. No. 68-1, Ex. D; FAC ¶ 35.

[32] Plaintiffs' RJN, Ex. E; *see also* FAC, Ex. A at 1-3 (repeated references to HUD's issuance of the "Model Notice").

[33] FAC, Ex. A.

[34] Id. at 1-3.

results in needless foreclosure on homes that could have been transferred or sold under the FMV Rule.

### 3. Paragraph 9(a)(ii) of the Mortgage Independently Requires Notice.

Even if Defendants' strained reading of the Mortgage were justified, Plaintiff and the Class were independently entitled to Notice under ¶ 9(a)(ii) of the Mortgage, because once a HECM borrower dies, "all of the [his or her] title in the Property is sold or otherwise transferred" to the estate or heirs by operation of law."[35]   HUD has made clear that it "interprets the word 'sale' to include any **post-death** conveyance of the mortgage property (even by operation of law) to the borrower's estate or heirs . . . A loan payoff that occurs simultaneously with or immediately following such a post-death conveyance **will be regarded as a sale transaction for purposes of section 206.125**.[36]   Such a transfer is an independent basis upon which the HECM mortgage is due and payable, which necessitates notice to the borrower.[37]

This is clearly true with respect to the Chandler HECM:  Mrs. Chandler was not the "Borrower" on the Mortgage.  The property was held by a trust of which Rosemary Chandler was the trustee, settlor and beneficiary.[38]  Her beneficial interest in the trust terminated upon her death.  As such, to the extent Defendants sought to call the HECM due and payable, they could *only do so* pursuant to Paragraph 9(a)(ii).  Defendants have never provided the Chandler estate with the Model Notice or anything like it, and they do not assert otherwise.

Defendants' contention that ¶ 9(d) imposes no contractual duty to provide notice to *any borrower* prior to initiating foreclosure is both stunning and groundless.[39]  Paragraph 9(d) states: "Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable

---

[35]     Dkt. No. 68-1, Ex. A at 5.

[36]     Id. at 1 (emphasis added).

[37]     Dkt. No. 68-1, Ex. A at 5.

[38]     Id.

[39]     Dkt. No. 67 at 24-25.

under Paragraph (a)(ii) or (b).  Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to [undertake one of four options]."  Yet Defendants claim they can satisfy their notice requirements by writing a letter stating, "The loan is due and payable."  Id. at 25.  They do not explain how they can "require immediate payment" without informing the borrower of the basis for the termination, how any default might be cured, and how the borrower or estate can satisfy the mortgage.[40]

Defendants' position is contrary to the contract, as well as HUD's regulations and guidance.

### 4.  Defendants Misrepresented the Chandler Estate's Contractual and Legal Rights.

Defendants' contention that they had no contractual or other duty to provide notice to the Chandler estate is belied by the fact that they did, in fact, send such a notice.  On January 7, 2011, Wells Fargo, through its foreclosure agent NDEX, LLC, sent a "Notice of Default and Election to Sell Under Deed of Trust," which advised the Chandler family that: (1) the mortgage is in default because "you are behind in your payments;" (2) they had approximately 90 days to cure the default before foreclosure; (3) to cure the default, their *only* option was to pay the full mortgage balance, then $338,034.87, which amount would increase "until your account becomes current;" (4) the reason for the default is the failure to pay "the entire unpaid principal balance, plus accrued interest thereon which became immediately due and payable when the borrower died and the property ceased to be the principal residence of any surviving borrower."[41]

---

[40]     Defendants also reject any obligation to obtain an appraisal of the property. Dkt. No. 67 at 24.  They are mistaken:  HECM regulations require that the lender "shall obtain an appraisal of the property no later than 30 days after the mortgagor is notified that the mortgage is due and payable, or no later than 30 days after the mortgagee becomes aware of the mortgagor's death, **or upon the mortgagor's request in connection with a pending sale."**  24 C.F.R. § 206.125(b) (emphasis added).  Defendants' narrow view undermines the system set up in the regulations to achieve prompt repayment of due and payable HECMs and the right of the estate to sell under the FMV Rule.

