MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
REBECCA S. SAELAO (State Bar No. 222731)
rss@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A., and FEDERAL
NATIONAL MORTGAGE ASSOCIATION a/k/a
FANNIE MAE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a California corporation, and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>Defendants. | Case No. CV11 3831 SC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  October 11, 2013<br>Time:           10:00 a.m.<br>Courtroom:  1 – 17th Floor<br>Judge:         Hon. Samuel Conti<br><br>Complaint Filed: August 3, 2011 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. As Plaintiff Concedes His Claim Is Grounded in a Statutory and Regulatory Regime that Provides No Right of Action, His Declaratory Relief Claim Fails. ...........................................................................................................................2

    B. The Deeds of Trust Do Not Incorporate HUD's Regulations, and Plaintiff's Declaratory Relief and Contract Claims Thus Fail. .....................................................3

    C. Plaintiff's Breach of Contract Claim Fails for Additional Independent Reasons. ........................................................................................................................6

        1. Defendants were not permitted—much less obligated—to "allow the Chandler estate to sell" the property to Chandler under the "FMV Rule." ................................................................................................................6

        2. Paragraph 9 of the Deeds of Trust is inapplicable here. .................................7

        3. Paragraph 9 never requires notice of the "FMV Rule." .................................9

        4. Paragraphs 9, 10 and 20 of the Deeds of Trust Do Not Avail Plaintiff ...........9

    D. Plaintiff Fails to Salvage His Section 17200 Claim. .................................................10

III. CONCLUSION ...................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aguiar v. Wells Fargo Bank, N.A.*,
   No. 12-03653 YGR, 2012 WL 5915124 (N.D. Cal. Nov. 26, 2012) ...................................... 11

*Aleem v. Bank of Am.*,
   No. 09-01812, 2010 WL 532330 (C.D. Cal. Feb. 9, 2010) ....................................................... 10

*American Int'l Specialty Lines Ins. Co. v. U.S.*,
   No. 09-01734, 2010 WL 2635768 (C.D. Cal. June 30, 2010) ..................................................... 4

*Brooks v. Gomez*,
   No. 10–01873 SBA, 2010 WL 5141862 (N.D. Cal. Dec. 13, 2010) ........................................ 3

*Chabner v. United of Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000) .................................................................................................. 10

*Christensen v. Provident Life & Accident Ins. Co.*,
   No. 07-04789, 2008 WL 410238 (N.D. Cal. Feb. 12, 2008) ..................................................... 10

*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
   169 F.Supp.2d 1119 (N.D. Cal. 2000) ...................................................................................... 12

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
   No. 04-2867, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) .................................................... 11

*Das v. WMC Mortg. Corp.*,
   831 F.Supp.2d 1147 (2011) ...................................................................................................... 12

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
   No. 07-2424 SC, 2007 WL 2572191 (N.D. Cal. Sept. 5, 2007) ............................................... 12

*Higginbottom v. U.S. Bancorp*,
   2011 WL 1558681 (N.D. Cal. Apr. 25, 2011) .......................................................................... 12

*J & J Sports Prods., Inc. v. Walia*,
   No. 10-5136 SC, 2011 WL 902245 (N.D. Cal. Mar. 14, 2011) ............................................... 12

*Labrador v. Seattle Mortg. Co.*,
   No. 08-2270 SC, 2008 WL 475239 (N.D. Cal. Oct. 29, 2008) ........................................ 10, 11

*Martinez v. Wells Fargo Bank, N.A.*,
   No. 06-03327 RMW, 2007 WL 963965 (N.D. Cal. Mar. 30, 2007) ..................................... 5, 6

*Mitchell v. Chase Home Fin. LLC*,
   No. 06-2099, 2008 WL 623395 (N.D. Tex. Mar. 4, 2008) ........................................................ 1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FAC

*Motten v. Chase Home Fin.*,
   No. 10–4994, 2011 WL 2566092 (S.D. Tex. June 28, 2011)...................................................5

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
   499 U.S. 117 (1991) ................................................................................................................3

*Ocean View Towers Ass'n Ltd. P'Ship. v. U.S.*,
   88 Fed. Cl. 169 (Fed. Ct. Cl. 2009) ........................................................................................4

*Shroyer v. New Cingular Wireless Servs.*,
   622 F.3d 1035 (9th Cir. 2010) ..............................................................................................13

*St. Christopher Assocs., L.P. v. U.S.*,
   511 F.3d 1376 (Fed. Cir. 2008) .........................................................................................4, 5

*Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*,
   922 F.Supp. 299 (C.D. Cal. 1996) ........................................................................................11

*Umland v. PLANCO Fin. Servs., Inc.*,
   542 F.3d 59 (3rd Cir. 2008) ...................................................................................................3

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
   660 F.Supp.2d 1163 (C.D. Cal. 2009) ..................................................................................12

