UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 13-00463 JGB (SPx)** | Date | December 18, 2013 |
| Title | *Clarisa A. Welte v. Wells Fargo Bank, N.A.; Federal Nat'l Mortgage Ass'n* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):    Attorney(s) Present for Defendant(s):

None Present    None Present

**Proceedings:** Order (1) DENYING IN PART and GRANTING IN PART Defendants' Motion to Dismiss (Doc. No. 19) (IN CHAMBERS)

Before the Court is a Motion to Dismiss filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage Association ("FNMA" or "Fannie Mae") (collectively, "Defendants"). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After reviewing and considering all papers filed in support of and in opposition to the Motion, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss.

## I. BACKGROUND

### A. Procedural Background

On March 12, 2013, Plaintiff Clarisa A. Welte ("Clarisa" or "Plaintiff") filed a Complaint against Defendants. (Doc. No. 1.) Plaintiff also applied for a Temporary Restraining Order/Preliminary Injunction ("TRO"), which the Court denied without prejudice on March 14, 2013, for failure to properly serve. (Doc. No. 3.) On April 18, 2013, Defendants filed a motion to dismiss the Complaint (Doc. No. 8.), which the Court granted in part and denied in part on May 29, 2013. ("Order," Doc. No. 16.) Pursuant to the Order, Plaintiff filed a First Amended Complaint on June 24, 2013 asserting eight claims for: (1) declaratory relief against Defendants, (2) reformation of contract pursuant to C.C.P. §3399 against Defendants, (3) negligence against Wells Fargo, (4) negligent misrepresentation against Wells Fargo, (5) constructive fraud against Wells Fargo, (6) financial elder abuse in violation of Welf. & Inst. Code §15610.30 against Wells Fargo, (7) unlawful and unfair business practices in violation of Bus. & Prof. Code

§§17200 *et seq.* against Defendants, and (8) declaratory relief against HUD. ("FAC," Doc. No. 17.)

Defendants filed a motion to dismiss the First Amended Complaint on July 8, 2013. ("Motion," Doc. No. 19.) Plaintiff opposed on August 19, 2013. ("Opp'n," Doc. No. 20.) Defendants replied on August 26, 2013. ("Reply," Doc. No. 21.)

**B.     Factual Background**

Plaintiff Clarisa A. Welte is a 77-year-old widow. (FAC ¶ 18.) In 1959, Clarisa married Kenneth Welte. (FAC ¶ 7.) They lived together as a married couple in California for over 51 years. (Id.) Since 1997, Clarisa and Kenneth lived in their residence at 31005 Bunker Drive, Temecula, California 92591. (FAC ¶ 8.) On July 18, 2011, Kenneth Welte passed away. (FAC ¶ 7.)

The Weltes recorded a Grant Deed to their residence on December 13, 1997, which reflects that title to the residence was held by both Clarisa and Kenneth in joint tenancy. (FAC ¶ 8, Ex. A.) Clarisa and Kenneth were beset with financial difficulties in the ensuing years, leading them to respond to a newspaper advertisement in early 2005 and to contact Cheryl Hagar, a "Reverse Mortgage Consultant" for the Wells Fargo branch located in Moreno Valley, California. (FAC ¶ 9.)

Hagar went to the Weltes' residence to discuss the opportunity to obtain a reverse mortgage from Wells Fargo. (FAC ¶ 10.) What Ms. Hagar described was "exactly what Kenneth and Clarisa were looking for" (FAC ¶ 9); she explained to them that "with a reverse mortgage they would have no mortgage payments and they would be able to live in their home for so long as one of them was alive." (FAC ¶ 10.)

On April 29, 2005, Kenneth Welte submitted a Residential Loan Application for Reverse Mortgages ("Application") to Wells Fargo. (FAC ¶¶ 13, 16.) The Application stated, "'This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as 'Borrower' or 'Co-Borrower', as applicable. ***Co-Borrower information must be provided when a person other than the 'Borrower' (including the Borrower's spouse) is a co-owner of the real property that will be used as a basis for loan qualification*** or the Borrower's spouse is not a co-owner of the real property that shall be used as a basis for loan qualification, but the Borrower resides in a community property state or the security property is located in a community property state.'" (FAC ¶ 14, Exh. B.) (emphasis in FAC but not in quoted Application). Clarisa alleges that even though she was co-owner on the property title at that time and the Weltes were located in California, a community property state, when the Application was taken "Face to Face" with Cynthia Savala (another Wells Fargo loan representative), Clarisa's information was not provided as required. (FAC ¶¶ 13-15, Exh. B.)

