**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CHANDLER, AS REPRESENTATIVE OF THE ESTATE OF ROSEMARY S. CHANDLER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE, <br><br> Defendants. | Case No. 11-03831 SC <br><br> ORDER GRANTING MOTION TO <u>DISMISS</u> |

## I.    <u>INTRODUCTION</u>

Plaintiff Robert Chandler ("Plaintiff") brings this putative class action in connection with Defendants Wells Fargo, N.A. ("Wells") and Federal National Mortgage Association's ("Fannie Mae") (collectively, "Defendants") alleged breach of his mother's reverse mortgage, also known as a home equity conversion mortgage ("HECM").  ECF No. 64 (First Amended Complaint ("FAC")). Defendants now move to dismiss.  ECF No. 67 ("MTD").  The motion is fully briefed, ECF Nos. 69 ("Opp'n"), 70 ("Reply"), and appropriate

for resolution without oral argument per Civil Local Rule 7-1(b).
For the reasons set forth below, the Motion is GRANTED.

## II.  **BACKGROUND**

### A.  **The Parties and Plaintiff's Allegations**

Plaintiff resides at 10095 Sheldon Road, Elk Grove, California
(the "Property").  In 2006, Plaintiff's mother, Rosemary S.
Chandler, took out a $544,185 reverse mortgage loan that was
secured by the Property.  Ms. Chandler signed the Home Equity
Conversion Deed of Trust (the "HECM Deed") as trustee for Rosemary
S. Chandler, 1993 Trust.  ECF No. 68 ("RJN") Ex. A ("HECM Deed").
Wells originated the reverse mortgage but later sold it to Fannie
Mae.  Wells continued to service the loan.

Ms. Chandler died in January 2010.  FAC ¶ 46.  At the time of
her death, the HECM balance was approximately $338,000 and the
value of the home was approximately $252,698.  Id.  Plaintiff
contacted Wells about purchasing the home for its appraised value,
but Wells insisted that Plaintiff would have to pay off the full
loan balance.  Id. ¶ 47.  Plaintiff subsequently received a notice
from a substitute trustee that the mortgage was in default due to
failure to pay the entire principal balance.  Id. ¶ 48.  Plaintiff
alleges that, pursuant to the HECM Deed and HUD regulations,
Defendants should have provided him with notice and an opportunity
to purchase the Property at 95 percent of its appraised value.

### B.  **The HECM at Issue**

Unlike a typical mortgage, where a borrower receives loan
proceeds as a lump sum, uses the proceeds to buy a home, and then
pays back the loan gradually, a "reverse" mortgage borrower already

owns a home and takes out a loan against its equity. In the reverse of a typical mortgage, an HECM borrower generally receives the loan proceeds in gradual payments and pays back the loan in a lump sum.

Repayment is triggered by certain qualifying events. Those qualifying events are set forth in Paragraph 9 of the HECM Deed. Specifically, Paragraph 9(a) provides that the lender may require immediate repayment in full of all sums secured if (i) the borrower dies, or (ii) all of the borrower's title in the Property is sold or otherwise transferred. Paragraph 9(b) sets forth other conditions under which the loan may become due and payable that are not relevant here. Paragraph 9(d) provides that the lender shall notify the Secretary of Housing and Urban Development ("HUD") and the borrower "whenever the loan becomes due and payable under paragraph 9(a)(ii)," that is, whenever the loan becomes due and payable because the borrower transfers her interest in the property, or under paragraph 9(b). Paragraph 9(d) omits any reference to the death of the borrower as a triggering event for notice.

Paragraph 9(d) further provides that lender shall not have the right to commence foreclosure until the borrower has had thirty days after the notice to either:

> (i) Correct the matter which resulted in the Security Instrument coming due and payable; or
>
> (ii) Pay the balance in full; or
>
> (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

**United States District Court**
For the Northern District of California

(iv) Provide the Lender with a deed in lieu of foreclosure.

Subparagraph (iii) sets forth the so-called "95 percent rule" that Plaintiff now seeks to enforce.

The terms of the HECM Deed also protect Ms. Chandler and her heirs from deficiency judgments. Specifically, paragraph 10 of the HECM Deed provides that lender may only enforce the debt through sale of the property and that the lender shall not be permitted to obtain a deficiency judgment against the borrower.

**B.**   **HUD Regulations and Guidelines**

Plaintiff alleges that Ms. Chandler's reverse mortgage was insured by HUD. HUD regulations parallel the provisions of the HECM Deed in many respects. For example, 24 C.F.R. § 206.27(c)(1)(i) and (ii) mirror the provisions of paragraph 9(a) and 9(b) of the HECM Deed, stating that the reverse mortgage becomes due and payable when, among other things, the borrower dies or the borrower conveys title to the property to another.