[41]     FAC, Ex. B.



KERR
&
WAGSTAFFE
LLP

12

Protestations notwithstanding, Defendants issued a defective notice of default that affirmatively misrepresented that the *only way* the Estate could "cure" the default was to repay the full mortgage balance.  Even before HUD revoked ML 2008-38, the estate of a HECM borrower was entitled to satisfy the loan by selling the property under the FMV Rule; the mortgagee letter only concerned sales to a family member.  Yet Wells Fargo's notice demands the full mortgage balance, full stop.  Defendants' failure to issue an accurate notice likely resulted in borrowers' spouses and families paying Defendants amounts far in excess of their legal obligation, under threat of losing their homes.

### 5.       To The Extent That the Contract Is Ambiguous, It Should Be Read To Comply With Applicable Law.

Defendants contend that they can evade HUD regulations concerning the FMV Rule because Paragraph 9(d), where it appears, does not apply in the case of the borrower's death, Paragraph 9(a)(i), and in any event, the required notice need only state that the loan is due and payable, not that the borrower has multiple options for satisfying the loan in full.  Plaintiff's position is that the contract is not ambiguous in this regard, but even if it is, Plaintiff's reading is the reasonable one, and Defendants' reading is implausible.  The contract manifests the parties' intent to be bound by the regulations and incorporate them into the agreements.  Defendants concede that their reading directly contradicts HUD's guidance concerning repayment notices: HUD makes clear that an estate may satisfy the HECM pursuant to the FMV Rule, even *after* foreclosure proceedings have begun.[42]  A notice that does not mention the FMV Rule is a defective notice.  Defendants must *always* notify the estate of the borrower that the loan is due and payable, and that means sending notice to the property address.

Under California law, contract interpretation proceeds in two steps, where the meaning of words in a contract is disputed:

---

[42]       <u>See</u> Dkt No. 67 at 14-15.



1

> "First the court provisionally receives (without actually admitting)
> all credible evidence concerning the parties' intentions to
> determine 'ambiguity,' i.e., whether the language is 'reasonably
> susceptible' to the interpretation urged by a party. If in light of the
> extrinsic evidence the court decides the language is 'reasonably
> susceptible' to the interpretation urged, the extrinsic evidence is
> then admitted to aid in the second step--interpreting the
> contract."[43]

2

3

4

5   Here, *none* of the extrinsic evidence, or applicable law, favors Defendants' interpretation, and it

6   supports Plaintiff's reading.

7        In addition, a contract should be construed in a way that does not render it illegal.

8   "Courts often state that when a contract term can be interpreted in at least two ways, and when

9   one of these interpretations would result in a valid contract and the other would cause the

10  agreement to be void or illegal, the former interpretation is preferred."[44]  The Supreme Court's

11  articulation of the rule is apt here:  "Since a general rule of construction presumes the legality

12  and enforceability of contracts . . . ambiguously worded contracts should not be interpreted to

13  render them illegal and unenforceable where the wording lends itself to a logically acceptable

14  construction that renders them legal and enforceable. The ... [disputed] clause, although

15  inartfully worded, lends itself to a construction that ... does not violate [the Act]."[45]  Here, while

16  the contract may be inartfully worded, the proper reading that Plaintiffs forward here is

17  consistent with the totality of HUD regulations and guidance.[46]

18

19  [43]    Wolf v. Superior Court, 114 Cal. App. 4th 1343, 1351 (Cal. App. 2d Dist. 2004), quoted
    in In re Facebook PPC Adver. Litig., 709 F. Supp. 2d 762, 768, 770 (N.D. Cal. 2012) ("The
20  language of the contract is reasonably susceptible to this interpretation even without reference to
    the Extrinsic Evidence.").