**FEDERAL STATUTES**

United States Code
   Title 12
      § 1715z-20 ...................................................................................................2, 5, 11
   Title 42
      § 1460(c)(4) ............................................................................................................2

**STATE STATUTES**

California Civil Code
   § 1638 ..........................................................................................................................9
   § 1641 ..........................................................................................................................9

California Business and Professions Code
   § 17200 ................................................................................................................passim

**REGULATIONS**

Code of Federal Regulations
   Title 24
      § 206.201 ..............................................................................................................11

I.     **INTRODUCTION**

In opposing Defendants' motion to dismiss, Plaintiff makes clear that he seeks to "enforce . . . the federal Home Equity Conversion Mortgage ('HECM') program," including HUD's "administrative procedures for such sales and insurance claims by lenders." (Opp'n at 1.) Plaintiff seeks this relief despite the lack of a private right of action to "enforce" HUD's lender insurance program for HECMs. Plaintiff contends he may disregard the lack of a private right of action because—according to Plaintiff—the parties' contract incorporated, wholesale, the entire Code of Federal Regulations relating to HUD's HECM insurance program. More, Plaintiff argues this sweeping incorporation took place even absent an express incorporation of the HECM regulations in the contract. (*Id.* at 16.) As set forth below, neither the contract nor the cases upon which Plaintiff relies supports such a re-write of the parties' obligations or disregard of settled law.

Plaintiff also attempts to plead a claim under California Business and Professions Code section 17200, based on the same alleged "violations" of HUD's HECM insurance regulations. As set forth in Defendants' opening brief, however, HUD's regulations at issue plainly govern only a lender's eligibility as an FHA approved lender. Participating lenders cannot "violate" HUD's lender insurance regulations through their interactions with borrowers. Rather, a lender's conduct simply makes it eligible or ineligible for insurance benefits.

Indeed, "[a]s other courts have observed, the regulations promulgated under the National Housing Act *govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations*." *Mitchell v. Chase Home Fin. LLC*, No. 06-2099, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008) (collecting cases (emphasis added)).

In any event, Defendants continue to comply with "HECM law" and to follow HUD's ever-changing guidelines. Indeed, it is an undisputed, judicially noticeable fact, that Defendants' alleged "refusal" to permit Plaintiff to purchase the property for 95% of its value following his mother's death in 2010 complied with HUD's own view of its guidelines at that time. (*See* Defs.' Request for Judicial Notice, Dkt. No. 68-1 ("RJN"), Ex. E (ML 2008-38).) Unsurprisingly, nowhere does Plaintiff allege that HUD—the agency charged with implementing the National

Housing Act—has any complaint regarding Defendants' alleged conduct. There is thus is no "violation" of "HECM law" upon which Plaintiff may bring a section 17200 claim.

Nor do Defendants desire to "refuse" to allow borrowers or their heirs to sell, purchase, or retain their homes. (Opp'n at 1.) Defendants seek only for this Court to interpret and apply the plain terms of the parties' contract—which does not require the form of notice Plaintiff alleges was lacking here—and for the Court to interpret and apply the plain terms of the Act—which does not permit of a private right of action or support a section 17200 claim.

Each of Plaintiff's claims—for declaratory relief, breach of contract and violation of section 17200—should be dismissed with prejudice.

## II.   ARGUMENT

### A. As Plaintiff Concedes His Claim Is Grounded in a Statutory and Regulatory Regime that Provides No Right of Action, His Declaratory Relief Claim Fails.

Plaintiff concedes, as he must, that he seeks to "enforce . . . the federal [HECM] program." (Opp'n at 1.) Indeed, the First Amended Complaint ("FAC") seeks a declaration that Defendants' alleged conduct violates the National Housing Act and HUD regulations relating to lender's insurance for HECM mortgages. (FAC ¶¶ 65-66 (citing 12 U.S.C. § 1715z-20 and 24 C.F.R. § 206.1 *et seq.*).) Yet Plaintiff fails to address the numerous authorities cited by Defendants demonstrating that there is no private right of action to "enforce" the National Housing Act or related HUD regulations.[1] Despite Plaintiff's footnote claiming otherwise (Opp'n at 18 n. 62), his failure to contend with these authorities amounts to a non-opposition, and warrants dismissal of his