On March 15, 2005, as is required by law, Clarisa and Kenneth spoke via telephone with Carole Sparrow, a counselor with the Department of Housing and Urban Development ("HUD"). (FAC ¶ 11.) After this counseling call, Kenneth spoke again with Hagar, who persuaded him that Clarisa should transfer title of the residence to Kenneth via quitclaim deed, which she did on

May 6, 2005. (FAC ¶¶ 19, 20, Exh. C.) Plaintiff does not recall "any discussion" during the telephone call with Sparrow concerning the consequences of transferring title to Kenneth as to make him the sole borrower on the reverse mortgage. (FAC ¶ 11.)

On May 6, 2005, as Clarisa signed the quitclaim deed, Kenneth signed a "Home Equity Conversion Loan Agreement" and an "Adjustable Rate Note (Home Equity Conversion)" (collectively, the "Note"), secured with a Deed of Trust ("DOT") on the property, with Wells Fargo as the beneficiary. (FAC ¶ 19, Exh. C-F) Moreover, Kenneth signed an "Adjustable Rate Second Note (Home Equity Conversion)" (the "Second Note") secured with a second Deed of Trust (the "Second DOT") on the property, for the benefit of the Secretary of HUD. (Id., Exh. G, H.) On or about May 13, 2005, escrow closed on the reverse mortgage transaction. (FAC ¶ 21.) On May 24, 2005, Kenneth signed a Grant Deed (recorded on June 3, 2005) transferring title of the property back to himself and Clarisa as joint tenants. (FAC ¶ 23, Exh. I.)

On February 11, 2013, a Notice of Default was recorded on the property stating that the entire Note was due and payable as of July 18, 2011, the date of Kenneth's death. (FAC ¶ 29.)

Clarisa alleges that at the time the reverse mortgage agreement ("the Agreement") was signed, she and Kenneth intended to reside on the property for the rest of their lives without having to make mortgage payments or repay the loan. (FAC ¶ 22.) Clarisa further alleges that, as she was 69 years old at the time of the Agreement, Defendant Wells Fargo knew that she and Kenneth were both eligible for the reverse mortgage and that, by taking Clarisa off the property title, Wells Fargo "exlude[d] her as the co-borrower [in] direct contravention of the intent of the federal HECM [Home Equity Conversion Mortgage] loan process designed to protect elderly married couples from displacement from their home during their lifetimes." (FAC ¶ 18.) Clarisa alleges that her exclusion as co-borrower was not her or Kenneth's intent and resulted from a "lack of being informed and/or having been misinformed" by Defendants. (FAC ¶ 25.) As proof of her and her husband's intent to reside in the residence for the rest of their lives without mortgage payments, Clarisa alleges that she and her husband Kenneth were on the title immediately before and immediately after the reverse loan transaction. (FAC ¶ 24.)

## II. LEGAL STANDARD[1]

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S.

---

[1] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

544, 555 (2007). Additionally, Rule 10(b) requires that the allegations of a claim "shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

When evaluating a motion to dismiss, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." (Id.)

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

**B.   Rule 9(b)**

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under Rule 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee, 236 F.3d 1014, 1018-19). "Averments of fraud must be accompanied by 'the who, what, when,

where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Rule 9(b) applies to the claims that are based on alleged fraudulent conduct, even if they don't allege fraud specifically. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)); Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010).

### III. DISCUSSION

**A.    Declaratory Relief**

Defendants argue that Plaintiff has failed to plead a justiciable controversy and therefore her declaratory relief claim fails. (Motion at 10.) Defendants base this assertion on two grounds.[2] First Defendants argue that Plaintiff's declaratory relief claim is based on the fraud claim against Wells Fargo, and since that claim fails, Plaintiff has "no legal basis requiring a judicial determination of the parties' rights relating to the subject loan." (Id.) Second, because Plaintiff's interests in the residence are set forth in the written instruments concerning the residence, a judicial determination is not required. (Motion at 10, 11.) The Court disagrees.

"[D]eclaratory relief is appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa., 873 F.2d 229, 231 (9th Cir. 1989) (quoting Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (9th Cir.1984)). In Kerrigan v. Bank of Am., 2011 WL 3565121, at *8 (C.D. Cal. Aug. 12, 2011), the court denied the defendant's summary judgment motion for declaratory relief, stating "Plaintiff states a valid claim for reformation…[b]ecause triable issues of fact remain with respect to the reformation claim and Plaintiff's request for declaratory relief concerns related issues, the court declines to exercise its discretion and denies Defendant's motion [for summary judgment] as to this issue." Similarly, Plaintiff has pleaded sufficient facts for reformation of the contract with respect to Plaintiff's legal relationship to the parties, and the contract. Therefore, the Court finds that Plaintiff has alleged sufficient facts to assert her claim for declaratory relief.