Like paragraph 9(d) of the HECM Deed, HUD regulations provide that the lender shall notify the borrower that the mortgage is due and payable, "unless the mortgage is due and payable by reason of the mortgagor's death." Id. § 206.125(a)(2). The regulations continue:

> The mortgagee shall require the mortgagor to (i) pay the mortgage balance, including any accrued interest and MIP, in full; (ii) sell the property for at least 95% of the appraised value as determined under § 206.125(b), with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure. The mortgagor shall have 30 days in which to comply with the preceding sentence, or correct the matter which

**United States District Court**
For the Northern District of California

1  resulted in the mortgage coming due and payable, before a foreclosure proceeding is begun.

2

3  Id.

4      HUD regulations also allow the borrower to sell the property

5  at any time and limit liability to no more than the appraised value

6  of the property:

7

8      Whether or not the mortgage is due and payable, the
       mortgagor may sell the property for at least the

9      lesser of the mortgage balance or the appraised value
       (determined under § 206.125(b)). If the mortgage is

10     due and payable at the time the contract for sale is
       executed, the mortgagor may sell the property for at

11     least the lesser of the mortgage balance or five
       percent under the appraised value.

12

13  Id. § 206.125(c).

14      In December 2008, HUD issued guidance regarding these

15  regulations.  RJN Ex. E.  That guidance states that a borrower or

16  the borrower's estate cannot "pay off the loan balance of a HECM

17  for the lesser of the mortgage balance or the appraised value of

18  the property while retaining ownership of the home."  Id.  The

19  guidance further states that if the HECM is due and payable and the

20  borrower or the borrower's estate wants to retain ownership of the

21  subject property, the HECM must be repaid in full.  HUD explained

22  that HECMs were non-recourse loans and "[n]on-recourse means simply

23  that if the borrower (or estate) does not pay the balance when due,

24  the mortgagee's remedy is limited to foreclosure and the borrower

25  will not be personally liable for any deficiency resulting from the

26  foreclosure."  Id.

27      HUD rescinded this guidance in April 2011.  RJN Ex. G.  A few

28  months later, in July 2011, HUD issued new guidance explaining that

when an HECM loan becomes due and payable as a result of the borrower's death, the borrower's heirs may satisfy the HECM debt by paying the lesser of the mortgage balance or 95 percent of the current appraised value of the property.  FAC Ex. A. at 1.  The new guidance further provides that lender should grant heirs 90 to 180 days to make the required payments.

**C.   Procedural History**

Based on the allegations set forth above, the HECM Deed, and the HUD regulations, Plaintiff asserts claims for (1) declaratory relief, (2) breach of contract, and (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

With respect to the first cause of action, Plaintiff seeks a declaration that (a) Defendants are required to provide notice to borrowers that they can sell or transfer their properties for 95 percent of the appraised value before Defendants may initiate foreclosure proceedings, (b) Defendants cannot initiate foreclosure proceedings if a borrower endeavors to sell or transfer the property for 95 percent of the appraised value, (c) Defendant's failure to provide notice and an opportunity to sell violates 12 U.S.C. § 1715z-20, as well as HUD regulations, (d) any foreclosure that occurs prior to the required notice or after a denial of an opportunity to sell is illegal and a breach of contract.

Plaintiff's other claims for breach of contract and UCL violations are likewise premised on Defendants' alleged obligation to provide Plaintiff with notice and opportunity to take advantage of the 95 percent rule.

///

United States District Court
For the Northern District of California

This is a putative class action brought under Federal Rule of Civil Procedure 23(b)(2).  The proposed class is defined as "estates and personal representatives of HECM borrowers, whose loans are or were owned and/or serviced by Defendants, and who are entitled to notice and the opportunity to purchase properties for 95% of appraised value."  FAC ¶ 54.

III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

IV.    **DISCUSSION**

Defendants now move to dismiss Plaintiff's claims on the ground that the HECM Deed does not give Plaintiff the right to notice or opportunity to purchase the Property at 95 percent of the

7

appraised value.  Defendants further argue that the Plaintiff cannot premise his claims on HUD regulations or guidance because they do not provide for a private right of action.  Finally, Defendants argue that even if Plaintiff could sue under HUD regulations, those regulations do not support his claim that he a right to notice and opportunity to purchase the Property at 95 percent of its appraised value.