21  [44]    5-24 Corbin on Contracts § 24.22 (2013); see also Restatement (Second) of Contracts §
    203 ("In the interpretation of a promise or agreement or a term thereof, the following standards
22  of preference are generally applicable: ... an interpretation which gives a reasonable, lawful, and
    effective meaning to all the terms is preferred to an interpretation which leaves a part
23  unreasonable, unlawful, or of no effect...").

24  [45]    Walsh v. Schlecht, 429 U.S. 401, 408 (1977).

25  [46]    See also McCracken v. Hayward, 43 U.S. 608, 611 (1884) (stating that a contract
    "depends on the laws in existence when it is made; these are necessarily referred to in all
26  contracts, and forming a part of them as the measure of the obligation to perform them by the
    one party and the right acquired by the other."), quoted in Bodle v. Bodle, 76 Cal. App. 3d 758,
27  763 (1978) (divorce agreement incorporated prevailing law regarding the
    point at which a pension right becomes a property interest).  See also Norfolk & W. Ry. Co.
28  v. American Train Dispatchers Ass'n, 499 U.S. 117, 130 (1991) (the "[l]aws which subsist at the

California recognizes this rule as well.  In <u>City of El Cajon v. El Cajon Police Officers' Assocation</u>, 49 Cal. App. 4th 64 (1996), the court construed a contract with regard to applicable state labor law, stating, "When an instrument is susceptible to two interpretations, the court should give the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity."[47]  The court then observed that "applicable law becomes part of the contract as fully as if incorporated by reference . . . we interpret the disputed duration clauses within the context of the [state labor law], which was adopted to regulate labor relations for local government employees by providing a reasonable method of resolving disputes concerning the terms and conditions of employment."[48] A contract may incorporate regulations either by mirroring the language of regulation, or by express reference.[49]

Here, the contract contains an express provision stating that it "shall be governed by Federal law and the law of the jurisdiction in which the Property is located," and to the extent to any part of the contract conflicts with law, it should be severed from the contract.[50]  Even if there were no such references, Defendants' argument would fail.  The only authority Defendants cite, an unpublished Eastern District of Texas case, found that the HUD regulations were incorporated by an express provision stating that the deed of trust did not authorize acceleration or foreclosure

time and place of the making of a contract … enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms"); 5-24 <u>Corbin on Contracts</u> § 24.26 (2013) ("Words and other symbols must always be interpreted in the light of the surrounding circumstances, and the existing statutes and rules of law are always among these circumstances.")

[47]    <u>Id.</u> at 71 (quoting <u>Ticor Title Ins. Co. v. Rancho Santa Fe Ass'n</u>, 177 Cal. App. 3d 726, 730 (1986)).

[48]    <u>Id.</u> (citing cases).

[49]    <u>Amer. Intern. Specialty Lines Ins. Co. v. U.S.</u>, No. CV-09-01734, 2010 WL 2635768, at *5 (C.D. Cal. June 30, 2010).

[50]    Dkt. No. 68-1, Ex. A.

KERR
&
WAGSTAFFE
LLP

1   if not permitted by the regulations of the HUD Secretary.[51]  It does not, however, follow that

2   such an express clause is *required* for the HUD regulations to be deemed incorporated into the

3   contract.

4        Paragraph 9 of the Deed closely tracks 24 C.F.R. § 206.125, *as it is required to*.

5   References to the HUD Secretary, the HECM statute, and HECM regulations permeate the Deed

6   of Trust; Plaintiffs have counted 27 references in all.[52]  The Deed of Trust also expressly refers

7   to the HECM statute (identified in it as Section 255(i)(1)(A) of the National Housing Act).[53]

8   The Second Deed of Trust, which the Secretary of HUD is required to hold on all HECM-insured

9   properties, includes the same references.[54]  The borrower, lender and HUD enter a separate

10  agreement that governs insurance premiums, and which is suffused with references to HUD

11  regulations.  Defendants' claim that the regulations are not incorporated is not only wrong as a

12  matter of law, but disingenuous in light of the manifest intent to incorporate those relevant

13  sections into the contract.