---

[1] (*See* Opening Br. at 14-16 (citing *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action . . . exists for violation of HUD mortgage servicing policies.") (citation omitted); *Shivers v. Landrieu*, 674 F.2d 906, 910-11 (D.C. Cir. 1981) (No "right to sue . . . private parties in a federal court to force compliance with HUD regulations."); *M.B. Guran Co., Inc. v. City of Akron*, 546 F.2d 201, 205 (6th Cir. 1976) (No right of action to enforce a HUD handbook.); *Wells Fargo Bank, N.A. v. Favino*, No. 10-571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) ("[T]here is no private right of action for breach of HUD regulations or FHA policy. There is also no private right of action [for] a mortgagee's noncompliance with the National Housing Act, 12 U.S.C. § 1701.") (citation omitted); *Spieth v. Bucks Cnty. Hous. Auth.*, 594 F.Supp.2d 584, 592 (E.D. Pa. 2009) ("[Plaintiff] *cannot bring a claim . . . based on a violation of HUD's regulations because they do not create a private right of action*.") (emphasis added); *cf. Rohnert Park v. Harris*, 601 F.2d 1040, 1046 (9th Cir. 1979) (no right of action under Housing Act, 42 U.S.C. § 1460(c)(4) and HUD regulations thereunder).)

1  declaratory relief claim. *See, e.g.*, *Brooks v. Gomez*, No. 10–01873 SBA, 2010 WL 5141862, at *2

2  (N.D. Cal. Dec. 13, 2010) ("In view of Plaintiff's failure to provide a meaningful opposition to

3  [Defendant's] motion to dismiss," granting the "motion in its entirety.") (citing *Ghazali v. Moran*,

4  46 F.3d 52, 53-54 (9th Cir. 1995)).

5  **B.  The Deeds of Trust Do Not Incorporate HUD's Regulations, and Plaintiff's Declaratory Relief and Contract Claims Thus Fail.**

6

7  Plaintiff seeks to evade the lack of a private right of action to enforce HUD's regulations by

8  arguing that the "HECM laws . . . are incorporated in to the contract." (Opp'n at 13, 18.) Plaintiff

9  does not, and cannot, point to any express incorporation of HUD's regulations in the contract.

10  Instead, Plaintiff contends that an express incorporation by reference is not required. For the pro-

11  position that the entire Code of Federal Regulations relating to HUD's HECM insurance program

12  is part of the parties' contract, Plaintiff proffers the maxims that "a contract 'depends on the laws in

13  existence when it is made'" and "[l]aws which subsist at the time and place of the making of a

14  contract, and where it is to be performed, enter into and form a part of it, as fully as if they had

15  been expressly referred to or incorporated in its terms." (Opp'n at 14 n. 46 (quoting *McCracken v.*

16  *Hayward*, 43 U.S. 608, 611 (1884), and *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499

17  U.S. 117, 130 (1991) ("*Norfolk*")).)

18  Plaintiff's argument fails. Faced with a similar argument, the Third Circuit has squarely

19  rejected the notion that a "broad canon of construction" can "trump the standard inquiry whether a

20  federal statute creates a private right of action." *See Umland v. PLANCO Fin. Servs.*, *Inc.*,

21  542 F.3d 59, 66 (3rd Cir. 2008) (citing *Norfolk*, 499 U.S. at 130). In *Umland*, as here, the plaintiff

22  argued that the "implied terms" of her contract incorporated federal statutory law and permitted her

23  to circumvent the lack of a private right of action under a federal statute. *Id.* The Third Circuit

24  disagreed, holding *Norfolk* does not provide a basis to "imply" a federal statute into a contract to

25  get around the statute's lack of a private right of action. *Id.*

26  Likewise here, neither *Norfolk* nor any other authority permits Plaintiff to "imply" HUD's

27  regulations into the Deeds of Trust. Plaintiff remains bound by both the contract—which does not

28  incorporate the statute—and the terms of HECM law—which provides no right of action.

1    Nor does Plaintiff's citation to a single Court of Federal Claims case support the sweeping
2 proposition that HUD regulations may be imported wholesale into every contract mentioning
3 HUD.  (Opp'n at 16 (citing *Ocean View Towers Ass'n Ltd. P'Ship. v. U.S.*, 88 Fed. Cl. 169, 176
4 (Fed. Ct. Cl. 2009)).)  First, in *Ocean View Towers*, the contract at issue was a Housing Assistance
5 Payment contract *between HUD and the plaintiff*.  88 Fed. Cl. at 170.  The case turned on whether
6 *HUD* was bound by *its own regulations* bearing on the disputed contract language.  *Id.*  Such a case
7 does not support binding Defendants—as opposed to HUD—to HUD's regulations.[2]

8    Moreover, the Court of Appeals for the Federal Circuit—to which appeals from the Court
9 of Federal Claims are taken—rejected an identical argument to that made in *Ocean View Towers*
10 and which Plaintiff champions here:  "that although the statutory and regulatory provisions are not
11 expressly incorporated by reference into the [contract], [the court] should incorporate the provi-
12 sions into the [contract] by implication."  *St. Christopher Assocs., L.P. v. U.S.*, 511 F.3d 1376,
13 1383 (Fed. Cir. 2008).  There, the Federal Circuit declined to import HUD regulations into a
14 contract by implication, and cited with approval a prior case "warning that wholesale incorporation
15 of regulations into a contract would allow the contracting party to 'choose among a multitude of
16 regulations as to which he could claim a contract breach—and thus [a] wholly new ground of
17 obligation would be summarily created by mere implication.'"  *Id.* at 1384 (citing *Smithson v.
18 United States*, 847 F.2d 791, 794 (Fed. Cir. 1988) (quotation marks omitted)).  So here.