Defendants' motion to dismiss Plaintiff's declaratory relief claim is DENIED.

**B.    Reformation of Contract and Negligence Claims**

Defendants' arguments as to why the reformation of contract and negligence claims should be dismissed have no basis. The Court has already determined that Plaintiff has sufficiently pleaded her reformation of contract and negligence claims. (Order at 6, 7.) Accordingly, the Court will not address the arguments presented by Defendants as to these two claims.

---

[2] The Court notes that any argument by Defendants challenging Plaintiff's standing fails and has already been rejected in the Order. (Order at 5.)

### C. Negligent Misrepresentation

First, Plaintiff states in her Opposition that her negligent misrepresentation claim is "mislabeled" and is more properly analyzed as a claim for "deceit (fraud) by concealment or non-disclosure." (Opp'n at 12.) Plaintiff argues that this cause of action should not be dismissed merely because it was mislabeled. (Id.) "It is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Bowers v. Hardwick, 106 S. Ct. 2841, 2849 (1986); see also, Sessions v. Chrysler Corp., 517 F.2d 759, 760-61 (9th Cir. 1975) ("The fact that appellant mislabeled his cause of action against the individual defendants is irrelevant, so long as he was entitled to relief against them on any theory.") The Court agrees with Plaintiff.

Defendants argue that Plaintiff brings a "completely new claim" through her Opposition, which is "improper." (Reply at 2.) Defendants cite to Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 (9th Cir. 1998), in addition to several other sources for the proposition that new allegations **or claims** are precluded from being considered outside the complaint. (Reply at 2.) Schneider does not support Defendants' position. The court in Schneider, stated "[t]he 'new' *allegations* contained in the inmates' opposition motion…are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider at 1197 (emphasis added); see Harrell v. United States, 13 F.3d 232, 236 (7th Cir.1993); see also, 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not ... take into account *additional facts* asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (emphasis added). Thus, a court may not consider additional facts or allegations contained in a plaintiff's moving papers, but may properly deny a defendant's motion to dismiss if plaintiff has sufficiently pleaded in her complaint allegations allowing relief under any legal theory.

The Court DENIES the Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim. Plaintiff is instructed to change the title of her claim to reflect the actual claim alleged.

### D. Constructive Fraud

Defendants argue that Plaintiff's constructive fraud claim has not been pleaded with sufficient particularity as required under Rule 9(b). (Motion at 7, 8.) A claim for constructive fraud consists of: "(1) any breach of duty which, without an actual fraudulent intent, (2) gains an advantage to the person in fault…by misleading another to his prejudice." Cal. Civ. Code § 1573. As stated in the Order, Plaintiff has already alleged sufficient facts to support that Defendants owed her a legal duty of care. (Order at 7.) Moreover, in the Order, the Court found Plaintiff had pleaded facts to sufficiently allege breach of that duty by Defendants. (Order at 7.)

Furthermore, the Court finds Plaintiff has pleaded with the heightened particularity required of Rule 9(b) that Defendants "gain[ed] an advantage" by their breach of duty. Cal. Civ. Code § 1573. Plaintiff alleges Wells Fargo failed to disclose material facts. (FAC ¶ 65.)

Plaintiff alleges that Wells Fargo should have properly disclosed to "Clarisa and Kenneth…that Clarisa should have remained on title and as co-borrower to avoid any unintended expulsion of Clarisa from the residence and an unjust foreclosure and sale of the property should Kenneth predecease Clarisa." (Id.) Because Wells Fargo failed to disclose material facts, it "gained an unfair advantage through the confidential relationship inasmuch as it obtained deeds of trust on a reverse mortgage loan against the life of one rather than two persons." (FAC ¶ 66.) Notably, it was Plaintiff's husband, Kenneth, who was the older of the two, male, and therefore more likely to predecease Plaintiff. (FAC ¶ 18.) The Court agrees with Plaintiff.

"Regarding concealment claims, the plaintiff may establish this element by showing that had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 864 (2007) (quoting Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (1993)). Plaintiff alleges it was her intention to reside in the residence for the rest of her life. (FAC ¶ 9.) Had Wells Fargo fully disclosed the consequences of removing Plaintiff from the loan, she would have behaved differently, and added herself to the loan. (FAC ¶ 60.)

Therefore, the Court finds that Plaintiff has pleaded constructive fraud with the particularity required under Rule 9(b). Accordingly, Defendants' motion to dismiss Plaintiff's fifth cause of action is DENIED.