### A.   **The HECM Deed**

The Court agrees with Defendants that the HECM Deed, read alone, does not provide Plaintiff with a right to notice and an opportunity to purchase the Property at 95 percent of its appraised value.  Both parties appear to agree that the HECM became due and payable upon the death of borrower, Ms. Chandler.  The plain language of the HECM Deed provides that where the borrower dies, "the Lender may require immediate payment in full of all sums secured by the [Deed]," which is essentially what Defendants demanded after the death of Ms. Chandler.  HECM Deed ¶ 9(a).

Plaintiff urges the Court to look to paragraph 9(d) of the HECM Deed, which provides that that the lender shall notify the borrower whenever the loan becomes due and payable pursuant to Paragraphs 9(a)(ii) and 9(b), neither of which pertains to the death of the borrower.  Paragraph 9(d) further provides that the lender shall not commence foreclosure proceedings until the borrower has had thirty days after notice to, among other things, sell the property for the lesser of the outstanding HECM balance or 95 percent of the Property's appraised value.

There are a few problems with Plaintiff's contention that paragraph 9(d) entitles him to notice and an opportunity to take

1   advantage of the 95 percent rule.  First and foremost, paragraph

2   9(d) specifically omits any reference to paragraph 9(a)(i), which

3   pertains to the death of a borrower, as a triggering event for

4   notice.  Second, paragraph 9(d) refers to the rights of the

5   borrower, not the borrower's heirs.  Third, because paragraph 9(d)

6   provides that notice is only required where the HECM becomes due

7   and payable pursuant to paragraphs 9(a)(ii) and 9(b), neither of

8   which pertain to the death of the borrower, and because paragraph

9   9(d) only allows for options such as the purchase of the property

10  for 95 percent of the appraised value "after notice," it follows

11  that the HECM Deed does not expressly provide the borrower's heirs

12  with the right to take advantage of the 95 percent rule after the

13  death of the borrower.

14      Plaintiff contends that "while the options might more artfully

15  have been placed in a separate section of the mortgage," his right

16  to notice and opportunity to purchase the property for 95 percent

17  of its appraised value prior to foreclosure is "indisputable."

18  Opp'n at 5.  Plaintiff reasons that any other reading would

19  eviscerate paragraph 10 of the HECM Deed.  Id.  The Court

20  disagrees.  Paragraph 10 merely provides that the lender shall not

21  be permitted to obtain a deficiency judgment against the borrower

22  if HECM deed is foreclosed.  Nothing in this provision is

23  inconsistent with refusing to allow a borrower's heirs to purchase

24  a borrower's property for 95 percent of its appraised value.

25      Plaintiff also argues that Defendants' interpretation of

26  their notice obligations is somehow inconsistent with paragraph 20

27  of the HECM Deed, which pertains to foreclosure procedures.  Id. at

28  8-9.  This argument also lacks merit.  Paragraph 20 merely requires

**United States District Court**
For the Northern District of California

1  that, in the event the lender requires satisfaction of the

2  outstanding HECM balance, the lender must provide a notice of

3  default and other notice required by applicable law.  There is no

4  dispute that Defendants provided such notice in this case.  In any

5  event, Paragraph 20 does not require notice of the 95 percent rule

6  that Plaintiff now demands.

7      Next, Plaintiff contends that paragraph 9(a)(ii) of the HECM

8  Deed independently requires notice.  <u>Id.</u> at 11.  That provision

9  states that the lender may require immediate payment of the

10 outstanding HECM balance where all of a borrower's title in the

11 Property is sold or otherwise transferred.  Paragraph 9(d) requires

12 that the lender provide notice of the 95 percent rule whenever the

13 loan becomes due and payable under paragraph 9(a)(ii).  Plaintiff

14 reasons that "HUD has made clear that it 'interprets the word sale

15 to include any post-death conveyance of the mortgage property (even

16 by operation of law) to the borrower's estate or heirs.'"[1]  Opp'n

17 at 11.  The Court remains unconvinced.  Paragraph 9(a) refers to

18 two types of events that could cause the HECM to become due and

19 payable: (i) the death of the borrower, (ii) the sale or transfer

20 of the Property.  Plaintiff's interpretation renders subsection

21 (ii) nugatory, strains common sense, and would essentially require

22 the Court to read the contract in a manner inconsistent with its

23 plain meaning.

24     Accordingly, the Court finds that the plain language of the

25 HECM Deed does not support Plaintiff's position that he was

26 entitled to notice and an opportunity to purchase the Property for

27 _____

28 [1] Plaintiff does not identify the HUD guidance from which he
   quotes.

**United States District Court**
For the Northern District of California

1   95 percent of its appraised value.