14        Similarly, in <u>Ocean View Towers Assoc., Ltd. Partnership v. United States</u>,[55] the court

15  ruled that the HUD regulations applicable to the contract at issue were incorporated despite the

16  absence of any express reference to them in the language of the contract itself.  Thus, "although a

17  contract lacks specific inclusion of a pertinent statute or regulation, contracting parties are

18  nonetheless 'presumed to be aware of applicable statutes and incorporate them.'"[56]  This is

19  exactly what the parties expect when they enter into a transaction to which HUD is a party.  The

20

21  [51]    <u>McAllister v. BAC Home Loans Servicing, LP</u>, No. 4:10-cv-504, 2011 WL 2200672, at *1 (E.D. Tex. Apr. 28, 2011).

22  [52]    Dkt. No. 68-1, Ex. A at 2-6, ¶¶ 3, 5, 7, 8, 9(f), 10, 13, 15 (property insurance must be
23  paid as required by HUD; lender advances insurance premiums to HUD and charges them to the
    mortgage balance; lender may charge borrower any fees authorized by HUD; entire contract is
24  voidable if it fails to qualify for insurance; payments HUD may make to or on behalf of the
    borrower pursuant to the HECM statute.

25  [53]    <u>Id.</u> ¶ 13(a).

    [54]    <u>Id.</u> Ex. B at 2-6, ¶¶ 3, 5, 7, 8, 9(f), 10, 13, 15.

26  [55]    <u>Ocean View Towers Assoc., Ltd. Partnership v. United States</u>, 88 Fed. Cl. 169 (Fed. Ct.
27  Cl. 2009).

    [56]    <u>Id.</u> at 176 (quoting 24 Corbin on Contracts § 24, at 273 (1998)).

28

HECMs at issue exist solely by virtue of the federal program, and are highly regulated.  The HECM statute and regulations explicitly set out how a borrower can sell or transfer the property, and the lender can then file an insurance claim for any difference between the sale price and the mortgage balance.  The law and the contract are not at odds with each other, unless one adopts the strained readings urged by Defendants here.

By their own admission, Defendants can only prevail on their motion to dismiss the Complaint's breach of contract claim for failure to comply with the notice provisions of the HECM Deed of Trust if its "unambiguous plain meaning" compels their interpretation.[57]  They have not met that burden.  Paragraph 9 reflects the options available to borrowers and estates to satisfy the loan.  Defendants urge the Court to find ambiguity in the contract, and to construe that ambiguity in their favor, without regard to applicable law and HUD guidance that rejects their reading.  Assuming, arguendo, that the contract is ambiguous, it must be "construed in the context of [the document] . . . as a whole, and in the circumstances of [this]. . . case, and cannot be found to be ambiguous in the abstract."[58]  Any ambiguity in the HECM Deed of Trust must be resolved in the context of the HECM documents, and duly promulgated law.  Defendants' interpretation would undermine the non-recourse guarantee and deprive the estates of deceased HECM borrowers of the benefit of the insurance they have paid for.  It is plainly erroneous, and far from unambiguously correct.  For that reason, the Court should sustain the breach of contract claim.

### C.  PLAINTIFF MAY OBTAIN A DECLARATION THAT DEFENDANTS HAVE VIOLATED THE HECM STATUTE AND REGULATIONS

Defendants argue that Plaintiff is not entitled to seek a declaration relating to the parties' rights and obligations under the HECM statute and regulations, 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1 *et seq*., because those laws do not provide a private right of action entitling a

---

[57]     Dkt. No. 67 at 9 (citing Hsu v. UBS Financial Services, Inc., No. C 11-02076 WHA, 2011 WL 3443942, at *6 (N.D. Cal. Aug. 5, 2011)).

[58]     Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264-65 (1992).



plaintiff to claim directly under those laws.  The contention misses the point.  Plaintiff is entitled

to the declaratory relief set out in the Complaint for two reasons.