19    Nor can Plaintiff salvage his incorporation by reference theory by claiming that "references
20 to the HUD Secretary, the HECM statute, and HECM regulations permeate the Deed of Trust."
21 (Opp'n at 14 (citing RJN Ex. A pp. 2-6, ¶¶ 3, 5, 7, 8, 9(f), 10, 13, 15).)

22    First, references to HUD could just as easily be said to "permeate" the contract at issue in
23 *St. Christopher Associates*.  There, as here, the plaintiff contended that "the contract [should be]

---

[2] Plaintiff's citation to *American Int'l Specialty Lines Ins. Co. v. U.S.*, No. 09-01734, 2010 WL 2635768, *5 (C.D. Cal. June 30, 2010), is equally unavailing.  That case does not hold that by allegedly "mirroring" a statute a contract thereby incorporates it, as Plaintiff contends.  (*See* Opp'n at 15 n.9.)  That case merely held that the contracts there at issue "incorporated the provisions of Armed Services Regulation . . . section 7-104.35, either by *reprinting* the language of that section, or by incorporating the terms by explicit reference."  *See Am. Int'l Specialty Lines Ins.*, 2010 WL 2635768, at *5 (emphasis added).  Plaintiff has not shown—and cannot show—that the Deeds of Trust reprinted, expressly incorporated—or for that matter "mirrored"—the HUD regulations here.

1 construed in light of the statutory program that it implements and the purpose of that program."
2 *Compare St. Christopher Assocs.*, 11 F.3d at 1383, *with* Opp'n at 1, 17 (seeking to enforce the
3 statutory "[HECM] program" and advocating that the HECM be construed "in the context of the
4 HECM documents and duly promulgated law."). The Federal Circuit, however, declined just such
5 an invitation to re-write the parties' contract to include HUD's regulations in view of a "statutory
6 program." *St. Christopher Assocs.*, 11 F.3d at 1383-84.

7     Moreover, Plaintiff fails to even attempt to distinguish the authorities demonstrating that
8 Paragraph 9 of the Deed of Trust does not incorporate HUD's regulations. *See Motten v. Chase*
9 *Home Fin.*, No. 10–4994, 2011 WL 2566092, at *10 (S.D. Tex. June 28, 2011) (rejecting the
10 plaintiffs' "conclusor[y] assert[ion] that paragraph 9(d) of the Deed of Trust incorporates the rules
11 and regulations of the Secretary of HUD . . . ."); *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-
12 03327 RMW, 2007 WL 963965, at*9 (N.D. Cal. Mar. 30, 2007) (reference to RESPA in Deed of
13 Trust did not incorporate HUD's regulations implementing RESPA into the contract).

14     None of the contract provisions cited by Plaintiff expressly or impliedly incorporates
15 HUD's regulations into the contract. (*See* Opp'n at 16 n. 52.) Instead, the provisions Plaintiff cites
16 largely relate to HUD *insurance* for HECM loans. (*See* RJN Ex. A pp. 2-6 at ¶ 3 ("*insurance* shall
17 be maintained in the amounts . . . required by the Secretary of [HUD]"); ¶ 5 (referring to amounts
18 "due to the Secretary for the *Mortgage Insurance Premium*"); ¶ 9(f) (relating to instances of
19 ineligibility for HUD insurance); ¶ 10 ("Borrower shall not be liable for any difference between the
20 *mortgage insurance benefits* paid to Lender and the outstanding indebtedness"); ¶ 13 (relating to
21 security for Secretary's payment of insurance benefits, and stating that "Secretary has no duty to
22 Lender to enforce the covenants of the Second Security Instrument") (all emphasis added).)

23     In fact, the provision the Plaintiff relies on as "expressly refer[ring] to the HECM statute"
24 (Opp'n at 16) relates entirely to HUD's security for any payment of *insurance benefits*. (RJN
25 Ex. A ¶ 13.) The stated purpose of the cited statute is, moreover, "to authorize the Secretary to
26 carry out a program of mortgage insurance." 12 U.S.C. § 1715z-20. As in *Martinez*, this passing

27
28

reference does not incorporate the statute or HUD's regulations.[3] *See* 2007 WL 963965, at*9.