### E.     Elder Abuse

Defendants argue that the claim for Elder Abuse fails because the FAC does not allege that Wells Fargo wrongfully induced Plaintiff to execute the Quit Claim Deed for wrongful use or with intent to defraud. (Motion at 16, 17.) The Court agrees.

Under California Welfare & Institutions Code Section 15610.30, "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following: (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both; (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both; (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence…" Cal. Welf. & Inst. Code § 15610.30(a)(1-3). Moreover, under 15610.30(c), "a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement…regardless of whether the property is held directly or by a representative of an elder or dependent adult." (Id. at 15610.30(c)). An "[e]lder means any person residing in this state, 65 years of age or older." Cal. Welf. & Inst. Code § 15610.27.

Plaintiff alleges that "Wells Fargo, and the lender's agents, should have fully understood the process and advised Kenneth that affirmatively removing Clarisa from title so as to exclude her as a co-borrower…failed to protect her property interest." (FAC ¶ 26.) Even if Plaintiff properly alleged that her property right was taken by means of an agreement (Opp'n at 24); the

FAC does not allege that Defendants took Plaintiff's property interest for wrongful use or intent to defraud. Thus, this claim cannot survive Defendants' motion to dismiss.

The Court DISMISSES Plaintiff's Elder Abuse claim WITH LEAVE TO AMEND.

**F.     UCL Claim**

Defendants argue that Plaintiff's Unfair Competition Law claim ("UCL") under Business and Professions Code Section 17200 *et. seq.* is based on the same fraud allegations that form the basis of her other claims. (Motion at 17.) Because Plaintiff has not pleaded facts alleging actionable fraud, Defendants argue this claim should similarly fail. (Id.) Furthermore, Defendants argue that a UCL claim must be premised on a "pattern of behavior" or a "course of conduct." (Id.) Defendants contend since Plaintiff has not set forth any facts demonstrating any pattern of behavior or course of conduct by Defendants, her UCL claim must be dismissed. (Motion at 18.) The Court disagrees.

Contrary to what Defendants argue, the 1992 amendment to the UCL changed the formerly plural term "practices" to "practice" and added the singular term "act" preceded by the singular modified, "any." ("The plain meaning of the amendment, as enacted, is that the [UCL] now covers single acts of misconduct.") Klein v. Earth Elements, Inc., 59 Cal. App. 4th 965, 969 (1997); see also, Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 653 (1996) ("Business and Professions Code section 17200 was once applicable only to unlawful business practices, requiring proof of a pattern or course of conduct, not just a single transaction. That section was amended in 1992, however, to state that it applies to any unlawful '*act* or practice,' presumably permitting invocation of the [UCL] based on a single instance of unfair conduct.") (citations omitted). Thus, Defendants' argument that UCL claims *must* be based on a pattern of behavior or course of conduct fails.

UCL claims are broad in scope and a plaintiff need only prove one of its criteria to be successful in his or her cause of action. ("The scope of the UCL is quite broad. Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition.") McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1471 (2006) (citations omitted). "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are [1] unlawful, [2] unfair, or [3] fraudulent." Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1146 (E.D. Cal. 2012) (quoting Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999)). Plaintiff has alleged violations under all three prongs of the UCL. (FAC ¶¶ 74-78; Opp'n at 24.)

   **1. Unlawful**

First, Plaintiff alleges unlawful competition under the UCL for violations of federal and state law. (FAC ¶¶ 74, 75.) "Virtually any law—federal, state or local—can serve as a predicate for a section 17200 action." Stevens v. Superior Court, 75 Cal. App. 4th 594, 602 (1999). Plaintiff alleges a violation of California Welfare & Institutions Code Section 15610.30 for Elder Abuse. (FAC ¶¶ 68-75; Opp'n at 23, 24.) As discussed above, Plaintiff did not plead sufficient facts to establish her Elder Abuse claim. Similarly, a claim for a violation of the same law under

the UCL cannot withstand a motion to dismiss. The Court therefore DISMISSES Plaintiff's UCL claim, to the extent it is premised on a violation of California Code Section 15610.30, with LEAVE TO AMEND.

Next, Plaintiff alleges a violation of 12 U.S.C.A. § 1715z-20 "Insurance of home equity conversion mortgages for elderly homeowners." (FAC ¶ 75.) Sub-Section (j) states:

> "Safeguard to prevent displacement of homeowner:
> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner."

12 U.S.C.A. § 1715z-20 (j). Plaintiff alleges she "did not knowingly waive her rights to be secure in the property as a co-borrower," and she was relying on the intent of the federal government backed loan and the loan professionals to protect her interests. (FAC ¶ 28.) Clarisa was the spouse of Kenneth. Therefore she has sufficiently alleged that she is a "homeowner" under the federal statute.