2         **B.**     **HUD Regulations and Guidance**

3         Plaintiff contends that the HUD regulations require notice and

4   opportunity to purchase the Property for 95 percent of its

5   appraised value, and that the HECM Deed manifests the parties'

6   intent to be bound by those regulations.  Opp'n at 13.  However,

7   Plaintiff cannot point to a particular provision of the HECM Deed

8   incorporating HUD regulations.

9         Plaintiff cites Norfolk and Western Railway Company v.

10   American Train Dispatchers' Association, 499 U.S. 117, 130 (1991),

11   for the general proposition that "[l]aws which subsist at the time

12   and place of the making of a contract, and where it is to be

13   performed, enter into and form a part of it, as fully as if they

14   had been expressly referred to or incorporated in its terms."

15   Opp'n at 14 n.46.  However, this broad canon of construction does

16   not trump the standard inquiry used to determine whether a federal

17   statute creates an implied cause of action.  Umland v. PLANCO Fin.

18   Servs., Inc., 542 F.3d 59, 66 (3d Cir. 2008).  Moreover, courts

19   have been reluctant to incorporate statutory or HUD regulatory

20   provisions into a contract unless the contract explicitly provides

21   for their incorporation.  See St. Christopher Assocs., L.P. v.

22   United States, 511 F.3d 1376, 1384 (Fed. Cir. 2008).

23         Even if Plaintiff could rely on the HUD regulations, they do

24   not support his position that he was entitled to notice and

25   opportunity to purchase the property for 95 percent of its

26   appraised value.  With respect to notice, the regulations provide

27   that a borrower is entitled to notice "unless the mortgage is due

28   and payable by reason of the mortgagor's death by reason of the

**United States District Court**
For the Northern District of California

borrower's death."   24 C.F.R. § 206.125(a)(2).   Thus, Plaintiff cannot credibly contend that the regulations entitled him to notice when the HECM became due and payable by virtue of the death of his mother.

The regulatory provisions pertaining to the right to purchase a subject property for 95 percent of its appraised value presents a closer question.   Section 206.125(a)(2) is substantially similar to paragraph 9(d) of the HECM Deed, which as discussed above, indicates that the 95 percent rule does not apply upon the death of the borrower.   However, 24 C.F.R. § 206.125(c), which is unlike any provision in the HECM Deed, provides that if the mortgage is due and payable for any reason, the "mortgagor" may sell the property for 95 percent of its appraised value.   Section 206.123 suggests that, in certain contexts, the term "mortgagor" encompasses the mortgagor's estate or personal representative.   Read together, sections 206.123 and 206.125(c) suggest that a borrower's estate may have the right to sell a subject property for 95 percent of its appraised value.   However, the regulations are far from clear on this point.[2]

Even if sections 206.123 and 206.125(c) can be read to allow an heir or estate to take advantage of the 95 percent rule, HUD adopted a contrary view at the time of Ms. Chandler's death in

---

[2] Section 206.123(a) provides that mortgagees may submit claims for payment of the mortgage insurance benefits if, among other things, "[t]he mortgagor sells the property for less than the mortgage balance and the mortgagee releases the mortgage of record to facilitate the sale, as provided in § 206.125(c)."   Section 206.123(b) provides that "[t]he term mortgagor as used in this subpart . . . shall also mean the mortgagor's estate or personal representative."   It is unclear whether this means that the expanded definition of mortgagor also applies to the 95 percent rule as set forth in § 206.125(c).

Case3:11-cv-03831-SC Document73 Filed01/03/14 Page13 of 13

2010.  In guidance issued in December 2008, HUD stated "[i]f the mortgage is due and payable and the borrower (or estate) desires to retain ownership of the property, the mortgage debt must be repaid in full."  RJN Ex. E at 2.  HUD later retracted the December 2008 guidance, but not until after Plaintiff sought to purchase the Property.  Accordingly, at the time Defendants rejected Plaintiff's offer to purchase the property, they were acting in accordance with express directives from HUD.  An agency's interpretation of its regulations is entitled to deference.  Pub. Lands for the People, Inc., v. U.S. Dept. of Agric., 697 F.3d 1192, 1199 (9th Cir. 2012).

In sum, the Court finds that the HUD regulations were not incorporated into the HECM Deed and, even if they were, those regulations do not support Plaintiffs' claims.

**V.      CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and DISMISSES Plaintiff Robert Chandler's First Amended Complaint.  Since the Court finds that amendment would be futile, dismissal is WITH PREJUDICE.


IT IS SO ORDERED.


Dated: January 3, 2014

_____
UNITED STATES DISTRICT JUDGE