First, in order to determine the parties' rights and obligations under their contract, it is

necessary to ascertain their rights and obligations under the HECM laws that are incorporated

into the contract and thus define the *contractual* bargain struck by the parties. The Declaratory

Judgment Act broadly provides that the Court "may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not further relief is or could be

sought."[59]  The remedy promotes both judicial and real-world efficiency, by allowing the parties

to avoid ongoing harm by obtaining speedy judicial determination of their rights rather than

waiting and addressing claims only retrospectively.[60]  It is also well-settled that the declaratory

judgment need not resolve the parties' entire dispute.[61]  Here, determination of the Defendants'

obligations under the statute and regulations clearly governing their conduct and incorporated

into the contracts at issue will clarify the ongoing obligations of Defendants to Plaintiff and the

class, and will help guide the conduct and expectations of both Defendants and class members to

avoid breach of the contracts and further harm.  It is thus irrelevant whether they can bring a

claim under the statute or regulations directly because the Court is clearly empowered to

adjudicate the legal obligations underlying the contractual dispute at issue here.

In addition, California's unfair competition law ("UCL") provides exactly what

Defendants claim is missing here: a private right of action.[62]  The case law clearly demonstrates

that in the absence of an express prohibition, privilege or immunity, the UCL allows a plaintiff to

bring a claim for violation of the statue or regulation.  "The [California] Supreme Court

---

[59]     28 U.S.C. § 2201(a).

[60]     See, e.g., Societe de Conditionnement on Aluminum v. Hunter Eng. Co., Inc., 655 F.2d 938, 943 (9th Cir. 1981).

[61]     See Harris v. United States Fid. & Guar. Co., 569 F.2d 850, 852 (5th Cir. 1978).

[62]     Plaintiff does not concede that the HECM statute or regulations do not provide a private right of action, and expressly reserves the right to contend that they do on behalf of himself and the class.

repeatedly teaches that the UCA [UCL] allows a private plaintiff to proceed under it to seek redress for conduct which violates any predicate statute, unless the defendant is privileged, immunized by another statute, or the predicate statute expressly bars its enforcement under the UCA."[63]  No such prohibition, privilege or immunity applies here, and this Court has already expressly ruled that violation of HECM regulations may serve as the required predicate for a claim under the UCL.[64]  Plaintiff's claim for declaratory relief must therefore be permitted to stand under the UCL as well.

### D.   BUSINESS & PROFESSIONS CODE § 17200

Defendants are also incorrect that Plaintiff has failed to state a claim under the UCL.  The statute, which creates a cause of action for an "unlawful, unfair or fraudulent business act or practice," provides "sweeping," coverage, "embracing anything that can properly be called a business practice and at the same time is forbidden by law."[65]  Additionally, a practice may be "deemed unfair even if not specifically proscribed by some other law."[66]

To sufficiently plead under the "unlawful" prong of §17200, Plaintiff must allege that Defendant engaged in a business practice forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.[67]  A violation of common law can support this "unlawful" prong if the conduct is also unlawful, unfair, or fraudulent.[68]  To sufficiently plead

---

[63]     Stevens v. Superior Court, 75 Cal. App. 4th 594, 603-04 (1999) (allowing UCL claim based on insurer's alleged violation of agent licensing requirement of Cal. Ins. Code § 1631). HECM law does not preempt Plaintiff's state law claim.  *Compare* Romero v. Countrywide Bank, N.A., 740 F. Supp. 2d 1129, 1148-50 (N.D. Cal. 2010) (holding that Truth-in-Lending Act did not preempt UCL claim) *with* Munoz v. Fin. Freedom Senior Funding Corp., 567 F. Supp. 2d 1156 (C.D. Cal. 2008) (holding that federal law regulating savings and loans entirely occupied field of disclosures and advertisements relating to reverse mortgages); Cal. Civ. Code §§ 1923-1923.10 and Cal. H & S Code § 51656 (governing reverse mortgages).