Defendants submit that the Court should reject Plaintiff's invitation to find ambiguity and purported "illegality" in the contract where there is none. (Opp'n at 13-14 (arguing "the contract is not ambiguous," but "even if it is" the "proper reading" must be "consistent with the totality of HUD regulations and guidance.").) As Plaintiff apparently concedes, neither party contends that the contract is ambiguous. (*Id.*) Nor can Plaintiff demonstrate that the contract would be "illegal" to the extent it does not incorporate HUD's lender insurance regulations. Plaintiff fails to demonstrate how a lender's theoretical eligibility (or ineligibility) for insurance somehow translates into "illegal" conduct.

Plaintiff cannot state a contractual claim for violation of HUD's regulations, which were not incorporated into the parties' contract. His breach of contract claim thus fails.

## C. Plaintiff's Breach of Contract Claim Fails for Additional Independent Reasons.

### 1. Defendants were not permitted—much less obligated—to "allow the Chandler estate to sell" the property to Chandler under the "FMV Rule."

Even if HUD's regulations were somehow imported into the contract, Plaintiff fails to overcome Defendants' showing that they have complied with those regulations and with HUD's guidance thereunder.

As set forth in Defendants' Opening Brief, at the time the Chandler HECM became due, HUD *prohibited* FHA-approved lenders from permitting heirs to purchase the property at 95% of appraised value. (*See* Opening Br. § III.C. (discussing ML 2008-38 (barring lenders from permitting heirs to purchase at 95% of appraised value when loan is due and payable) and ML 2011-16 (rescinding ML 2008-38)).) Thus, not only did HUD's guidance not *obligate* Defendants to permit heirs to purchase the property—HUD did not *permit* such purchases.

Plaintiff nevertheless contends that—despite requiring that all sales of HECM-secured

---

[3] The remaining provisions Plaintiff cites likewise do not incorporate HUD's regulations. (RJN Ex. A ¶ 7 (referring to "Second Security Instrument held by the Secretary on the Property"); ¶ 8 (stating "the Lender may collect fees and charges authorized by the Secretary"); ¶ 15 (stating "Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary").)

1 transactions be "arm's length transactions," thus barring sales to a deceased borrower's family
2 members—"ML 2008-38 made clear that the estate could avail itself of the FMV Rule." (Opp'n at
3 7.) Even if Plaintiff's formulation were accurate, however, Plaintiff does not allege that Defen-
4 dants refused to let the estate sell the Property in an arm's length transaction. Plaintiff instead
5 alleges that Defendants refused to let the estate sell the Property to Chandler, the deceased
6 borrower's son and representative of the estate. (FAC ¶ 6.)

7 In the face of Defendants' clear compliance with ML 2008-38 here, Plaintiff next baldly
8 asserts that "HUD explicitly revoked" ML 2008-38 "because it directly contradicted HUD's duly
9 promulgated regulations." (Opp'n at 7.) Plaintiff apparently would have this Court "imply" into
10 the parties' contract HUD's insurance regulations, and then hold Defendants to account for alleged
11 failure to comply with those regulations not as HUD promulgated or interpreted them, but as
12 Plaintiff wishes them to be understood.

13 Nor is ML 2008-38 irrelevant based on the theory that HUD rescinded the letter prior to the
14 foreclosure sale in April 2011. (Opp'n at 8.) Plaintiff challenges Defendants' procedures "*when a*
15 *loan becomes due and payable*," alleging that when the loan becomes due "the borrower or the bor-
16 rower's estate . . . have the right to receive a 30-day notice" of cure options. (FAC ¶ 2 (emphasis
17 added).) Irrefutably, ML 2008-38 was in effect when the loan became due and payable in January
18 2010, and was still in effect in January 2011 when Defendants issued the Notice of Default. (*See*
19 RJN Ex. E (ML 2008-38, dated December 5, 2008); Ex. F (ML 2011-16, dated April 5, 2011,
20 rescinding ML 2008-38); FAC ¶¶ 46, 48 (stating Borrower died in January 2010 and Defendants
21 issued a Notice of Default in January 2011).)

22 Plaintiff thus fails to state a claim that Defendants breached HECM law—even if it were
23 imported into the contract—as Defendants complied with HUD's interpretation of its regulations.

24       **2.     Paragraph 9 of the Deeds of Trust is inapplicable here.**

25 Moreover, as Defendants' opening brief demonstrated, Paragraph 9 of the Deeds of Trust—
26 the provision Plaintiff contends Defendants breached—does not apply where, as here, the event
27 causing the loan to become due and payable is the borrower's death. (Opening Br. § V.B.1.) In
28 response, Plaintiff argues that Defendants' position means that borrowers' estates will never

**1** receive notice of default and the estate will then "operate in an information black hole with no
**2** knowledge of what it can do to retain the property and avoid foreclosure." (Opp'n at 9.) Plaintiff
**3** misstates Defendants' position. Defendants do not contend that borrowers' estates are not entitled
**4** to notice of default. Indeed, as Plaintiff concedes, after the borrower's death, *Defendants issued*
**5** *and Plaintiff received a Notice of Default here*. (FAC ¶ 48; Opp'n at 12.)