However, under the plain language of the statute, only the Secretary of HUD has an obligation within this Sub-Section. Plaintiff brings her unlawful UCL claim against Defendant Wells Fargo, not the Secretary of HUD. (FAC ¶ 75.) Thus, because Wells Fargo cannot violate this statute, Plaintiff's UCL claim cannot withstand a motion to dismiss. Accordingly, the Court DISMISSES Plaintiff's UCL claim, to the extent it is premised on Well Fargo's violation of 12 U.S.C.A. § 1715z-20(j), with LEAVE TO AMEND.

### 2. Unfair

Second, Defendants argue that Plaintiff fails to allege unfair business practices. (Motion at 18.) Defendants argue "Plaintiff's allegations are directly contradicted by the express terms of the Note and the [Deed of Trust], which establishes the intent of the parties." (Id.) Moreover, Defendants argue that they never made representations that they would loan Plaintiff money, or that they would not foreclose until both the Borrower and Plaintiff were deceased. (Id.)

An unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Smith v. State Farm Mutual Automobile Ins. Co. 93 Cal. App. 4th 700, 718–719 (2001). Examples of what courts have found to be "unfair business practices" include: "[1] placing unlawful or unenforceable terms in form contracts; asserting a contractual right one does not have; [2] systematically breaching a form contract affecting many consumers, or many producers; and [3] imposing contract terms that make the debtor pay the collection costs." (Id.) (citing to State Farm Fire & Cas. Co. v. Superior Court, 45 Cal. App. 4th 1093, 1104 (1996)).

Plaintiff alleges Defendants' conduct "is substantially injurious to a consumer and offends public policy, including the HUD policy of carrying out a program of mortgage insurance designed to meet the special needs of and protect elderly homeowners…" (FAC ¶ 76.)

From the plain language of 12 U.S.C.A. § 1715z-20 (j) which states in the title "Safeguard to prevent displacement of homeowner," and then in the body of the text, "[f]or purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner," it would seem the intent of the statute is to protect "homeowners." Under the statute's definition, "homeowners" would encompass the spouse, regardless of his or her property interest. Therefore, the Court finds that Plaintiff has pleaded sufficient allegations for an unfair business practices claim under the UCL. Thus, Defendants motion to dismiss Plaintiff's unfair business practice claim under the UCL is DENIED.

### 3. Fraudulent

Third, Defendants argue that the heightened pleading requirements under Rule 9(b) for fraud apply to all UCL claims. (Motion at 17.) Defendants are incorrect. Only UCL claims predicated on fraud must be pleaded with particularity in accordance with Rule 9(b). See Kearns, 567 F.3d at 1125. Plaintiff's allegations that Defendants were fraudulent fail. Plaintiff alleges "Defendants' actions …were fraudulent because of their affirmative statements and material nondisclosures were likely to mislead consumers and, in this case, mislead Clarisa and Kenneth, who each understood that upon the death of the other the surviving spouse would continue to live in the residence without mortgage payments for the rest of their lives." (FAC ¶ 77.) "'Fraudulent' as used in § 17200 does *not* refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived." Express, LLC v. Fetish Grp., Inc., 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006) (citing Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1267 (1992)). However, the *absence* of any evidence that a representation was actually disseminated to the public is not "likely to deceive the public." (Id.); see generally, Bus. & Prof.C. § 17200 Ch. 3-H.

Plaintiff's allegations with respect to Defendants' material nondisclosures and affirmative statements being disseminated to the public are vague. Plaintiff needs to allege particular allegations as to *what* the affirmative statements and material nondisclosures were and *how* they are likely to deceive the public. Instead, Plaintiff only makes the broad allegation that Defendants' conduct was likely to mislead consumers in the same way Plaintiff and her husband was misled. Plaintiff makes no allegation that Defendants' conduct which lead to her complaint is being repeated in a way as to deceive the public. Thus, Plaintiff has not met the heightened requirements proscribed under 9(b) for a claim predicated on fraud. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's UCL claim based on Defendants' fraud. Plaintiff is granted LEAVE TO AMEND.

### G. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal." Saul v. U.S., 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted); see also Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

The Court cannot conclude that amendment of Plaintiff's dismissed claims would be futile.  See Miller, 845 F.2d at 214.  Accordingly, the Court grants Plaintiff leave to amend the dismissed claims.  Plaintiff shall file an amended complaint no later than December 30, 2013.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Defendant's motion to dismiss.

**IT IS SO ORDERED.**