[64]     See Labrador v. Seattle Mortg. Co., No. 08-22702008 WL 4775239, *4 (N.D. Cal. Oct. 29, 2008).

[65]     Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999) (internal quotation marks and citations omitted).

[66]     Id.

[67]     Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1044 (9th Cir. 2010).

[68]     Id.

KERR
&
WAGSTAFFE
LLP

19

under the "unfair" prong of §17200, Plaintiff must simply plead "any practice whose harm to the victim outweighs its benefits."[69]  Finally, to sufficiently plead under the "fraudulent" prong of §17200, Plaintiff must show that "members of the public are likely to be deceived."[70]

### 1.   Defendants' Practices, As Alleged in the Complaint, Are Unlawful.

Plaintiff has alleged that Defendants have violated numerous laws, and public policies of the State of California.[71]  Defendants acknowledge this allegation.[72]  Additionally, Plaintiff has more than adequately plead the factual bases for Defendants' unlawful conduct.[73]  Thus, Defendants' conclusion that the only "unlawful" conduct at issue is violations of federal laws is without basis.

Moreover, Plaintiff may bring a cause of action under the UCL for violations of federal law.  Defendants appear to contend that the existence of a private right of action pursuant to the underlying law is necessary for a UCL claim.[74]  This interpretation would eviscerate the effectiveness of the UCL, and *directly* contradicts the law.  "It does not matter whether the underlying statute also provides for a private cause of action; section 17200 can form the basis for a private cause of action even if the predicate statute does not."[75]  Thus, whether or not Plaintiff may sue Defendants directly for violations of HECM law, Plaintiff may certainly maintain a UCL cause of action arising out of Defendants' violations.

---

[69]     Id. (citing Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (1994)).

[70]     Bank of the West v. Superior Court, 2 Cal.4th 1254 (1992).

[71]     FAC ¶¶ 20, 21, 65, 66, 79, 81.

[72]     Dkt. No. 67 at 18.

[73]     *See* FAC ¶¶ 13-44.

[74]     Dkt. 67 at 18.

[75]     Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000) (citation omitted); cf. Cleveland v. Aurora Loan Services, LLC, 2011 WL 2020565, *3-5 (N.D. Cal. May 24, 2011) (holding that informal loan modification guidelines, which were not set forth in statute or regulations, could not be the sole basis for § 17200 claim based on unlawfulness).

In addition, Defendants mischaracterize Plaintiff's UCL claim as one based solely on Defendants' "conduct in failing to issue notice and opportunity to borrowers' heirs of an ability to purchase the property for 95%."[76]  Not so.  Plaintiff has alleged that the following conduct, *inter alia*, warrants recovery under the UCL:

a.   Failed to notify Plaintiff and the Class that they could satisfy the HECM *in* full by selling or transferring the property to a spouse, heir, or other third party for the lesser of the mortgage balance or of the appraised value and failed to appraise the property within 30-days of learning of the borrower's death and/or to advise Plaintiff and the Class of the results of the appraisal so that they could have information necessary to determine their options under the FMV Rule;

b.   Initiated foreclosures and evictions on the subject properties prior to giving estates and personal representatives 30 days notice that they could satisfy the HECM *in* full by selling the property to a spouse, heir, or other third party for the lesser of the mortgage balance or 95% of the appraised value;

c.   Provided notice to the estates, personal representatives and heirs that affirmatively misrepresented that the full mortgage balance must be paid to satisfy the HECM; and

d.   Initiating and continuing foreclosure and eviction proceedings on HECM-secured properties when estates or personal representatives have undertaken to satisfy the HECM by selling the property under the FMV Rule.[77]

This unlawful conduct provides a sufficient basis for Plaintiff's properly pled UCL claim.

### 2.   Plaintiff Has Adequately Pled That Defendants Engaged in Unfair Practices.

Defendants also conclude that, despite allegations of their practice of violating the law and their own contracts, issuing misleading statements, improper foreclosures, and attempts to forcibly remove persons from their family homes, Plaintiff has not adequately stated a claim of unfairness.  "'Unfair' simply means any practice whose harm to the victim outweighs its

---

[76]   Dkt. No. 67 at 29.