**6** Defendants' position is rather that Paragraph 9 of the Deed of Trust—the sole contractual
**7** provision which Plaintiff contends Defendants violated (FAC ¶ 74)—is inapplicable here.

**8** Plaintiff's arguments relating to notice are also immaterial. Plaintiff contends Defendants
**9** breached the contract not by failing to provide notice of default (which Plaintiff concedes he
**10** received) but by allegedly *failing to comply with Paragraph 9*.

**11** Plaintiff also attempts an end-run around the fact that the borrower's death is an event
**12** specifically *omitted* from triggering the notice provisions in Paragraph 9 of the Deeds of Trust.
**13** (Opening Br. § V.B.1.; RJN Exs. A-B ¶¶ 9).) The borrower's death is covered by ¶ 9(a)(i). (*Id.*)
**14** By Paragraph 9's terms, the Lender is not obligated to notify the Borrower when a loan becomes
**15** due and payable under ¶ 9(a)(i). (*Id.* Ex. B ¶ 9 ("Lender shall notify the Borrower whenever the
**16** loan becomes due and payable under *Paragraph 9(a)(ii)-(v)*.") (emphasis added); *id.* Ex. A ¶ 9
**17** ("Lender shall notify the Secretary and the Borrower whenever the loan becomes due and payable
**18** under *Paragraph 9(a)(ii) or (b)*.") (emphasis added).)

**19** Plaintiff creatively argues that "[e]ven if Defendants' strained reading of the Mortgage were
**20** justified, Plaintiff and the class were independently entitled to Notice under ¶ 9(a)(ii) of the Mort-
**21** gage, because once a HECM borrower dies, 'all of [the] title in the Property is sold or otherwise
**22** transferred' to the estate by operation of law." (Opp'n at 11.) In support, Plaintiff argues that
**23** "HUD . . . interprets the word sale to include any post-death conveyance of the mortgage
**24** property . . . ." (Opp'n at 11 (quotation marks and emphasis omitted).)

**25** Plaintiff thus invites the Court to ignore that the contract explicitly omitted the death of a
**26** borrower as an event triggering the provisions of 9(d), and—finding ambiguity where there is
**27** none—import into the contract HUD's alleged interpretations of what constitutes a "a sale trans-
**28** action." (*See id.*) Plaintiff's strained reading of the contract runs contrary to its unambiguous

terms and violates applicable principles of contract construction. *See* Cal. Civ. Code §§ 1638 ("The language of a contract is to govern its interpretation, if the language is clear, explicit, and does not involve an absurdity."); 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Plaintiff cannot state a claim for breach of an inapplicable contractual provision. Plaintiff's breach of contract claim thus fails.

### 3. Paragraph 9 never requires notice of the "FMV Rule."

Plaintiff also fails to overcome that Paragraph 9 of the Deeds of Trust *never* requires the lender to give the borrower or the borrower's estate notice of the "FMV Rule" prior to initiating foreclosure. (*See* Opening Br. at § V.B.2.) Rather, Paragraph 9 only requires that the lender notify the borrower that the loan is due and payable, and then wait 30 days—during which the borrower can exercise various options—before initiating foreclosure. (*See* RJN Exs. A-B ¶¶ 9.)

Plaintiff concedes that "Defendants . . . did, in fact, send such a notice." (Opp'n at 12.) Plaintiff also concedes that the notice provided "approximately 90 days to cure the default before foreclosure." (*Id.*) Because Paragraph 9 of the Deeds of Trust never requires more than a notice of default followed by a waiting period of 30 days before proceeding with foreclosure—occurrences Plaintiff concedes were met here—Plaintiff fails to state a claim.

### 4. Paragraphs 9, 10 and 20 of the Deeds of Trust Do Not Avail Plaintiff

Finally, in taking issue with the proposition that "an estate must pay the full mortgage balance to satisfy the HECM and keep the property," Plaintiff contends that "[t]he only authority [Defendants] cite in support is *the HECM contract language that a lender 'may require immediate payment in full' after a borrower dies*." (Opp'n at 7 (emphasis added).) Apparently, Plaintiff takes issue with Defendants' reliance on the contract's plain language. Yet Plaintiff offers no supposed ambiguity or purported alternate reading of the cited language. A plain reading of Paragraph 9 makes clear that, indeed, a "Lender may require *immediate payment in full of all sums secured by this Security Instrument if:* (i) *A borrower dies* and the Property is not the principal place of residence of at least one surviving Borrower . . . ." (RJN Exs. A-B at ¶¶ 9 (emphasis added).)