[77]   FAC ¶ 74(a)-(d).

KERR
&
WAGSTAFFE
LLP

Case No. 3:11-cv-03831-SC                    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

benefits."[78]  Plaintiff has stated a claim for violation of the UCL based on Defendants' unfair practices.  With regard to Mr. Chandler in particular, the Complaint alleges that he informed Defendants of his desire to purchase his family home for its appraised value.[79]  Defendants misinformed Mr. Chandler that he would need to pay the entire loan balance.[80]  Even after HUD rescinded ML 2008-38, Defendants ignored Mr. Chandler's communications, and proceeded with the trustee's sale.[81]  This conduct benefits no one because Defendants are protected by mortgage insurance.[82]  The only buyer at the sale was Fannie Mae, who now apparently spends resources maintaining the property, and has represented that it intends to forcibly remove Mr. Chandler, his wife, and their children from the home.[83]  This conduct is unfair, and actionable under California law.[84]

### 3. The Complaint States a UCL Action Based on Defendants' Fraudulent Practices.

Plaintiff has adequately stated a UCL based on Defendants' fraudulent practices.  In paragraph 33(b) of the Complaint, Plaintiff unambiguously and specifically alleges that Defendants affirmatively misrepresented to estates, heirs and personal representatives of HECM borrowers "that repayment of the *full mortgage balance* is the only way they can retain the

---

[78]    Saunders v. Sup. Ct., 27 Cal. App. 4th 832, 838-39 (1994).

[79]    FAC ¶¶ 6, 38, 44.  Defendants contend that Mr. Chandler's intention to have the property sold to him personally diminishes his right as personal representative of the Estate to sell the property for 95% of its appraised value, and apparently allows Defendants to misinform Mr. Chandler about his rights.  This cannot be fair.

[80]    Id. ¶¶ 6, 38, 39.

[81]    Id. ¶¶ 6, 40-44.

[82]    Id. ¶¶ 3, 5.

[83]    Id. ¶¶ 6, 34, 43.

[84]    Defendants also contend that their conduct cannot be deemed unfair because "they complied with the law."  They do not, however, explain *how* they complied with the law, because they cannot.  Docket No. 67 at 19.  The regulations provide no restriction on an estate's right to sell HECM property for 95% of its appraised value, and the only way to make this a non-illusory right is for Defendants to provide notice to borrowers or their estates and heirs.  24 C.F.R. §§ 206.123(b); 206.125(a)(2), 206.125(c).

KERR
&
WAGSTAFFE
LLP

home, even where the mortgage balance far exceeds the current value of the property." This conduct is borne out by further allegations and the exhibits to the Complaint.[85]  Indeed, the Notice of Sale informed the Chandler estate that the default was based on "THE FAILURE TO PAY THE ENTIRE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST THEREON WHICH BECAME IMMEDIATELY DUE AND PAYABLE WHEN BORROWER DIED…"[86]  It further stated that the estate may have the right to prevent the sale "by paying all of your past due payments plus permitted costs and expenses."[87]  The ability to pay off the mortgage by a sale for 95% of the appraised value was <u>not</u> mentioned.  Plaintiff, therefore, has adequately pled fraudulent conduct under the UCL.

## III.   CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss should be denied.  If the Court determines to dismiss the Complaint in whole or in part, Plaintiff respectfully requests leave to amend.

DATED: September 13, 2013

KERR & WAGSTAFFE LLP

MEHRI & SKALET, PLLC

AARP FOUNDATION LITIGATION

By   /s/
KELLY A. CORCORAN

Attorneys for Plaintiff and the Putative Class

---

[85]   Id. ¶¶ 38, 39, 41, Exhs. A, B.

[86]   Id. Ex. B at 2 (emphasis in original).

[87]   Id. Ex. B at 1.