Plaintiff nevertheless contends that giving the HECM contract its plain reading, as

1 Defendants advocate, "would eviscerate an essential protection that the reverse mortgage program
2 provides: the borrower is never liable for any deficiency on the loan." (Opp'n at 5 (citing Deed of
3 Trust ¶ 10 ("No Deficiency Judgments.")).) Not so. Paragraph 10 of the Deed of Trust simply
4 provides that "Lender shall not be permitted to obtain a deficiency judgment against Borrower if
5 the Security Instrument is foreclosed." Plaintiff has not alleged, nor could he, that Defendants
6 sought any deficiency judgment after selling the Property at a foreclosure sale. Paragraph 10, by
7 its terms, thus does not apply here.

8       Nor does Paragraph 20 of the Deed of Trust support any of Plaintiff's arguments. That
9 paragraph, as Plaintiff concedes, states that "[i]f Lender requires immediate payment in full under
10 Paragraph 9, Lender may invoke the power of sale . . . ." (RJN Ex. A ¶ 20; Opp'n at 5.) That is
11 precisely what Plaintiff alleges Defendants to have done: provided notice that payment in full was
12 due, prior to foreclosing. (FAC ¶ 6.) None of Plaintiff's theories finds support in the contract, and
13 his breach of contract claim thus fails.

14 **D.  Plaintiff Fails to Salvage His Section 17200 Claim.**

15       As set forth in Defendants' Opening Brief, Plaintiff cannot state a claim under California
16 Business and Professions Code section 17200 for "violations" of HUD's regulations governing
17 FHA-approved lenders' insurance eligibility. Plaintiff fails to overcome Defendants' showing.

18       First, Plaintiff cites inapposite authority for the proposition that a section 17200 claim may
19 be premised on alleged "violation" of a federal statute which itself provides no private right of
20 action. (Opp'n at 19 (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th
21 Cir. 2000).) As a court in this District has recognized, "the [*Chabner*] decision was particular to
22 [California Insurance Code] § 10144" and is "not controlling" in other contexts. *See Christensen v.*
23 *Provident Life & Accident Ins. Co.*, No. 07-04789, 2008 WL 410238, at *2-3 (N.D. Cal. Feb. 12,
24 2008). Contrary to Plaintiff's arguments, section 17200 claims should be dismissed where premi-
25 sed on federal statutes which themselves lack a private right of action.[4] *See, e.g.*, *Aleem v. Bank of*

26 ---
27 [4] Plaintiff's citation to this Court's decision in *Labrador v. Seattle Mortg. Co.*, No. 08-2270 SC, 2008 WL 475239 (N.D. Cal. Oct. 29, 2008) is also inapposite. (Opp'n at 19.) There, the lack of a separate federal private right of action was not at issue, as the defendant argued the plaintiff's
28 (footnote continued)

*Am.*, No. 09-01812, 2010 WL 532330, *3 (C.D. Cal. Feb. 9, 2010) ("*The UCL cannot create a private right of action where none exists under the federal statute.*") (citing *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc*., 922 F.Supp. 299, 316 (C.D. Cal. 1996)) (emphasis added); *Contractual Obligation Prods., LLC v. AMC Networks, Inc*., No. 04-2867, 2006 WL 6217754, at *11 (S.D.N.Y. Mar. 31, 2006) ("[T]o the extent that plaintiff's [sections] 17200 et seq. claim is premised on a violation of GATT, it also fails to state a claim because there is no private right of action under GATT.") (citations omitted).

  In any event, Plaintiff's section 17200 claim fails on independent grounds. As Plaintiff concedes, "unlawful" acts under section 17200 include only those business practices that are "forbidden by law." (Opp'n at 19 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)).) Plaintiff fails to overcome Defendants' showing that the statutes and regulations at issue do not "*forbid*" Defendants' alleged conduct. (Opening Br. § III.C (detailing HUD's regulation of HECM insurance).) Rather the "HECM laws" Plaintiff invokes simply set *eligibility* for FHA insurance and FHA-approved lender status. Indeed, as another court in this District recognized, "the plain language of the NHA shows it does not impose the duties allegedly breached vis-a-vis a mortagee and mortgagor, rather it govern[s] relations between the mortgagee and the government." *Aguiar v. Wells Fargo Bank, N.A*., No. 12-03653 YGR, 2012 WL 5915124, *3 (N.D. Cal. Nov. 26, 2012) (citations and quotation marks omitted).

  As 24 C.F.R. § 206.201 makes clear, HUD's remedy where a lender fails to follow HUD's servicing guidelines is "withdrawal of HUD mortgagee approval." At best Plaintiff has thus alleged that Defendants failed to meet HUD's standards for approved lender status, not that Defendants "violated" any law.[5] *See Summit Tech.*, 922 F.Supp. at 316 (dismissing section 17200 claims because "none of the theories of 'unfair competition' asserted by Plaintiff are 'forbidden by

---

claims failed on other grounds. *See Labrador*, 2008 WL 475239, at *2 ("Defendant moves to dismiss the entire Complaint based on the argument that there was no 'financial interest' between Defendant and the mortgage broker Home Center, and, accordingly, that there was no violation of 24 C.F.R. § 206.31(a)(1).").

[5] Defendants submit that a lender's FHA-approved status is a matter firmly committed to HUD's discretion and not subject to challenge by Plaintiff here. (*See* Opening Br. § III.C (detailing regulatory regime under 12 U.S.C. § 1715z-20).)

1   law.'"); *cf. United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1194

2   (C.D. Cal. 2009) (holding that the California Insurance Code there at issue did not forbid the

3   alleged conduct but merely "establish[ed] a default 'right' held by a contracting party—a right the

4   party may waive, contract away, elect not to invoke, or otherwise impair" and the defendants could

5   thus not have "'violate[d]' [the California Insurance Code] so as to give rise to a § 17200 unlawful

6   business act or practice.").

7         Second, Defendants showed that HUD not only did not prohibit their alleged conduct, but at

8   the time the Chandler HECM became due and payable, actually *required* lenders to only accept

9   either full payment or sale of the property in an *arms' length transaction* to preserve insurance eli-

10  gibility for HECM loans. (Opening Br. § III.C) A claim under section 17200 fails where, based on

11  the allegations of the complaint, the defendant complied with the underlying law. *Higginbottom v.*

12  *U.S. Bancorp*, 2011 WL 1558681, at *7 (N.D. Cal. Apr. 25, 2011).

13        Nor may Plaintiff salvage his claim by arguing that though HUD regulations permitted the

14  alleged conduct, it was somehow nevertheless "unfair." "[A] business practice cannot be unfair

15  under the UCL if that practice is permitted by law." *Churchill Village, L.L.C. v. Gen. Elec. Co.*,

16  169 F.Supp.2d 1119, 1130 (N.D. Cal. 2000).

17        As Defendants demonstrated, Plaintiff's section 17200 claim is merely a re-hash of his

18  other failed claims. Courts routinely dismiss section 17200 claims where other claims based on the

19  same alleged conduct fail, leaving "no predicate claim on which a UCL violation can stand." *See,*

20  *e.g.*, *Das v. WMC Mortg. Corp.*, 831 F.Supp.2d 1147, 1161 (2011) ("Plaintiffs cannot state a claim

21  for a UCL violation based on violations of TILA and RESPA for the same reasons that Plaintiffs'

22  underlying TILA and RESPA claims are invalid."); *J & J Sports Prods., Inc. v. Walia*, No. 10-5136

23  SC, 2011 WL 902245, at *6 (N.D. Cal. Mar. 14, 2011) (dismissing section 17200 claim premised

24  on the same conduct as that underlying other dismissed claims); *First Advantage Background*

25  *Servs. Corp. v. Private Eyes, Inc.*, No. C-07-2424 SC, 2007 WL 2572191, at *5 (N.D. Cal. Sept. 5,

26  2007) ("'[A]n action under the UCL is not an all-purpose substitute for a tort or contract action.'")

27  (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003)).

28        Finally, Plaintiff fails to plead his section 17200 claim with anywhere near the particularity

required to state a claim under the "fraudulent" and "unfair" prongs of the statute.  (Opening Br. § V.C.)  Plaintiff instead merely recites alleged violations of HECM law (which fail, as set forth above), adding no specificity as to allegedly "unfair" or "fraudulent" conduct.  In opposition, Plaintiff merely asserts that the alleged conduct in demanding full payment of the HECM mortgage was "unfair" because purportedly the "harm to the victim outweighs the alleged benefits," and was "fraudulent" because the demand for payment was allegedly a "misrepresentation."  (Opp'n at 20, 22.)  These conclusory allegations are insufficient.  *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("[C]onclusory allegations about fraud [and] unfair treatment" do not "state[] a plausible claim.") (citations omitted).

Plaintiff thus fails to state a claim under the "unlawful," "unfair," or "fraudulent" prongs of section 17200, and the claim should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Defendants Wells Fargo and Fannie Mae respectfully request that the Court dismiss the FAC in its entirety, without leave to amend.  Specifically, Defendants request that the Court (1) dismiss Plaintiff's claim for breach of contract as based on an incorrect reading of the HECM contract; (2) dismiss Plaintiff's claim for declaratory relief that Defendants violated the contract or "HECM law," as (a) there is no private right of action to enforce the statute or regulations at issue; (b) Defendants have in any event complied with the statute and regulations at issue; and (c) Defendants have not breached the HECM contract; and (3) dismiss Plaintiff's § 17200 claim as a mere re-hash of Plaintiff's other failed claims.

DATED:  September 27, 2013            Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation

By:   /s/ *Rebecca S. Saelao*
       Rebecca S. Saelao

Attorneys for Defendants WELLS FARGO BANK, N.A., and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE